# EXHIBIT 1

FILED
3/24/2023 2:43 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22015106

FILED DATE: 3/24/2023 2:43 PM  2023CH02874

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

ERICA NORMAN, individually and on behalf
of all others similarly situated,

               Plaintiffs,

*v.*

SERVALL BIOMETRICS D/B/A
PATRONSCAN, Inc.

               Defendants.

2023CH02874

## CLASS ACTION COMPLAINT

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

Plaintiff Erica Norman brings this action against Defendant Servall Biometrics d/b/a Patronscan Inc. ("Patronscan"), individually and on behalf of all others similarly situated, and alleges the following based on personal knowledge, the investigation of counsel, and information and belief.

## I.    INTRODUCTION

1.     On January 13, 2023, Plaintiff Erica Norman attended a "Pajamas" concert at Bourbon on Division, a music venue located on Division Street in Wicker Park, Chicago.

2.     Before Ms. Norman entered the concert, the venue's bouncer scanned her face and her driver's license using a Patronscan device. The Patronscan device took a photograph of Ms. Norman and then performed a scan of facial geometry on that photograph and the image of Ms. Norman on her driver's license.

3.     Ms. Norman was not provided with written disclosures and she did not provide informed written consent regarding this collection and use of her biometric identifiers and information (collectively, "biometric data").

4.     In capturing, storing, and sharing the biometric data of Ms. Norman and others without proper disclosures and written consent, Patronscan violated and continues to violate the Illinois Biometric Information Privacy Act ("BIPA" or "the Act").

5.     Patronscan violates BIPA in a particularly Orwellian manner by moving beyond advanced facial-recognition software, where a program essentially matches facial attributes between two photographs and provides verification: In addition to collecting scans of people's faces to cross-check individual faces against an individual's proffered form of identification ("ID"), Patronscan also examines and captures thousands of data points and pixels and runs a person's facial scan and ID against its growing database of criminals, more

1

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

than 50,000 flagged "troublemakers," and "V.I.P.'s," whose information—biometric and otherwise—is shared among Patronscan and its expanding network of business customers.[1]

6.      And if trouble occurs after a previously unflagged patron enters an establishment, Patronscan admits it retains the biometric data of suspect customers for inclusion in its flagged database, advertising the service as equivalent to a "bouncer that never forgets a face[.]"[2]



7.      In the regular course of its business, Patronscan shares captured biometric data of persons like Ms. Norman with third parties, including Patronscan's customers— namely, the venue, bar, or business and law enforcement officials—without a warrant or subpoena.[3]

---

[1] Patronscan, *ID Scanner for Bars* (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars/.

[2] *Id*.

[3] *Entertainment Venue Privacy Policy*, Patronscan (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

8.      Patronscan's trade in biometric information has profound implications for the data privacy rights and civil liberties of Illinois citizens and residents of other states visiting businesses in Illinois. Patronscan's core business practice directly contravenes the letter and purpose of BIPA.

9.      In 2008, the State of Illinois enacted BIPA with the purpose of serving "[t]he public welfare, security, and safety . . . by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information"[4]—namely, identifiers such as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or *face geometry*," and biometric information derived from those identifiers.[5] In so doing, the Illinois legislature recognized that "[t]he full ramifications of biometric technology are not fully known,"[6] and that "[b]iometrics . . . are biologically unique to the individual; therefore, once compromised, the individual has no recourse."[7]

10.     BIPA addresses the dangers posed by the mishandling of biometric identifiers and information by providing a right of action to any person who is subjected to a violation of the Act within the State of Illinois.[8]

11.     As relevant here, a private entity in the possession of biometric identifiers or information violates BIPA when it:

> i.    collects and captures biometric information before first "inform[ing] the subject . . . in writing that a biometric identifier or biometric information is being collected or stored[,]" "inform[ing] the subject. . . in writing of the

---

[4] 740 ILCS 14/5(g).

[5] 740 ILCS 14/10 (defining "biometric identifier" and "biometric information") (emphasis added).

[6] 740 ILCS 14/5(f).

[7] 740 ILCS 14/5(c).

[8] 740 ILCS 14/20.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used," and then "receiv[ing] a written release executed by the subject of the biometric identifier or biometric information";[9]

ii.   fails to obtain a person's consent before "disclos[ing], redisclos[ing], or otherwise disseminat[ing] a person's . . . biometric identifier or biometric information" to a third-party;[10] and

iii.  fails to establish a publicly available policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information,"[11] and profits in any way from the use of her biometric identifiers and information.[12]

12.   As a private entity in the possession of biometric information and identifiers obtained by capturing, using, storing, and sharing them through its portal and software, Patronscan violated and continues to violate § 15(a) of BIPA by failing to establish a publicly available policy establishing a retention schedule and guidelines for permanently destroying biometric data obtained from customers entering establishments that use Patronscan in Illinois.[13]

13.   Patronscan violated and continues to violate § 15(b) of BIPA by collecting this biometric data without first providing written notice and obtaining written informed consent from persons entering venues using Patronscan, including Plaintiff and Class Members.[14]

14.   Patronscan violated and continues to violate § 15(c) of BIPA by wrongfully profiting from the biometric data it has collected from its customers' patrons—including the

---

[9] 740 ILCS 14/15(b)(1)-(3).

[10] 740 ILCS 14/15(d).

[11] 740 ILCS 14/15(a).

[12] 740 ILCS 14/15(c).

[13] 740 ILCS 14/15(a).

[14] 740 ILCS 14/15(b) (requiring provision of written disclosure and obtaining written informed consent).

scans Plaintiff's and Class Members' facial geometries —by using the biometric data it obtains to maintain a database of "problem individuals" and improve its ID authentication software, thereby making the technology more profitable to Patronscan, which sells its hardware and software to businesses in the State of Illinois.

15.     Patronscan violated and continues to violate § 15(d) by failing to obtain consent from people before disclosing, redisclosing, and disseminating their biometric identifiers or biometric information to a third-party, like venue employees, subcontracted security personnel, and law enforcement officials, and upon information and belief, third-party databases, without patrons' consent.

16.     In sum, Patronscan obtained Plaintiff's and Class Members' facial scans through its hardware and then stored, used, and shared those scans through its software. In doing so, Patronscan profited from Plaintiffs' and Class Members' biometric data and harmed the substantive privacy interests that BIPA was intended to protect.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## II.   PARTIES

17.    Plaintiff Erica Norman is a natural person and citizen of the State of Illinois, residing in the Northern District of Illinois.

18.    Servall Biometrics d/b/a Patronscan is a Canadian corporation with a principal place of business at 10504 42 St. SE. Calgary, Alberta, Canada.

## III.   JURISDICTION AND VENUE

19.    This is a class action complaint for violations of BIPA (740 ILCS 14/1, *et seq.*), seeking statutory and actual damages.

20.    No federal question is presented by this complaint. Plaintiffs bring this complaint solely under state law and not under federal law, and specifically not under the United States Constitution, nor any of its amendments, nor under 42 U.S.C. § 1981 or 1982, nor any other federal statute, law, rule, or regulation. Plaintiff believes and alleges that a cause of action exists under state law for the conduct complained of herein.

21.    This Court has personal jurisdiction over Plaintiff and the Class because they submit to the Court's jurisdiction. This Court has personal jurisdiction specifically over Defendant because Defendant deliberately targeted the Illinois market by actively marketing, selling, and acquiring customers in the state who have paid Defendant significant sums of money, and entered into contracts for the use of its hardware and software that captures, uses, stores, and disseminates biometric information and identifiers, from which the company

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

profits.[15] Plaintiffs' claims therefore arise out of, or relate to, Defendant's extensive business contacts and contractual performance within the state of Illinois.[16]

22.     Venue is proper in this County under 735 ILCS 5/1-108 and 2-101 because a substantial part of the acts or omissions giving rise to the claims occurred in Cook County. Specifically, Patronscan's collection of Plaintiff's and many Class Members' biometric information occurred within Cook County.

### IV.     FACTUAL ALLEGATIONS

**A. Patronscan collects biometric information and identifiers.**

23.     On January 13, 2023, Plaintiff attended a concert and was subjected to Patronscan's technology. Before Plaintiff arrived at the concert venue, she received an electronic ticket that did not contain disclosures about the venue or Patronscan's collection, use, or disclosure of her biometric information.  Upon entry into the concert venue, a bouncer asked Ms. Norman to hand over her driver's license, scanned her license into a Patronscan portal, and then took her photograph with a camera attached to a Patronscan portal. Patronscan software then scanned her facial geometry from the photograph.

---

[15] 735 ILCS 5/2-209(a)(1) (transaction of any business), (a)(7) (making or performance of any contract connected with this State), (b)(4) (corporation doing business within this State), (c) (jurisdiction on any other basis).

[16] *See e.g., Maunder v. DeHavilland Aircraft of Canada, Ltd.,* 112 Ill. App. 3d 879, 883 (1st Dist. 1983), *aff'd*, 102 Ill. 2d 342 ("Defendant in the present case [a Canadian corporation], as in *Beech Aircraft,* entered the Illinois market by way of its distributor [a third party]. Defendant regularly and systematically reaped substantial profits through the sale of its parts [product] by its Illinois subsidiary. The fact that these sales were conducted indirectly through a third party does not excuse defendant from the jurisdiction of Illinois courts. In light of . . . its own activities directed at promoting the sale of its product in Illinois, we hold that defendant is actively and systematically doing business in Illinois and is therefore subject to the jurisdiction of Illinois courts.").

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

24.     The Patronscan portal and biometric information collection process is shown on its website:[17]





___

[17] *Video of Patronscan Scanning Process*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars/.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874



25.     Security or venue personnel place an ID into the Patronscan portal, which scans the ID and uploads the ID to Patronscan's software, which runs a multi-step authentication check on the ID itself. Simultaneously, the camera attached to the Patronscan portal takes a photograph of the patron, uploads the photograph to Patronscan's software, which scans the photograph for facial geometry, and compares that geometry to the provided ID, as well as Patronscan's database of flagged and V.I.P. individuals.

26.     Patronscan collects the information of thousands of other Illinois citizens and residents of other states visiting businesses in Illinois.  Indeed, Patronscan confirms that it collects data to "verify and authenticate patron age and match patrons against the venue or networked flag list [explained below]. Patronscans['] collection of data is limited to: Name, Date of Birth, *Photo*, Gender, Post Code/Zip Code." [18]

---

[18] *Entertainment Venue Privacy Policy*, PATRONSCAN (last visited March 20, 2023) (emphasis added), https://patronscan.com/privacy-entertainment-venues.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

**B. Patronscan fails to give citizens written disclosures and obtain their written informed consent before collecting their biometric information and identifiers.**

27.     When Plaintiff entered Bourbon on Division, there was no posted written notice inside or outside the venue about the collection of biometric data, nor did she receive an email or any other written notice from Patronscan with a biometric disclosure before the event, nor were there biometric disclosures on her concert ticket. Plaintiff was therefore wholly unable to give her informed written consent for the collection of her biometric information, nor did she ever provide Patronscan with such consent before her face was scanned by the company.

28.     Plaintiff's experience is representative of patrons' experiences generally.

29.     Patronscan advertises that ID authentication and flag-checks can be performed "in seconds."[19] The process can be completed in seconds only because Patronscan does not provide a written notice to patrons, allow them adequate time to review it, or obtain their informed written consent.

**C. Patronscan uses citizens biometric information and identifiers and discloses them to third-parties without their written informed consent.**

30.     One of Patronscan's core functions is a tool to verify forms of identification by scanning IDs and faces to "analyze[ ] over 6,000 data points" between a person's face and their form of identification to "determine an ID's authenticity."[20] The company's "proprietary algorithms go beyond simple ID authentication to look for pixel-level discrepancies" between a patron's ID, a stored copy of an authenticated ID from the same issuer, and the patron's

---

[19] *See Developer Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/developer.

[20] *ID Scanner for Bars*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars.

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

face. Patronscan "software uses a combination of technologies such as artificial intelligence" as well as "character recognition, barcodes, rfids, microprint, etc."[21] The company allows users to "[i]ntegrate Patronscan's [face] scanning software into [their] iOS, Android, web, or desktop application to authenticate IDs and capture [biometric] data [and] [r]eceive [identification] authentication responses in seconds, not hours or days."[22]

31.     The company markets its ID and face scanning hardware (device that captures biometric data through scans of facial geometry) and software (biometric information database) to nightclubs and bars, vape shops, automotive dealerships, property managers, dispensaries, retail establishments, financial services institutions, and telecom companies.[23]

32.     Beyond ID verification, a core function of Patronscan is the recognition of both "flagged" troublemakers and V.I.Ps through their biometric identifiers.  "Patronscan is also used as an informational system that allows [businesses] to flag individuals who are reported to have engaged in conduct on a patron's presence that created a serious risk to guests or staff."[24] Patronscan hosts a database of "flagged" individuals which warehouses the data of "50,000+ individuals known for assaults, chargebacks, drugs, and property damage."[25]

---

[21] Patronscan, "Advantages" Page, accessible at: https://patronscan.com/advantages (last accessed March 20, 2023).

[22] *Developer Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/developer.

[23] *Welcome Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/.

[24] *See Privacy Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

[25] *See ID Scanner for Bars*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars/.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

33.    "Flags can be either single venue or shared across all networked venues (shared with other participating venues). Venue flags pertain only to the venue/venues in the same ownership group who placed the flag and are not visible to any other venue. As of January 1, 2019, the maximum flag period for any existing or new venue flag is 5 years. This storage period applies only for the same business flags. If you have a venue flag, it will only be displayed if your ID [and face] is scanned at the business that created the flag, if you visit a different business your flag will not be displayed." [26]

34.    "Networked flags can be viewed by other venues on the network. These flags are only shown when a patrons['] ID [and face] is scanned at the venue. Venues cannot search or view other business' flags. Flags are only visible when the patrons ID is scanned at those venues. The maximum flag period for a networked flag is 1 year in length." [27]

35.    The software also allows users to mark patrons for positive reasons, allowing bar and venue users to "treat VIPs" like VIPs.  Patronscan allows businesses to recognize V.I.P. IDs and faces upon arrival and "deliver memorable experiences by sending staff notifications . . . . [allowing them to] [h]andle private club membership requirements and reward big spenders with special treatment. [Patronscan can] [t]ier . . .  members into groups so [   ] door staff recognize and welcome [the] most valued patrons."[28]

36.    To accomplish these objectives, Patronscan discloses a patron's biometric information and identifiers to third-party databases to check for criminal history, and discloses

---

[26] *Privacy Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

[27] *Id*.

[28] *ID Scanner for Bars*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

their information to the venue itself (a third-party outside of the data subject – Patronscan relationship), as well as their security personnel (who are often third-party subcontractors), and renders an "accepted" message for Patrons that pass verification and flag checks, like Plaintiff, alerts them of the presence of a "V.I.P.," or provides a "flagged" alert for purported "troublemakers" that are rejected at the door.[29]

37.     But Patronscan's disclosure of biometric data does not end at the entryway. "If the venue needs to log an incident [after entry] and place a patron on the flagged list for example, the venue [or its security] can [go back and] reference a *photo* and data such as name, age, and gender."[30]

38.     And "[i]n case of a major incident concerning public safety, law enforcement may obtain access to a venues data, but only when an official investigation has been launched. The three conditions in which law enforcement may request Patronscan information include: [1] The law enforcement agency has identified its lawful authority to obtain the information[;] [2] The law enforcement agency has indicated that the disclosure is requested for the purpose of enforcing a law in its jurisdiction, carrying out an investigation relating to the enforcement of any such law, or gathering intelligence for the purpose of enforcing any such law[;] [3] The law enforcement agency has provided an investigation number or any other uniquely identifiable number that can be traced back to the purpose of the disclosure request."[31]

39.     In none of the three conditions above does Patronscan require law enforcement officials to provide the company *a warrant or subpoena* before sharing citizens' biometric data

---

[29] *Entertainment Venue Privacy*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

[30] *Id*. (emphasis added).

[31] *Id*.

13

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

with them.[32] Even if Patronscan asks a law enforcement agency to identify its "lawful authority to obtain the [biometric] information," doing so does not equate to actually requiring the provision of a warrant or subpoena before handing over such sensitive information.

**D. Patronscan fails to provide a publicly available, BIPA-compliant retention policy.**

40.     Patronscan provides the following retention and deletion policy on its website:

> Unless a patron is flagged, data is retained [by Patronscan and the venue] for a limited period of time before being permanently deleted. This period allows crime victims sufficient time to report a crime and for law enforcement to review patron records to identify the alleged assailant(s) [through the sharing process detailed above]. It is common for victims to report crimes several days to weeks later. Data is permanently deleted as per the data retention period below: [ ] 30 days in the United States (as of January 1st, 2019) . . . The only data that is saved beyond the above time frames is specific to patrons that are on the flag list.[33]

41.     Thus, while non-flagged patrons' biometric data is purportedly deleted within 30 days if it was collected after January 1, 2019, Patronscan either wholly fails to inform V.I.P. and flagged individuals when their information will be deleted, or *never* deletes the data of V.I.P. and flagged individuals, which could be longer than three years since the individual's last interaction with Patronscan.[34]

42.     Plaintiff was allowed entry into Bourbon on Division, so was presumably not a flagged individual at the time of her entry. But Plaintiff is unaware whether she was marked as a V.I.P. by the venue or Patronscan after her entry, leaving her in limbo of which

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

Patronscan retention policy applies. Thus, Patronscan's retention policy for V.I.P. and flagged individuals is insufficient.

**E. Patronscan profits from its use of citizens biometric information.**

43.    Patronscan advertises to potential customers that its software is akin to a "bouncer that never forgets a face."[35]

44.    But Patronscan's software is much more than a bouncer that never forgets a face: the software is a digital hivemind that can access caches of a patron's most sensitive information, associate a face with bad behavior, criminal history, and perceived social or economic status, and share that information instantaneously with other "bouncers," police, or authorities around the world. Each face scan improves Patronscan software by building its database of information and increasing its collection of V.I.P. and "flagged" individuals, which the company then advertises and sells to businesses seeking to track, block, or incentivize certain types of patrons.

---

[35] *ID Scanner for Bars*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars/.

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## V.     CLASS ACTION ALLEGATIONS

45.     Plaintiff Erica Norman brings this action on behalf of herself and under 735 ILCS 5/2-801 as the representative of a Class defined as follows:

> All persons who had their biometric identifiers or information collected, captured, received, otherwise obtained, used, or stored in Illinois by Defendant during the Class Period.

46.     For purposes of this action, the Class Period is defined as March 24, 2018, through the present.

47.     Excluded from the Class are Defendant Servall Biometrics d/b/a Patronscan Inc. and any entity in which Defendant has a controlling interest, as well as any of Defendant's legal representatives, officers, directors, assignees, and successors.

48.     Members of the Class are so numerous that joinder of all Class Members is impractical. Defendant currently boasts that it has scanned approximately 197,200,0000 IDs and faces in 203 cities.[36] Upon Plaintiff's personal knowledge, Patronscan has employed its hardware and software to collect and capture biometric information in the City of Chicago, Illinois, and upon information and belief, Patronscan has also done so in numerous other cities in Illinois.

49.     Plaintiff's claims are typical of the members of Class Members who were aggrieved by the same wrongful conduct of Patronscan: their substantive privacy interests were harmed (i) by Patronscan obtaining their biometric identifiers or information without first providing adequate written notice and their informed written consent,[37]

---

[36] *Entertainment Venue Privacy Policy*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

[37] 740 ILCS 14/15(b)(1)–(3).

16

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

(ii) by Patronscan disclosing, redisclosing, or otherwise disseminating their biometric identifiers or information to third-parties without obtaining proper consent,[38] (iii) by Patronscan failing to establish an adequate publicly available policy regarding the retention of Plaintiff's and Class Members' biometric identifiers and information,[39] and (iv) by Patronscan profiting from their biometric identifiers or information.[40]

50.     Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.

51.     Plaintiff is represented by counsel with experience in the prosecution of complex class actions and with particular experience with class actions raising claims under BIPA.

52.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class Members because Patronscan has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Patronscan's wrongful action.

53.     Questions of law and fact common to the Class include:

a.  Whether Patronscan established a publicly available policy for retention of biometric identifiers and information sufficient to satisfy the requirements of § 15(a) of BIPA.

b.  Whether Patronscan provided written notice and obtained written consent of persons whose biometric identifiers and information were collected by Patronscan's facial scan and ID verification system,

---

[38] 740 ILCS 14/15(d).

[39] 740 ILCS 14/15(a).

[40] 740 ILCS 14/15(c).

17

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

and, if so, whether such notice and consent are sufficient to satisfy the requirements of § 15(b) of BIPA.

c.  Whether Patronscan profited from the use of the biometric identifiers and information it collected via Patronscan's hardware to improve its database of biometric identifiers and information on non-flagged and flagged individuals it sells to businesses, contrary to § 15(c).

d.  Whether Patronscan obtained requisite consent before disclosing, redisclosing, or otherwise disseminating biometric identifiers or biometric information to a third-party to satisfy the requirements of § 15(d).

e.  Whether persons who had their biometric identifiers and information captured by Patronscan are entitled to damages, and, if so, in what amount.

f.  Whether Patronscan should be enjoined from collecting biometric identifiers and information illegally through its hardware and using them in its software.

54.     A class action is a superior method for the fair and efficient adjudication of the controversy. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual class actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs the potential difficulties in management of this class action.

55.     Plaintiffs know of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## VI.   CLAIMS FOR RELIEF

### Claim 1: Violation of Section 15(a) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(a)) by Failing to Establish a Publicly Available Policy Governing the Retention of Biometric Identifiers and Information

56.    Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

57.    Section 15(a) of BIPA provides that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information . . . ."[41] The biometric identifiers and information must be permanently destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."[42]

58.    Servall Biometrics d/b/a Patronscan is a Canadian corporation and is therefore a private entity under BIPA.[43]

59.    The facial geometries of Plaintiff and Class Members are biometric identifiers under the Act, and the information that Patronscan derived from these identifiers is biometric information covered by the Act.[44]

60.    As explained in paragraphs 40 to 42 above, Patronscan did not properly develop a publicly available written policy governing the retention of biometric identifiers and information.

---

[41] 740 ILCS 14/15(a).

[42] 740 ILCS 14/15(a).

[43] 740 ILCS 14/10.

[44] *Id.*

19

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

61.     By improperly retaining the biometric information of Plaintiff and Class Members, Patronscan violated the very privacy interests that BIPA was intended to protect.

62.     On behalf of herself and the Class, Plaintiff seeks:

(a) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to develop and make publicly available a retention policy that complies with BIPA's § 15(a);[45]

(b) the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(a);[46]

(c) the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(a);[47] and

(d) reasonable attorneys' fees and costs and other litigation expenses.[48]

### Claim 2: Violation of Section 15(b) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(b)) by Obtaining Biometric Identifiers or Biometric Information Without Written Informed Consent

63.     Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

64.     Section 15(b) of BIPA makes it unlawful for any private entity to:

collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric identifier or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . .[49]

---

[45] 740 ILCS 14/20(4).

[46] 740 ILCS 14/20(2).

[47] 740 ILCS 14/20(1).

[48] 740 ILCS 14/20(3).

[49] 740 ILCS 14/15(b).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

65.    The written release required by § 15(b)(3) means "informed written consent."[50]

66.    As detailed in paragraphs 27-29 above, Patronscan systematically collected, stored, and used Plaintiff's and Class Members' biometric identifiers and information without providing the notice required by § 15(b)—including notice that their biometric data was being used for the specific purpose of cross-checking their face against their identification, third-party databases, and Patronscan's "flagged" database.

67.    Likewise, Patronscan never obtained from Plaintiff's or Class Members the informed written consent required by BIPA.

68.    By improperly collecting, storing, and using Plaintiff's and Class Members' biometric identifiers and information, Patronscan violated their rights to privacy in their biometric data.

69.    On behalf of herself and the Class, Plaintiff seeks:

(a) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Patronscan to comply with § 15(b)'s requirement for collecting, storing, and using biometric identifiers and information;[51]

(b) the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(b);[52]

(c) the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(b);[53] and

(d) reasonable attorneys' fees and costs and other litigation expenses.[54]

---

[50] 740 ILCS 14/10.

[51] 740 ILCS 14/20(4).

[52] 740 ILCS 14/20(2).

[53] 740 ILCS 14/20(1).

[54] 740 ILCS 14/20(3).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

**Claim 3: Violation of Section 15(c) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(c)) by Profiting from Biometric Identifiers or Biometric Information Obtained Through Patronscan**

70.     Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

71.     Section 15(c) of BIPA makes it unlawful for any "private entity in possession of a biometric identifier or biometric information" to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."[55]

72.     As detailed in paragraphs 43-44 above, Patronscan had possession of Plaintiff's and Class Members' biometric identifiers and information and, without informing them, profited from their biometric identifiers and information by using that biometric data to make its "flagged" and V.I.P. patron database more robust, which the company marketed and sold to businesses in Illinois.

73.     By profiting from its undisclosed use of Plaintiff's and Class Members' biometric identifiers and information, Patronscan violated the substantive privacy interests that BIPA protects.

74.     On behalf of herself and the Class, Plaintiff seeks:

(a) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to cease profiting from the use of their biometric identifiers and information;[56]

(b) the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(c);[57]

---

[55] 740 ILCS 14/15(c).

[56] 740 ILCS 14/20(4).

[57] 740 ILCS 14/20(2).

22

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

(c) the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(c);[58] and

(d) reasonable attorneys' fees and costs and other litigation expenses.[59]

**Claim 4: Violation of Section 15(d) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(d)) by Disclosing Biometric Identifiers or Biometric Information Obtained Through Patronscan Without Written Informed Consent**

75.    Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

76.    Section 15(d) of BIPA makes it unlawful to:

Disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject. . . consents to the disclosure or redisclosure. . . (4) the disclosure is issued pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

77.    As explained in detail in paragraphs 30 to 39, Patronscan regularly discloses and rediscloses patrons' biometric identifiers and information, without their consent, to third-party databases, Patronscan's customer business, that businesses' staff, subcontracted security personnel, and law enforcement, without a warrant or subpoena.

78.    By sharing Plaintiff's biometric identifiers and information, Patronscan violated the substantive privacy interests that BIPA protects.

79.    On behalf of herself and the Class, Plaintiff seeks:

(a) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to cease disclose and redisclose their biometric identifiers and information without consent or a valid warrant or subpoena;[60]

---

[58] 740 ILCS 14/20(1).

[59] 740 ILCS 14/20(3).

[60] 740 ILCS 14/20(4).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

(b) the greater of liquidated damages of \$5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(d);[61]

(c) the greater of liquidated damages of \$1,000 or actual damages for each of Patronscan's negligent violations of § 15(d);[62] and

(d) reasonable attorneys' fees and costs and other litigation expenses.[63]

## VIII. PRAYER FOR RELIEF

80.     Wherefore, on behalf of herself and the Class, Plaintiff respectfully requests that this Court enter an Order:

a. Certifying this case as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the Class defined above, appointing Plaintiff Erica Norman as representative of the Class, and appointing their counsel as Class Counsel;

b. Declaring that Patronscan's actions, as set out above, violate § 15(a), (b), (c), and (d) of BIPA;

c. Awarding the greater of actual damages or statutory damages of \$5,000 per intentional or reckless violation of BIPA, and the greater of actual or statutory damages of \$1,000 per negligent violation of BIPA;

d. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an order requiring Patronscan to collect, store, and use biometric identifiers in complaint with BIPA;

e. Awarding Plaintiff and the Class their reasonable litigation expenses and attorney's fees;

f. Awarding Plaintiff and the Class pre-and post-judgment interest, to the extent allowable; and

g. Awarding such other and further relief as equity and justice may require.

---

[61] 740 ILCS 14/20(2).

[62] 740 ILCS 14/20(1).

[63] 740 ILCS 14/20(3).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## XI.    JURY DEMAND

81.    Plaintiff and Class Members demand a trial by jury on all issues so triable.

Dated: March 24, 2023

*/s/ Kenneth A. Wexler*

Kenneth A. Wexler
Justin N. Boley
Eaghan S. Davis
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
esd@wbe-llp.com
Firm ID No: 99616

Ryan F. Stephan
James B. Zouras
Catherine Mitchell
STEPHAN ZOURAS
222 W. Adams St., Suite 2020
Chicago, Illinois, 60606
Tel: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephaszouras.com
cmitchell@stephanzouras.com

Kevin Landau
TAUS, CEBULAS & LANDAU LLP
123 William Street, Suite 1900A
New York, NY 10038
Tel: (212) 931-0704
klandau@tcllaw.com

*Attorneys for Plaintiff and the Proposed Class*

25

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## <u>VERIFICATION</u>

Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*/s/ Kenneth A. Wexler*
WEXLER BOLEY & ELGERSMA
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Firm ID No: 99616

26