# EXHIBIT 5

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

FILED
3/24/2023 2:43 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22015106

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ERICA NORMAN, individually and on behalf
of all others similarly situated,

           Plaintiffs,

*v.*

SERVALL BIOMETRICS D/B/A
PATRONSCAN, Inc.

           Defendants.

2023CH02874

## CLASS ACTION COMPLAINT

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

Plaintiff Erica Norman brings this action against Defendant Servall Biometrics d/b/a Patronscan Inc. ("Patronscan"), individually and on behalf of all others similarly situated, and alleges the following based on personal knowledge, the investigation of counsel, and information and belief.

## I.    INTRODUCTION

1.    On January 13, 2023, Plaintiff Erica Norman attended a "Pajamas" concert at Bourbon on Division, a music venue located on Division Street in Wicker Park, Chicago.

2.    Before Ms. Norman entered the concert, the venue's bouncer scanned her face and her driver's license using a Patronscan device. The Patronscan device took a photograph of Ms. Norman and then performed a scan of facial geometry on that photograph and the image of Ms. Norman on her driver's license.

3.    Ms. Norman was not provided with written disclosures and she did not provide informed written consent regarding this collection and use of her biometric identifiers and information (collectively, "biometric data").

4.    In capturing, storing, and sharing the biometric data of Ms. Norman and others without proper disclosures and written consent, Patronscan violated and continues to violate the Illinois Biometric Information Privacy Act ("BIPA" or "the Act").

5.    Patronscan violates BIPA in a particularly Orwellian manner by moving beyond advanced facial-recognition software, where a program essentially matches facial attributes between two photographs and provides verification: In addition to collecting scans of people's faces to cross-check individual faces against an individual's proffered form of identification ("ID"), Patronscan also examines and captures thousands of data points and pixels and runs a person's facial scan and ID against its growing database of criminals, more

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

than 50,000 flagged "troublemakers," and "V.I.P.'s," whose information—biometric and otherwise—is shared among Patronscan and its expanding network of business customers.[1]

6.    And if trouble occurs after a previously unflagged patron enters an establishment, Patronscan admits it retains the biometric data of suspect customers for inclusion in its flagged database, advertising the service as equivalent to a "bouncer that never forgets a face[.]"[2]



7.    In the regular course of its business, Patronscan shares captured biometric data of persons like Ms. Norman with third parties, including Patronscan's customers—namely, the venue, bar, or business and law enforcement officials—without a warrant or subpoena.[3]

---

[1] Patronscan, *ID Scanner for Bars* (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars/.

[2] *Id*.

[3] *Entertainment Venue Privacy Policy*, Patronscan (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

8.      Patronscan's trade in biometric information has profound implications for the data privacy rights and civil liberties of Illinois citizens and residents of other states visiting businesses in Illinois. Patronscan's core business practice directly contravenes the letter and purpose of BIPA.

9.      In 2008, the State of Illinois enacted BIPA with the purpose of serving "[t]he public welfare, security, and safety . . . by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information"[4]— namely, identifiers such as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or *face geometry*," and biometric information derived from those identifiers.[5] In so doing, the Illinois legislature recognized that "[t]he full ramifications of biometric technology are not fully known,"[6] and that "[b]iometrics . . . are biologically unique to the individual; therefore, once compromised, the individual has no recourse."[7]

10.      BIPA addresses the dangers posed by the mishandling of biometric identifiers and information by providing a right of action to any person who is subjected to a violation of the Act within the State of Illinois.[8]

11.      As relevant here, a private entity in the possession of biometric identifiers or information violates BIPA when it:

> i.      collects and captures biometric information before first "inform[ing] the subject . . . in writing that a biometric identifier or biometric information is being collected or stored[,]" "inform[ing] the subject. . . in writing of the

---

[4] 740 ILCS 14/5(g).

[5] 740 ILCS 14/10 (defining "biometric identifier" and "biometric information") (emphasis added).

[6] 740 ILCS 14/5(f).

[7] 740 ILCS 14/5(c).

[8] 740 ILCS 14/20.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used," and then "receiv[ing] a written release executed by the subject of the biometric identifier or biometric information";[9]

ii.    fails to obtain a person's consent before "disclos[ing], redisclos[ing], or otherwise disseminat[ing] a person's . . . biometric identifier or biometric information" to a third-party;[10] and

iii.   fails to establish a publicly available policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information,"[11] and profits in any way from the use of her biometric identifiers and information.[12]

12.    As a private entity in the possession of biometric information and identifiers obtained by capturing, using, storing, and sharing them through its portal and software, Patronscan violated and continues to violate § 15(a) of BIPA by failing to establish a publicly available policy establishing a retention schedule and guidelines for permanently destroying biometric data obtained from customers entering establishments that use Patronscan in Illinois.[13]

13.    Patronscan violated and continues to violate § 15(b) of BIPA by collecting this biometric data without first providing written notice and obtaining written informed consent from persons entering venues using Patronscan, including Plaintiff and Class Members.[14]

14.    Patronscan violated and continues to violate § 15(c) of BIPA by wrongfully profiting from the biometric data it has collected from its customers' patrons—including the

---

[9] 740 ILCS 14/15(b)(1)-(3).

[10] 740 ILCS 14/15(d).

[11] 740 ILCS 14/15(a).

[12] 740 ILCS 14/15(c).

[13] 740 ILCS 14/15(a).

[14] 740 ILCS 14/15(b) (requiring provision of written disclosure and obtaining written informed consent).

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

scans Plaintiff's and Class Members' facial geometries —by using the biometric data it obtains to maintain a database of "problem individuals" and improve its ID authentication software, thereby making the technology more profitable to Patronscan, which sells its hardware and software to businesses in the State of Illinois.

15.    Patronscan violated and continues to violate § 15(d) by failing to obtain consent from people before disclosing, redisclosing, and disseminating their biometric identifiers or biometric information to a third-party, like venue employees, subcontracted security personnel, and law enforcement officials, and upon information and belief, third-party databases, without patrons' consent.

16.    In sum, Patronscan obtained Plaintiff's and Class Members' facial scans through its hardware and then stored, used, and shared those scans through its software. In doing so, Patronscan profited from Plaintiffs' and Class Members' biometric data and harmed the substantive privacy interests that BIPA was intended to protect.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## II.     PARTIES

17.     Plaintiff Erica Norman is a natural person and citizen of the State of Illinois, residing in the Northern District of Illinois.

18.     Servall Biometrics d/b/a Patronscan is a Canadian corporation with a principal place of business at 10504 42 St. SE. Calgary, Alberta, Canada.

## III.     JURISDICTION AND VENUE

19.     This is a class action complaint for violations of BIPA (740 ILCS 14/1, *et seq.*), seeking statutory and actual damages.

20.     No federal question is presented by this complaint. Plaintiffs bring this complaint solely under state law and not under federal law, and specifically not under the United States Constitution, nor any of its amendments, nor under 42 U.S.C. § 1981 or 1982, nor any other federal statute, law, rule, or regulation. Plaintiff believes and alleges that a cause of action exists under state law for the conduct complained of herein.

21.     This Court has personal jurisdiction over Plaintiff and the Class because they submit to the Court's jurisdiction. This Court has personal jurisdiction specifically over Defendant because Defendant deliberately targeted the Illinois market by actively marketing, selling, and acquiring customers in the state who have paid Defendant significant sums of money, and entered into contracts for the use of its hardware and software that captures, uses, stores, and disseminates biometric information and identifiers, from which the company

6

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

profits.[15] Plaintiffs' claims therefore arise out of, or relate to, Defendant's extensive business contacts and contractual performance within the state of Illinois.[16]

22.     Venue is proper in this County under 735 ILCS 5/1-108 and 2-101 because a substantial part of the acts or omissions giving rise to the claims occurred in Cook County. Specifically, Patronscan's collection of Plaintiff's and many Class Members' biometric information occurred within Cook County.

## IV.     FACTUAL ALLEGATIONS

### A. Patronscan collects biometric information and identifiers.

23.     On January 13, 2023, Plaintiff attended a concert and was subjected to Patronscan's technology. Before Plaintiff arrived at the concert venue, she received an electronic ticket that did not contain disclosures about the venue or Patronscan's collection, use, or disclosure of her biometric information.  Upon entry into the concert venue, a bouncer asked Ms. Norman to hand over her driver's license, scanned her license into a Patronscan portal, and then took her photograph with a camera attached to a Patronscan portal. Patronscan software then scanned her facial geometry from the photograph.

---

[15] 735 ILCS 5/2-209(a)(1) (transaction of any business), (a)(7) (making or performance of any contract connected with this State), (b)(4) (corporation doing business within this State), (c) (jurisdiction on any other basis).

[16] *See e.g., Maunder v. DeHavilland Aircraft of Canada, Ltd.,* 112 Ill. App. 3d 879, 883 (1st Dist. 1983), *aff'd*, 102 Ill. 2d 342 ("Defendant in the present case [a Canadian corporation], as in *Beech Aircraft,* entered the Illinois market by way of its distributor [a third party]. Defendant regularly and systematically reaped substantial profits through the sale of its parts [product] by its Illinois subsidiary. The fact that these sales were conducted indirectly through a third party does not excuse defendant from the jurisdiction of Illinois courts. In light of . . . its own activities directed at promoting the sale of its product in Illinois, we hold that defendant is actively and systematically doing business in Illinois and is therefore subject to the jurisdiction of Illinois courts.").

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

24.    The Patronscan portal and biometric information collection process is shown on its website:[17]





---

[17] *Video of Patronscan Scanning Process*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars/.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874



25.     Security or venue personnel place an ID into the Patronscan portal, which scans the ID and uploads the ID to Patronscan's software, which runs a multi-step authentication check on the ID itself. Simultaneously, the camera attached to the Patronscan portal takes a photograph of the patron, uploads the photograph to Patronscan's software, which scans the photograph for facial geometry, and compares that geometry to the provided ID, as well as Patronscan's database of flagged and V.I.P. individuals.

26.     Patronscan collects the information of thousands of other Illinois citizens and residents of other states visiting businesses in Illinois.  Indeed, Patronscan confirms that it collects data to "verify and authenticate patron age and match patrons against the venue or networked flag list [explained below]. Patronscans['] collection of data is limited to: Name, Date of Birth, *Photo*, Gender, Post Code/Zip Code." [18]

---

[18] *Entertainment Venue Privacy Policy*, PATRONSCAN (last visited March 20, 2023) (emphasis added), https://patronscan.com/privacy-entertainment-venues.

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

**B. Patronscan fails to give citizens written disclosures and obtain their written informed consent before collecting their biometric information and identifiers.**

27.    When Plaintiff entered Bourbon on Division, there was no posted written notice inside or outside the venue about the collection of biometric data, nor did she receive an email or any other written notice from Patronscan with a biometric disclosure before the event, nor were there biometric disclosures on her concert ticket. Plaintiff was therefore wholly unable to give her informed written consent for the collection of her biometric information, nor did she ever provide Patronscan with such consent before her face was scanned by the company.

28.    Plaintiff's experience is representative of patrons' experiences generally.

29.    Patronscan advertises that ID authentication and flag-checks can be performed "in seconds."[19] The process can be completed in seconds only because Patronscan does not provide a written notice to patrons, allow them adequate time to review it, or obtain their informed written consent.

**C. Patronscan uses citizens biometric information and identifiers and discloses them to third-parties without their written informed consent.**

30.    One of Patronscan's core functions is a tool to verify forms of identification by scanning IDs and faces to "analyze[ ] over 6,000 data points" between a person's face and their form of identification to "determine an ID's authenticity."[20] The company's "proprietary algorithms go beyond simple ID authentication to look for pixel-level discrepancies" between a patron's ID, a stored copy of an authenticated ID from the same issuer, and the patron's

---

[19] *See Developer Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/developer.

[20] *ID Scanner for Bars*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars.

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

face. Patronscan "software uses a combination of technologies such as artificial intelligence" as well as "character recognition, barcodes, rfids, microprint, etc."[21] The company allows users to "[i]ntegrate Patronscan's [face] scanning software into [their] iOS, Android, web, or desktop application to authenticate IDs and capture [biometric] data [and] [r]eceive [identification] authentication responses in seconds, not hours or days."[22]

31.     The company markets its ID and face scanning hardware (device that captures biometric data through scans of facial geometry) and software (biometric information database) to nightclubs and bars, vape shops, automotive dealerships, property managers, dispensaries, retail establishments, financial services institutions, and telecom companies.[23]

32.     Beyond ID verification, a core function of Patronscan is the recognition of both "flagged" troublemakers and V.I.Ps through their biometric identifiers.  "Patronscan is also used as an informational system that allows [businesses] to flag individuals who are reported to have engaged in conduct on a patron's presence that created a serious risk to guests or staff."[24] Patronscan hosts a database of "flagged" individuals which warehouses the data of "50,000+ individuals known for assaults, chargebacks, drugs, and property damage."[25]

---

[21] Patronscan, "Advantages" Page, accessible at: https://patronscan.com/advantages (last accessed March 20, 2023).

[22] *Developer Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/developer.

[23] *Welcome Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/.

[24] *See Privacy Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

[25] *See ID Scanner for Bars*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars/.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

33.     "Flags can be either single venue or shared across all networked venues (shared with other participating venues). Venue flags pertain only to the venue/venues in the same ownership group who placed the flag and are not visible to any other venue. As of January 1, 2019, the maximum flag period for any existing or new venue flag is 5 years. This storage period applies only for the same business flags. If you have a venue flag, it will only be displayed if your ID [and face] is scanned at the business that created the flag, if you visit a different business your flag will not be displayed." [26]

34.     "Networked flags can be viewed by other venues on the network. These flags are only shown when a patrons['] ID [and face] is scanned at the venue. Venues cannot search or view other business' flags. Flags are only visible when the patrons ID is scanned at those venues. The maximum flag period for a networked flag is 1 year in length." [27]

35.     The software also allows users to mark patrons for positive reasons, allowing bar and venue users to "treat VIPs" like VIPs.  Patronscan allows businesses to recognize V.I.P. IDs and faces upon arrival and "deliver memorable experiences by sending staff notifications . . . . [allowing them to] [h]andle private club membership requirements and reward big spenders with special treatment. [Patronscan can] [t]ier . . .  members into groups so [   ] door staff recognize and welcome [the] most valued patrons."[28]

36.     To accomplish these objectives, Patronscan discloses a patron's biometric information and identifiers to third-party databases to check for criminal history, and discloses

---

[26] *Privacy Page*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

[27] *Id.*

[28] *ID Scanner for Bars*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars.

their information to the venue itself (a third-party outside of the data subject – Patronscan relationship), as well as their security personnel (who are often third-party subcontractors), and renders an "accepted" message for Patrons that pass verification and flag checks, like Plaintiff, alerts them of the presence of a "V.I.P.," or provides a "flagged" alert for purported "troublemakers" that are rejected at the door.[29]

37.     But Patronscan's disclosure of biometric data does not end at the entryway. "If the venue needs to log an incident [after entry] and place a patron on the flagged list for example, the venue [or its security] can [go back and] reference a *photo* and data such as name, age, and gender."[30]

38.     And "[i]n case of a major incident concerning public safety, law enforcement may obtain access to a venues data, but only when an official investigation has been launched. The three conditions in which law enforcement may request Patronscan information include: [1] The law enforcement agency has identified its lawful authority to obtain the information[;] [2] The law enforcement agency has indicated that the disclosure is requested for the purpose of enforcing a law in its jurisdiction, carrying out an investigation relating to the enforcement of any such law, or gathering intelligence for the purpose of enforcing any such law[;] [3] The law enforcement agency has provided an investigation number or any other uniquely identifiable number that can be traced back to the purpose of the disclosure request."[31]

39.     In none of the three conditions above does Patronscan require law enforcement officials to provide the company *a warrant or subpoena* before sharing citizens' biometric data

---

[29] *Entertainment Venue Privacy*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

[30] *Id*. (emphasis added).

[31] *Id*.

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

with them.[32] Even if Patronscan asks a law enforcement agency to identify its "lawful authority to obtain the [biometric] information," doing so does not equate to actually requiring the provision of a warrant or subpoena before handing over such sensitive information.

**D. Patronscan fails to provide a publicly available, BIPA-compliant retention policy.**

40.     Patronscan provides the following retention and deletion policy on its website:

> Unless a patron is flagged, data is retained [by Patronscan and the venue] for a limited period of time before being permanently deleted. This period allows crime victims sufficient time to report a crime and for law enforcement to review patron records to identify the alleged assailant(s) [through the sharing process detailed above]. It is common for victims to report crimes several days to weeks later. Data is permanently deleted as per the data retention period below: [ ] 30 days in the United States (as of January 1st, 2019) . . . The only data that is saved beyond the above time frames is specific to patrons that are on the flag list.[33]

41.     Thus, while non-flagged patrons' biometric data is purportedly deleted within 30 days if it was collected after January 1, 2019, Patronscan either wholly fails to inform V.I.P. and flagged individuals when their information will be deleted, or *never* deletes the data of V.I.P. and flagged individuals, which could be longer than three years since the individual's last interaction with Patronscan.[34]

42.     Plaintiff was allowed entry into Bourbon on Division, so was presumably not a flagged individual at the time of her entry. But Plaintiff is unaware whether she was marked as a V.I.P. by the venue or Patronscan after her entry, leaving her in limbo of which

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

FILED DATE: 3/24/2023 2:43 PM  2023CH02874

Patronscan retention policy applies. Thus, Patronscan's retention policy for V.I.P. and flagged individuals is insufficient.

**E. Patronscan profits from its use of citizens biometric information.**

43.     Patronscan advertises to potential customers that its software is akin to a "bouncer that never forgets a face."[35]

44.     But Patronscan's software is much more than a bouncer that never forgets a face: the software is a digital hivemind that can access caches of a patron's most sensitive information, associate a face with bad behavior, criminal history, and perceived social or economic status, and share that information instantaneously with other "bouncers," police, or authorities around the world. Each face scan improves Patronscan software by building its database of information and increasing its collection of V.I.P. and "flagged" individuals, which the company then advertises and sells to businesses seeking to track, block, or incentivize certain types of patrons.

---

[35] *ID Scanner for Bars*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/id-scanner-for-bars/.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## V.   CLASS ACTION ALLEGATIONS

45.   Plaintiff Erica Norman brings this action on behalf of herself and under 735 ILCS 5/2-801 as the representative of a Class defined as follows:

> All persons who had their biometric identifiers or information collected, captured, received, otherwise obtained, used, or stored in Illinois by Defendant during the Class Period.

46.   For purposes of this action, the Class Period is defined as March 24, 2018, through the present.

47.   Excluded from the Class are Defendant Servall Biometrics d/b/a Patronscan Inc. and any entity in which Defendant has a controlling interest, as well as any of Defendant's legal representatives, officers, directors, assignees, and successors.

48.   Members of the Class are so numerous that joinder of all Class Members is impractical. Defendant currently boasts that it has scanned approximately 197,200,0000 IDs and faces in 203 cities.[36] Upon Plaintiff's personal knowledge, Patronscan has employed its hardware and software to collect and capture biometric information in the City of Chicago, Illinois, and upon information and belief, Patronscan has also done so in numerous other cities in Illinois.

49.   Plaintiff's claims are typical of the members of Class Members who were aggrieved by the same wrongful conduct of Patronscan: their substantive privacy interests were harmed (i) by Patronscan obtaining their biometric identifiers or information without first providing adequate written notice and their informed written consent,[37]

---

[36] *Entertainment Venue Privacy Policy*, PATRONSCAN (last visited March 20, 2023), https://patronscan.com/privacy-entertainment-venues.

[37] 740 ILCS 14/15(b)(1)–(3).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

(ii) by Patronscan disclosing, redisclosing, or otherwise disseminating their biometric identifiers or information to third-parties without obtaining proper consent,[38] (iii) by Patronscan failing to establish an adequate publicly available policy regarding the retention of Plaintiff's and Class Members' biometric identifiers and information,[39] and (iv) by Patronscan profiting from their biometric identifiers or information.[40]

50.     Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.

51.     Plaintiff is represented by counsel with experience in the prosecution of complex class actions and with particular experience with class actions raising claims under BIPA.

52.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class Members because Patronscan has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Patronscan's wrongful action.

53.     Questions of law and fact common to the Class include:

   a.   Whether Patronscan established a publicly available policy for retention of biometric identifiers and information sufficient to satisfy the requirements of § 15(a) of BIPA.

   b.   Whether Patronscan provided written notice and obtained written consent of persons whose biometric identifiers and information were collected by Patronscan's facial scan and ID verification system,

---

[38] 740 ILCS 14/15(d).

[39] 740 ILCS 14/15(a).

[40] 740 ILCS 14/15(c).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

and, if so, whether such notice and consent are sufficient to satisfy the requirements of § 15(b) of BIPA.

c.   Whether Patronscan profited from the use of the biometric identifiers and information it collected via Patronscan's hardware to improve its database of biometric identifiers and information on non-flagged and flagged individuals it sells to businesses, contrary to § 15(c).

d.   Whether Patronscan obtained requisite consent before disclosing, redisclosing, or otherwise disseminating biometric identifiers or biometric information to a third-party to satisfy the requirements of § 15(d).

e.   Whether persons who had their biometric identifiers and information captured by Patronscan are entitled to damages, and, if so, in what amount.

f.   Whether Patronscan should be enjoined from collecting biometric identifiers and information illegally through its hardware and using them in its software.

54.   A class action is a superior method for the fair and efficient adjudication of the controversy. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual class actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs the potential difficulties in management of this class action.

55.   Plaintiffs know of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## VI.   CLAIMS FOR RELIEF

### Claim 1: Violation of Section 15(a) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(a)) by Failing to Establish a Publicly Available Policy Governing the Retention of Biometric Identifiers and Information

56.   Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

57.   Section 15(a) of BIPA provides that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information . . . ."[41] The biometric identifiers and information must be permanently destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."[42]

58.   Servall Biometrics d/b/a Patronscan is a Canadian corporation and is therefore a private entity under BIPA.[43]

59.   The facial geometries of Plaintiff and Class Members are biometric identifiers under the Act, and the information that Patronscan derived from these identifiers is biometric information covered by the Act.[44]

60.   As explained in paragraphs 40 to 42 above, Patronscan did not properly develop a publicly available written policy governing the retention of biometric identifiers and information.

---

[41] 740 ILCS 14/15(a).

[42] 740 ILCS 14/15(a).

[43] 740 ILCS 14/10.

[44] *Id.*

19

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

61.     By improperly retaining the biometric information of Plaintiff and Class Members, Patronscan violated the very privacy interests that BIPA was intended to protect.

62.     On behalf of herself and the Class, Plaintiff seeks:

(a) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to develop and make publicly available a retention policy that complies with BIPA's § 15(a);[45]

(b) the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(a);[46]

(c) the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(a);[47] and

(d) reasonable attorneys' fees and costs and other litigation expenses.[48]

**Claim 2: Violation of Section 15(b) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(b)) by Obtaining Biometric Identifiers or Biometric Information Without Written Informed Consent**

63.     Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

64.     Section 15(b) of BIPA makes it unlawful for any private entity to:

collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric identifier or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . .[49]

---

[45] 740 ILCS 14/20(4).

[46] 740 ILCS 14/20(2).

[47] 740 ILCS 14/20(1).

[48] 740 ILCS 14/20(3).

[49] 740 ILCS 14/15(b).

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

65.    The written release required by § 15(b)(3) means "informed written consent."[50]

66.    As detailed in paragraphs 27-29 above, Patronscan systematically collected, stored, and used Plaintiff's and Class Members' biometric identifiers and information without providing the notice required by § 15(b)—including notice that their biometric data was being used for the specific purpose of cross-checking their face against their identification, third-party databases, and Patronscan's "flagged" database.

67.    Likewise, Patronscan never obtained from Plaintiff's or Class Members the informed written consent required by BIPA.

68.    By improperly collecting, storing, and using Plaintiff's and Class Members' biometric identifiers and information, Patronscan violated their rights to privacy in their biometric data.

69.    On behalf of herself and the Class, Plaintiff seeks:

(a) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Patronscan to comply with § 15(b)'s requirement for collecting, storing, and using biometric identifiers and information;[51]

(b) the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(b);[52]

(c) the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(b);[53] and

(d) reasonable attorneys' fees and costs and other litigation expenses.[54]

---

[50] 740 ILCS 14/10.

[51] 740 ILCS 14/20(4).

[52] 740 ILCS 14/20(2).

[53] 740 ILCS 14/20(1).

[54] 740 ILCS 14/20(3).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

**Claim 3: Violation of Section 15(c) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(c)) by Profiting from Biometric Identifiers or Biometric Information Obtained Through Patronscan**

70.     Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

71.     Section 15(c) of BIPA makes it unlawful for any "private entity in possession of a biometric identifier or biometric information" to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."[55]

72.     As detailed in paragraphs 43-44 above, Patronscan had possession of Plaintiff's and Class Members' biometric identifiers and information and, without informing them, profited from their biometric identifiers and information by using that biometric data to make its "flagged" and V.I.P. patron database more robust, which the company marketed and sold to businesses in Illinois.

73.     By profiting from its undisclosed use of Plaintiff's and Class Members' biometric identifiers and information, Patronscan violated the substantive privacy interests that BIPA protects.

74.     On behalf of herself and the Class, Plaintiff seeks:

    (a) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to cease profiting from the use of their biometric identifiers and information;[56]

    (b) the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(c);[57]

---

[55] 740 ILCS 14/15(c).

[56] 740 ILCS 14/20(4).

[57] 740 ILCS 14/20(2).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

(c) the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(c);[58] and

(d) reasonable attorneys' fees and costs and other litigation expenses.[59]

**Claim 4: Violation of Section 15(d) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(d)) by Disclosing Biometric Identifiers or Biometric Information Obtained Through Patronscan Without Written Informed Consent**

75.     Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

76.     Section 15(d) of BIPA makes it unlawful to:

Disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject. . . consents to the disclosure or redisclosure. . . (4) the disclosure is issued pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

77.     As explained in detail in paragraphs 30 to 39, Patronscan regularly discloses and rediscloses patrons' biometric identifiers and information, without their consent, to third-party databases, Patronscan's customer business, that businesses' staff, subcontracted security personnel, and law enforcement, without a warrant or subpoena.

78.     By sharing Plaintiff's biometric identifiers and information, Patronscan violated the substantive privacy interests that BIPA protects.

79.     On behalf of herself and the Class, Plaintiff seeks:

(a) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to cease disclose and redisclose their biometric identifiers and information without consent or a valid warrant or subpoena;[60]

---

[58] 740 ILCS 14/20(1).

[59] 740 ILCS 14/20(3).

[60] 740 ILCS 14/20(4).

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

(b) the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(d);[61]

(c) the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(d);[62] and

(d) reasonable attorneys' fees and costs and other litigation expenses.[63]

## VIII. PRAYER FOR RELIEF

80.     Wherefore, on behalf of herself and the Class, Plaintiff respectfully requests that

this Court enter an Order:

    a.  Certifying this case as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the Class defined above, appointing Plaintiff Erica Norman as representative of the Class, and appointing their counsel as Class Counsel;

    b.  Declaring that Patronscan's actions, as set out above, violate § 15(a), (b), (c), and (d) of BIPA;

    c.  Awarding the greater of actual damages or statutory damages of $5,000 per intentional or reckless violation of BIPA, and the greater of actual or statutory damages of $1,000 per negligent violation of BIPA;

    d.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an order requiring Patronscan to collect, store, and use biometric identifiers in complaint with BIPA;

    e.  Awarding Plaintiff and the Class their reasonable litigation expenses and attorney's fees;

    f.  Awarding Plaintiff and the Class pre-and post-judgment interest, to the extent allowable; and

    g.  Awarding such other and further relief as equity and justice may require.

---

[61] 740 ILCS 14/20(2).

[62] 740 ILCS 14/20(1).

[63] 740 ILCS 14/20(3).

FILED DATE: 3/24/2023 2:43 PM    2023CH02874

## XI.    JURY DEMAND

81.    Plaintiff and Class Members demand a trial by jury on all issues so triable.


Dated: March 24, 2023

*/s/ Kenneth A. Wexler*

Kenneth A. Wexler
Justin N. Boley
Eaghan S. Davis
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
esd@wbe-llp.com
Firm ID No: 99616

Ryan F. Stephan
James B. Zouras
Catherine Mitchell
STEPHAN ZOURAS
222 W. Adams St., Suite 2020
Chicago, Illinois, 60606
Tel: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephaszouras.com
cmitchell@stephanzouras.com

Kevin Landau
TAUS, CEBULAS & LANDAU LLP
123 William Street, Suite 1900A
New York, NY 10038
Tel: (212) 931-0704
klandau@tcllaw.com

*Attorneys for Plaintiff and the Proposed
Class*

25

FILED DATE: 3/24/2023 2:43 PM   2023CH02874

## <u>VERIFICATION</u>

Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil

Procedure, the undersigned certifies that the statements set forth in this instrument are true

and correct, except as to matters therein stated to be on information and belief and as to such

matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*/s/ Kenneth A. Wexler*
WEXLER BOLEY & ELGERSMA
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Firm ID No: 99616

FILED
3/24/2023 3:42 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22017297

FILED DATE: 3/24/2023 3:42 PM   2023CH02874

Appearance and Jury Demand *

(12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY _____ DEPARTMENT/___1___ DISTRICT

| | |
|---|---|
| Erica Norman, individually and on behalf of all others similarly situated, | Case No. ___2023CH02874___ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Servall Biometrics d/b/a Patronscan, Inc. | Court Date: _____ Room No.: _____ |
| Defendant | |

Address of Court District for Filing

### APPEARANCE AND JURY DEMAND *

☐ General Appearance

☑ Jury Demand *

☐ 0900 - Fee Paid
☐ 0908 - Trial Lawyers Appearance - No Fee
☐ 1900 - Appearance and Jury Demand/Fee Paid
☑ 1904 - Appearance and Jury Demand/No Fee Paid

☐ 0904 - Fee Waived

☐ Twelve-person Jury
☐ Six-person Jury

The undersigned enters the appearance of: ○ Plaintiff  ○ Defendant

Litigant's Name: _____

Signature: /s/ _____

☐ Initial Counsel of Record      ☐ Pro Se (Self-represented)

☑ Additional Appearance      ☐ Substitute Appearance

● Atty. No.: ___99616___      ○ Pro Se 99500

Name: __Justin N. Boley__

Atty. for (if applicable):

Plaintiff - Erica Norman

Address: __Wexler Boley & Elgersma; 311 S. Wacker Dr., Suite 5450__

City: __Chicago__

State: __IL__  Zip: __60606__  Phone: __(312) 346-2222__

Primary Email: __jnb@wbe-llp.com__

☐ 2810 Rule 707 Out-of-State Counsel
(pro hac vice)

### IMPORTANT

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:

☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: __alc@wbe-llp.com__

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ __Justin N. Boley__

Attorney for  ● Plaintiff  ○ Defendant

## Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

**cookcountyclerkofcourt.org**

Page 1 of 1

FILED
3/24/2023 3:46 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22017466

Appearance and Jury Demand *

(12/01/20) CCG 0009

*FILED DATE: 3/24/2023 3:46 PM   2023CH02874*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY _____ DEPARTMENT/ __1__ DISTRICT

Erica Norman, individually and on behalf of all others similarly situated,

_____ Plaintiff

v.

Servall Biometrics d/b/a Patronscan, Inc.

_____ Defendant

Case No. _2023CH02874_

Claimed $: _____

Return Date: _____  Time: _____

Court Date: _____  Room No.: _____

Address of Court District for Filing

### APPEARANCE AND JURY DEMAND *

☐ General Appearance  
☑ Jury Demand *

☐ 0900 - Fee Paid  
☐ 0908 - Trial Lawyers Appearance - No Fee  
☐ 1900 - Appearance and Jury Demand/Fee Paid  
☑ 1904 - Appearance and Jury Demand/No Fee Paid

☐ 0904 - Fee Waived

☐ Twelve-person Jury  
☐ Six-person Jury

The undersigned enters the appearance of: ○ Plaintiff  ○ Defendant

Litigant's Name: _____

Signature: /s/ _____

☐ Initial Counsel of Record  ☐ Pro Se (Self-represented)

☑ Additional Appearance  ☐ Substitute Appearance

● Atty. No.: _99616_  ○ Pro Se 99500

Name: _Eaghan S. Davis_

Atty. for (if applicable):

_Plaintiff - Erica Norman_

Address: _Wexler Boley & Elgersma; 311 S. Wacker Dr., Suite 5450_

City: _Chicago_

State: _IL_  Zip: _60606_  Phone: _(312) 346-2222_

Primary Email: _esd@wbe-llp.com_

☐ 2810 Rule 707 Out-of-State Counsel
(pro hac vice)

### IMPORTANT

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _yr@wbe-llp.com_

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ _Eaghan S. Davis_

Attorney for ● Plaintiff  ○ Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

Page 1 of 1

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 3

FILED DATE: 3/24/2023 3:49 PM   2023CH02874

FILED
3/24/2023 3:49 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22017547

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

ERICA NORMAN, on behalf of himself and
all others similarly situated,

Plaintiff,

v.

SERVALL BIOMETRICS D/B/A
PATRONSCAN, INC.

Defendants.

Case No. 2023CH02874

CLASS ACTION

JURY TRIAL DEMANDED

### RULE 222(b) AFFIDAVIT

Pursuant to Illinois Supreme Court Rule 222(b), the undersigned advises that this matter

seeks more than $50,000.00 in damages. Under penalties as provided by law pursuant to 735

ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true

and correct.

Dated: March 24, 2023

*/s/ Kenneth A. Wexler*
Kenneth A. Wexler
Justin N. Boley
Eaghan S. Davis
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
esd@wbe-llp.com
Firm ID No: 99616

Ryan F. Stephan
James B. Zouras
Catherine Mitchell
STEPHAN ZOURAS
222 W. Adams St., Suite 2020

FILED DATE: 3/24/2023 3:49 PM    2023CH02874

Chicago, Illinois, 60606
Tel: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephaszouras.com
cmitchell@stephanzouras.com

Kevin Landau
TAUS, CEBULAS & LANDAU LLP
123 William Street, Suite 1900A
New York, NY 10038
Tel: (212) 931-0704
klandau@tcllaw.com

*Attorneys for Plaintiff and the
Proposed Class*

Case 1:23-cv-04015 Document # 5 Filed: 06/22/23 Page 33 of 230 PageID #:93

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois circuit courts.

FILED DATE: 3/24/2023 4:00 PM   2023CH02874

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | *For Court Use Only* |
|---|---|---|
| Cook _____ COUNTY | | FILED<br>3/24/2023 4:00 PM<br>IRIS Y. MARTINEZ<br>CIRCUIT CLERK<br>COOK COUNTY, IL<br>2023CH02874<br>Calendar, 3<br>22017947 |

| **Instructions ▼** | |
|---|---|
| Enter above the county name where the case was filed. | Erica Norman<br>**Plaintiff / Petitioner** *(First, middle, last name)*<br>System Generated Hearing Date: 7/24/2023 9:30 AM<br>Location: Court Room 2402<br>Judge: Price Walker, Allen |
| Enter your name as Plaintiff/Petitioner. | v. |
| Enter the names of all people you are suing as Defendants/ Respondents. | Servall Biometrics d\b\a Patronscan<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

Case number column:
2023CH02874

**Case Number**

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.<br><br>E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.<br><br>Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
|---|---|
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.<br><br>If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| | |
|---|---|
| In **1a**, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1. Defendant/Respondent's address and service information:**<br>a. Defendant/Respondent's primary address/information for service:<br>Name *(First, Middle, Last)*: Servall Biometrics d\b\a Patronscan<br>Registered Agent's name, if any: _____<br>Street Address, Unit #: 370, 5222 130 Ave SE<br>City, State, ZIP: Calgary, Alberta, T2Z 0G4<br>Telephone: (877) 778-9798   Email: support@patronscan.com |
| In **1b**, enter a second address for Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here:<br>Name *(First, Middle, Last)*: Servall Biometrics d\b\a Patronscan, C/o Jessica Asinari<br>Street Address, Unit #: 155 Wooded Vine Drive<br>City, State, ZIP: Winter Springs, Florida, 32708-0039<br>Telephone: (877) 778-9798   Email: support@patronscan.com |
| In **1c**, check how you are sending your documents to Defendant/ Respondent. | c. Method of service on Defendant/Respondent:<br>☐ Sheriff   ☑ Sheriff outside Illinois: Calgary, Alberta / Seminole Cty FL<br>*County & State*<br>☐ Special process server   ☐ Licensed private detective |

| In **2**, enter the amount of money owed to you. |
| --- |
| In **3**, enter your complete address, telephone number, and email address, if you have one. |

**2.    Information about the lawsuit:**

Amount claimed:    $ 100,000,000

**3.    Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last):*    Justin Boley (Counsel for Erica Norman)

Street Address, Unit #:    311 S. Wacker Drive, Suite 5450

City, State, ZIP:    Chicago, Illinois, 60606

Telephone:    (312) 346-2222            Email:    JNB@wbe-llp.com

---

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

---

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
| --- | --- |

**4.    Instructions for person receiving this *Summons* (Defendant):**

| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | ☑ | a. | To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served *(not counting the day of service)* by e-filing or at: |
| --- | --- | --- | --- |

Address:    Richard J Daley Center, 50 W Washington Street

City, State, ZIP:    Chicago, Illinois, 60602

| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. |
| --- |

☐    b.    Attend court:

On: _____ at _____ ☐ a.m. ☐ p.m. in _____
        *Date*                         *Time*                                                        *Courtroom*

**In-person at:**

_____
*Courthouse Address*            *City*                                *State*            *ZIP*

OR

| In **4b**, fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. |
| --- |

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance")**:**

By telephone: _____
                        *Call-in number for telephone remote appearance*

By video conference: _____
                                *Video conference website*

_____
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: _____ or visit their website
                                    *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
    *Website*

---

| **STOP!**<br>The Circuit Clerk will fill in this section. |
| --- |
| **STOP!**<br>The officer or process server will fill in the Date of Service. |

**Witness this Date:** _____

**Clerk of the Court:** 3/24/2023 4:00 PM IRIS Y. MARTINEZ

**This *Summons* must be served within 30 days of the witness date.**

Date of Service: _____
                        *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*



FILED DATE: 3/24/2023 4:00 PM   2023CH02874

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

Case: 1:23-cv-04015 Document #: 1 Filed: 06/22/23 Page 35 of 230 PageID #:35

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>Cook _____ COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | *For Court Use Only* |
|---|---|---|

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | Erica Norman _____ <br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>Servall Biometrics d\b\a Patronscan _____ <br>**Defendant / Respondent** *(First, middle, last name)* | 2023CH02874 _____ <br>**Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

My name is _____ and I state
 *First, Middle, Last*

☐ **I served the *Summons* and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

 ☐ Personally on the Defendant/Respondent:

 Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____

 On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

 Address, Unit#: _____

 City, State, ZIP: _____

 ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family

 member or lives there:

 On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

 Address, Unit#: _____

 City, State, ZIP: _____

 And left it with: _____
 *First, Middle, Last*

 Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____

 and by sending a copy to this defendant in a postage-paid, sealed envelope to the

 above address on _____ , 20 _____ .

 ☐ On the Corporation's agent, _____
 *First, Middle, Last*

 Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____

 On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

 Address: _____

 City, State, ZIP: _____

FILED DATE: 3/24/2023 4:00 PM 2023CH02874

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____
   _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**By:**

*Signature by:*   ☐ Sheriff
                   ☐ Sheriff outside Illinois:

_____
*County and State*
☐ Special process server
☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return:   $ _____
Miles _____   $ _____
Total                $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

**Print Form**     **Save Form**     **Reset Form**

FILED DATE: 3/24/2023 4:00 PM   2023CH02874

FILED
3/24/2023 4:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22018768

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

ERICA NORMAN, individually and on behalf of all others similarly situated,

                      Plaintiffs,

*v.*

SERVALL BIOMETRICS d/b/a PATRONSCAN, Inc.

                      Defendants.

Case No. 2023CH02874

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES

Plaintiff Erica Norman ("Norman" or "Plaintiff") alleges that Defendant Servall Biometrics d/b/a Patronscan, Inc. ("Patronscan" or "Defendant") systematically violated the Biometric Information Privacy Act ("BIPA") 740 ILCS § 14/1, *et seq*. Consistent with the rulings of federal and state courts overseeing BIPA actions, this case is well suited for class certification under 735 ILCS § 5/2-801. *See Alvarado v. International Laser Prod., Inc.*, Case No. 18 C 7756 (N.D. Ill. June 19, 2019), attached as Exhibit A; *Roberson v. Symphony Post Acute Care*, Case No. 17-L-733 (Cir. Ct. St. Clair County, Mar. 12, 2019) (granting class certification when the case involved a single statutory scheme – BIPA – and the primary issues were whether defendant captured biometric information and, if so, did they comply with BIPA while doing so) (attached as Exhibit B) *modified, in part, on other grounds by* 2019 IL App (5th) 190144-U (Nov. 2, 2019); *Morris v. Wow Bao LLC, et al.*, Case No. 17 CH 12029 (Cir. Ct. Cook Cty. Dec. 14, 2021), attached as Exhibit C; *Rogers v. BNSF Railway Co.*, Case No. 19 C 3083 (N.D. Ill. Mar. 22, 2022), attached as Exhibit D; *see also In re Facebook Biometric Info. Privacy*

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

*Litig.*, 326 F.R.D. 535, 542 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. Aug. 8, 2019) (holding, in a BIPA case, that "a class action is superior to individual actions"); and *Palacios v. H & M Hennes & Mauritz, LP*, Case No. 18 CH 16030 (Cir. Ct. Cook Cty Dec. Mar. 16, 2023) (certifying Class Representative where Class Representative understood the basic facts of his case and that "he is making a legal claim for violation of his biometric privacy rights on behalf of a class").

Specifically, Plaintiff seeks to certify a class consisting of thousands of individuals who had their facial geometry data unlawfully collected, captured, received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period in violation of BIPA. The question of liability is a legal question that can be answered in one fell swoop. As Plaintiff's claims and the claims of similarly-situated individuals all arise from Defendant's uniform policies and practices, they satisfy the requirement of 735 ILCS § 5/2-801 and should be certified.

Plaintiff moves for class certification to protect members of the proposed class, individuals whose proprietary and legally protected personal and private biometric data were invaded by Defendant. Plaintiff believes that the evidence and argument submitted within this motion are sufficient to allow the class to be certified now. However, in the event the Court (or Defendant) wishes for the parties to undertake formal discovery prior to the Court's consideration of this motion, Plaintiff requests that the Court allow her to supplement this briefing and defer the response and reply deadlines.

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

# I.   RELEVANT BACKGROUND

### A.   The Biometric Information Privacy Act

Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS § 14/5.

The Biometric Information Privacy Act, 740 ILCS § 14/1, *et seq.*, was enacted in 2008, arising from concerns that these experimental uses of finger-scan technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

> (1)   Informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2)   Informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
>  (3)   Receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS § 14/15(b).

Although there may be benefits to using biometrics, there are also serious risks. Facial geometry is a unique, permanent biometric identifier associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has ***no*** means by which to prevent identity theft, unauthorized tracking, or other unlawful or

improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the recent Equifax, Home Depot, Google+ and Facebook/Cambridge Analytica data breaches – individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup.

A showing of actual damages is not necessary in order to state a claim under BIPA. When an entity "fails to adhere to the statutory procedures … the right of the individual to maintain [his or] her biometric privacy vanishes into thin air." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34 (internal quotations omitted) (quoting *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018)). *See also Patel v. Facebook Inc.*, 932 F.3d 1264, 1275 (9th Cir. 2019) ("Because we conclude that BIPA protects the plaintiffs' concrete privacy interests and violations of the procedures in BIPA actually harm or pose a material risk of harm to those privacy interests … the plaintiffs have alleged a concrete and particularized harm, sufficient to confer Article III standing."). Thus, recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

## B. <u>Factual Allegations</u>

Plaintiff filed this class action against Defendant on March 24, 2023, to redress Defendant's alleged unlawful collection, use, storage, and disclosure of thousands of individuals' biometric data under BIPA. In her Complaint, Plaintiff provided detailed allegations that, when attending a concert in January 2023, Defendant's device took a photo of her and her driver's license and then performed a scan of her facial geometry, capturing thousands of data points and pixels, which it then stored and shared for its own profit. Compl.

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

¶¶ 1-2, 5, 23, 30, 43-44. Members of the putative class were similarly treated. *Id.* 23-28. Prior to this collection Defendant did not first: (1) develop and adhere to a proper publicly available retention schedule or guidelines for permanent destruction of the biometric data by Defendant, as required by BIPA; (2) inform Plaintiff and the putative Class in writing of the purpose(s) and length of time for which facial geometry data is being collected, stored, and used by Defendant; (3) provide Plaintiff and the Class (nor did they execute) a fully-compliant written release for Defendant in order to collect, store, or use their facial geometry, as required by BIPA; or (4) ask for consent before disclosing, redisclosing, or otherwise disseminating their facial geometrics to a third party, as required by BIPA. *Id.* ¶¶ 2-7, 23-30, 40-44.

Plaintiff Erica Norman attended a concert at Bourbon Division in Wicker Park, Chicago on January 13, 2023. *Id.* ¶¶ 1, 23. Upon entry to the venue, she was required to give her driver's license to a bouncer and to have her photograph taken. *Id.* ¶ 23. Both her license and photograph were entered into a Patronscan portal, after which point Patronscan, through its software, scanned Ms. Norman's photograph to collect her facial geometry. *Id.* ¶¶ 23-25.

Defendant failed to inform Plaintiff and other patrons of the extent and purposes for which it collected individuals' sensitive biometric data or to whom the data is disclosed. *Id.* ¶¶ 3, 23, 27-29, 40-41. Defendant failed to develop and adhere to a proper written, publicly available policy identifying its retention schedule and guidelines for permanently destroying individuals' geometric facial data, including Plaintiff's, when the initial purpose for collecting or obtaining their biometric data is no longer relevant, as required by BIPA. *Id.* ¶¶ 11-12, 40-42.. Patronscan discloses Plaintiff's and others' biometric data to third parties, and Defendant's patrons, including Plaintiff, are not told what might happen to their biometric data if and when Defendant merges with another company or, worse, if and when

FILED DATE: 3/24/2023 4:33 PM 2023CH02874

Defendant's entire business folds. *Id.* ¶¶ 12, 36. Patronscan profits from—and builds a business on—its improper practices. *Id.* ¶¶ 43-44.

Since Defendant neither published a proper BIPA-mandated data retention policy nor disclosed the purposes for its collection of biometric data, Defendant's patrons, including Plaintiff, have no idea to whom Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. *Id.* ¶¶ 12, 36. Nor are patrons told at the time of collection to whom Defendant discloses their biometric data or what might happen to their biometric data in the event of a merger or a bankruptcy. *Id.* Finally, Defendant failed to secure a compliant written release from its patrons, including Plaintiff, permitting it to collect, store, use, and disseminate patrons' biometric data, as required by BIPA. *Id.* ¶¶ 27-29.

Accordingly, Defendant's practices violated BIPA. As a result of Defendant's violations, Plaintiff and similarly-situated individuals were subject to Defendant's common and uniform policies and practices and were victims of its scheme to unlawfully collect, store, use, and disseminate Plaintiff's and all other similarly-situated individuals' biometric data in direct violation of BIPA. As a result of Defendant's multiple violations of BIPA, Plaintiff and all other similarly-situated individuals suffered an invasion of privacy and other damages.

Plaintiff now seeks class certification for the following similarly-situated individuals, defined as:

> All persons who had their biometric identifiers or information collected, captured, received, otherwise obtained, used, or stored in Illinois by Defendant during the Class Period.

Given Defendant's standard practices outlined above and the straightforward and common legal questions presented in this case, Plaintiff now moves for class certification. Notably, this motion is being filed shortly after the Complaint was filed and before Defendant

has responded. The parties have not discussed settlement, neither settlement offers nor demands have been made, and a scheduling order has not been issued. For the reasons discussed herein, Plaintiff's request should be granted.

## II. <u>STANDARD FOR CLASS CERTIFICATION</u>

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465, ¶ 9 (citing *Miner v. Gillette Co.*, 87 Ill.2d 7, 14 (1981)). "In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007)). Under Section 2-801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

(1)     the class is so numerous that a joinder of all members is impracticable;

(2)     there are questions of fact or law common to the class that predominate over
            any questions affecting only individual members;

(3)     the representative parties will fairly and adequately protect the interest of
                    the class; and

 (4)     the class action is an appropriate method for the fair and efficient
                    adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill.2d 441, 447 (2006) (citing 735 ILCS § 5/2-801). Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

### III.   ARGUMENT

Plaintiff's claims here are especially suited for class certification because Defendant treated patrons identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, use, and dissemination of their biometric data that was required as a condition of employment throughout the class period. Plaintiff meets each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

### A.   The Class Is So Numerous That Joinder of All Members Is Impracticable.

Numerosity is not dependent on a plaintiff setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, non-speculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

In the present case, there can be no serious dispute that Plaintiff meets the numerosity requirement. The class of potentially thousands of plaintiffs is sufficiently large to make

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

joinder impracticable.[1] Plaintiff and all similarly-situated individuals were subjected to Defendant's common and uniform policies and practices and were victims of Defendant's schemes to unlawfully collect, store, use, and disseminate their extremely personal and private biometric data in direct violation of BIPA. As a result of Defendant's violations of the Act, Plaintiff and all other similarly-situated individuals suffered an infringement of the rights afforded them under the law. *Rosenbach*, 2019 IL 123186, ¶ 38.

The precise number in the class cannot be determined until discovery records are obtained from Defendant. Nevertheless, class membership can be easily determined by reviewing Defendant's records. A review of Defendant's files regarding the collection, storage, use, and dissemination of its patrons' biometric data performed during the class period is all that is needed to determine membership in Plaintiff's proposed class. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendant's objection that "the proposed class was not ascertainable, because the process of reviewing defendant's transaction files to determine class membership would be burdensome"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40 (6th Cir. 2012)[2] (rejecting the argument that manual review of files should defeat certification, agreeing with district court's reasoning that, if manual review was a bar, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner

---

[1] Upon information and belief, the total number of putative class members is well in the thousands. Compl. ¶ 26.

[2] "Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provision, 'federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois.'" *Cruz*, 383 Ill. App. 3d at 761 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 125 (2005)).

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

in which their business records were maintained," and citing numerous courts that are in agreement, including *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at \*7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery")). Once Defendant's records are obtained, the Court will know the precise number of persons affected.

Absent certification of this class action, Defendant's patrons may never know that their legal rights have been violated, and as a result, may never obtain the redress to which they are entitled under BIPA. Illinois courts have noted that denial of class certification where members of the putative class have no knowledge of the lawsuit may be the "equivalent of closing the door of justice" on the victims. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Assn.*, 198 Ill. App. 3d 445, 452 (5th Dist. 1990). Further, recognizing the need to protect its citizens from harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. A class action would help ensure that Plaintiff and all other similarly-situated individuals have a means of redress against Defendant for its widespread violations of BIPA.

**B.**     **Common Questions Of Law And Fact Exist That Predominate Over Any Questions Solely Affecting Individual Members Of The Class.**

Courts analyze commonality and predominance under Section 2-801 by identifying the substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*, 407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then becomes whether those issues will predominate and whether they are common to the class, meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

Court of Appeals, the question is will "common … issues be the subject of the majority of the efforts of the litigants and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes."

At the heart of this litigation is Defendant's culpable conduct under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendant disregarded Plaintiff's and other similarly-situated individuals' statutorily-protected privacy rights and unlawfully collected, stored, used, and disseminated their biometric data in direct violation of BIPA. Specifically, Defendant has violated BIPA because it failed to: (1) inform Plaintiff and putative class members in writing of the purpose and length of time for which their facial geometry were being collected, stored, disseminated and used prior to harvesting their biometric data; (2) develop and adhere to a proper, publicly available retention schedule or guidelines for permanent destruction of the biometric data; and (3) provide Plaintiff and putative class members a fully-compliant written release prior to harvesting their biometric data. Defendant furthermore has: (4) profited from its improper activities and (5) disclosed patrons' biometric identifiers and information to third parties without consent. Defendant treats the entire proposed class in precisely the same manner, resulting in identical violations of BIPA. These common practices create common issues of law and fact. In fact, the legality of Defendant's collection, storage, use, and dissemination of Plaintiff's and the putative class's biometric data is the focus of this litigation.

Indeed, once this Court determines whether Defendant's practices of collecting, storing, using and disseminating individuals' biometric data without adhering to the specific requirements

of BIPA constitutes violations thereof, liability for the claims of class members will be determined in one stroke. The material facts and issues of law are substantially the same for the members of the class, and therefore these common issues could be tried such that proof as to one claimant could be proof as to all members of the class. This alone establishes predominance. The only remaining questions will be the proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Accordingly, a favorable adjudication of the Plaintiff's claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

### C. The Named Plaintiff And Class Counsel Are Adequate Representatives Of The Class.

When evaluating adequacy, courts look to whether the named plaintiff has the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*, 2015 IL App (1st) 131465, ¶ 16. In this case, Plaintiff's interest arises from statute. The class representative, Erica Norman, is a member of the proposed class and will fairly and adequately protect the class's interests. Plaintiff was required to undergo a facial geometry scan. Defendant subsequently stored Plaintiff's facial geometric data in its database(s). Prior to the collection of her biometric identifiers and/or biometric information, Plaintiff was not informed of the specific limited purposes (if any) or length of time for which Defendant collected, stored, used, or disseminated her biometric data. Nor is Plaintiff aware of a proper

12

biometric data retention policy developed by Defendant or when, if ever, Defendant will permanently delete her facial geometric information. Finally, Plaintiff was not provided a written release allowing Defendant to collect, store, use, or disseminate her facial geometric data. Thus, Plaintiff was a victim of the same uniform policies and practices of Defendant as the individuals she seeks to represent and is not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiff has the interests of those class members in mind, as demonstrated by her willingness to sue on a class-wide basis and step forward as the class representative, which subjects her to discovery. (*See* Exhibit E – Affidavit of Erica Norman). This qualifies her as a conscientious representative plaintiff and satisfies the adequacy of representation requirement.

Proposed Class Counsel, Stephan Zouras, LLP; Wexler Boley & Elgersma; and Taus, Cebulas & Landau LLP, will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. (*See* Exhibit F – Affidavit of Ryan F. Stephan and the Firm Resume attached thereto as Exhibit F-1). Stephan Zouras, LLP, Wexler Boley & Elgersma, and Taus Cebulas & Landau LLP are recognized attorneys in complex class action lawsuits and have been designated as class counsel in numerous class actions in state and federal courts, including pioneering efforts in antitrust matters and on behalf of classes of employees whose rights under BIPA were violated. (*See* Exhibit F, Exhibit F-1 (Stephan Zouras); Exhibit G, Exhibit G-1 – Affidavit of Kenneth A. Wexler and the Firm Resume attached thereto as Exhibit G-1; Exhibit H, Exhibit H-1 – Affidavit of Kevin Landau and the Firm Resume attached thereto as Exhibit H-1). Thus, proposed Class Counsel, too, are adequate and have the ability and resources to manage this lawsuit.

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

**D.**    <u>**A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.**</u>

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete Pumping Serv., Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members." *Id.*

Here, Plaintiff's claims stem from Defendant's common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens, if not thousands, of additional individual cases raising identical questions of liability. Moreover, class members are better served by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App (1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting arguments that individual lawsuits would be superior). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims in a single forum. For all these reasons, the class action is the most appropriate mechanism to adjudicate the claims in this case.

E.      **In The Event The Court Or Defendant Seek More Factual Information Regarding This Motion, The Court Should Allow Supplemental And Deferred Briefing Following Discovery.**

There is no meaningful need for discovery for the Court to certify a class in this matter; Defendant's practices and policies are uniform. If, however, the Court wishes for the Parties to engage in discovery, the Court should keep the instant motion pending during the discovery period, allow Plaintiff a supplemental brief, and defer Defendant's response and Plaintiff's reply. Plaintiff is moving as early as possible for class certification in part to avoid the "buy-off problem," which occurs when a defendant seeks to settle with a class representative on individual terms in an effort to moot the class claims asserted by the class representative. Plaintiff is also moving for class certification now because the class should be certified, and because no meaningful discovery is necessary to establish that fact. The instant motion is far more than a placeholder or barebones memorandum. Rather, Plaintiff's full arguments are set forth based on the facts alleged at this extremely early stage of litigation. Should the Court wish for more detailed factual information, the briefing schedule should be extended.

## IV.     CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order: (1) certifying Plaintiff's claims as a class action; (2) appointing Plaintiff Erica Norman as Class Representative; (3) appointing Stephan Zouras, LLP; Wexler Boley & Elgersma; and Taus, Cebulas & Landau LLP as Class Counsel; and (4) authorizing court-facilitated notice of this class action to the class. In the alternative, this Court should allow discovery, allow Plaintiff to supplement this briefing, and defer response and reply briefs.

Dated: March 24, 2023                         /s/ Kenneth A. Wexler

                                              Kenneth A. Wexler
                                              Justin N. Boley
                                              Eaghan S. Davis
                                              WEXLER BOLEY & ELGERSMA LLP
                                              311 S. Wacker Drive, Suite 5450
                                              Chicago, Illinois, 60606
                                              Tel: (312) 346-2222
                                              Fax: (312) 346-0022
                                              kaw@wbe-llp.com
                                              jnb@wbe-llp.com
                                              esd@wbe-llp.com
                                              Firm ID No: 99616

                                              Ryan F. Stephan
                                              James B. Zouras
                                              Catherine Mitchell
                                              STEPHAN ZOURAS
                                              222 W. Adams St., Suite 2020
                                              Chicago, Illinois, 60606
                                              Tel: (312) 233-1550
                                              Fax: (312) 233-1560
                                              rstephan@stephanzouras.com
                                              jzouras@stephaszouras.com
                                              cmitchell@stephanzouras.com

                                              Kevin Landau
                                              TAUS, CEBULAS & LANDAU LLP
                                              123 William Street, Suite 1900A
                                              New York, NY 10038
                                              Tel: (212) 931-0704
                                              klandau@tcllaw.com

                                              *Attorneys for Plaintiff and the Proposed
                                              Class*

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

FILED DATE: 3/24/2023 4:33 PM   2023CH02874

## VERIFICATION

Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*/s/ Kenneth A. Wexler*
WEXLER BOLEY & ELGERSMA
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Firm ID No: 99616

17

FILED DATE: 3/24/2023 4:33 PM    2023CH02874

## **CERTIFICATE OF SERVICE**

I, Kenneth Wexler, hereby certify that on March 24, 2023, I electronically filed Plaintiff's Motion For Class Certification And Request For Discovery On Certification Issues with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Kenneth A. Wexler*
WEXLER BOLEY & ELGERSMA
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Firm ID No: 99616

# EXHIBIT A

FILED
3/24/2023 4:34 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22018799

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSUE ALVARADO, on behalf of himself and all other persons similarly situated, known and unknown, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 C 7756 |
| | ) | |
| INTERNATIONAL LASER PRODUCTS, INC., | ) | Judge Rebecca R. Pallmeyer |
| INTERNATIONAL TONER CORP., and | ) | |
| CRAIG FUNK, individually, | ) | |
| | ) | |
| Defendants. | ) | |

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

**ORDER**

Plaintiff's motion to certify class [43] is granted.  Plaintiffs are directed to furnish an amended class notice, consistent with the court's rulings, within seven (7) days.

**STATEMENT**

Plaintiff Josue Alvarado filed this lawsuit alleging that his employers, Defendants International Laser Products, Inc. and  International Toner Corp., violated the Fair Labor Standards Act and the Minimum Wage Law by failing to pay overtime wages at the rate of one and one-half times Alvarado's straight pay rate.  He seeks to represent a class of workers who were also allegedly victims of this practice.

The focus of the parties' disagreement on this issue relates to the language of the class notice.  The court has reviewed the competing proposals and rules as follows:

1.     Plaintiffs' proposed class notice begins with an all-caps notice that recipients are eligible to participate in the lawsuit even if they had previously signed a settlement agreement that Defendants proposed and negotiated with several workers.  The language of the class notice ends with the words "THE SETTLEMENT DOCUMENT YOU SIGNED IS VOID, AND THE LAWSUIT SEEKS TO RECOVER MORE MONEY THAN THE COMPANY OFFERED YOU." Defendants object to this language; Defendants contend that the court has ruled that the agreements entered into are "not enforceable" (as stated in paragraph 3 of the Class Notice), not that they were "void."  (Defendants' Memorandum in Opposition to Plaintiff's Motion to Authorize Notice [50] [hereinafter, "Defs.' Opp."] at 2.)  Defendants also argue, without elaboration, that there is no "apple to apple comparison" between what the lawsuit is seeking and the relief offered employees in the proposed settlement agreement.  (*Id.*)  Without commenting on the merits of either of these contentions, the court directs that the final sentence of the notice be amended to read as follows: THE SETTLEMENT DOCUMENT YOU SIGNED IS NOT ENFORCEABLE, AND THE LAWSUIT SEEKS TO RECOVER COMPENSATION AS DESCRIBED IN THIS NOTICE.

2.     Defendants object to Plaintiffs' definition of the class seeking relief for alleged violations of the Biometric Information Privacy Act ("BIPA").  Defendants note that the complaint

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

defined that class as "Production Laborers and other hourly paid workers employed in Illinois by Defendants who were required to scan their fingerprints in Defendants' timekeeping system." (Defs.' Opp. at 1; *see* First Amended Complaint [20] ¶ 111.)  The proposed class notice, in contrast, defines the class as "All persons who worked for Defendants in Illinois since November 21, 2013, and who scanned their fingerprints in Defendants' timekeeping system without first executing a written release."  Plaintiffs contend that the revised definition is *narrower* than the original, at least to the extent that it imposes a time limit and excludes persons (if any) who executed a release.  (Plaintiffs' Reply in Support of Motion for Class Notice [52] [hereinafter, "Pltfs.' Reply"], at 2-3.)  Plaintiffs have also cited caselaw holding that amendments to the class definition are acceptable so long as they do not "greatly expand" the scope of the litigation beyond what Defendants might have expected.  *Compare Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018), *cert. denied*, No. 18-1127, 2019 WL 979392 (U.S. Apr. 1, 2019) (approving certification of a class narrower than the one proposed in the original complaint where defendant had fair notice) *with Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 737, 741 (7th Cir. 2018) (refusing to adopt class definition that "greatly expanded the potential scope of the class").  The court has no information about how many more employees might be included in the new definition; that is, neither side has explained whether there are a number of employees other than "production laborers and other hourly paid workers" who were required to scan their fingerprints.  If the class definition is in fact significantly broader than what Defendants could have anticipated when this case was initiated, the court would expect Defendants to provide that information.  This objection is overruled.

3.      Defendants contend that "The notice should state that the purpose of the lawsuit is to inform the employee of a collective action lawsuit in which s/he is potentially 'similarly situated.'" (Defs.' Opp. at 2.)  The court disagrees that informing employees is the purpose of the lawsuit.  That may be the purpose of Plaintiffs' proposed notice, but using the expression "similarly situated" is unnecessary and may be misleading.  This objection, too, is overruled.

4.      Defendants believe class members should be notified that "there is no money available now, and no guarantee that there will be."  (Defs.' Opp. at 2.)  The court believes this purpose can be served by making the following change to the notice form:  In the fourth full paragraph of the proposed notice, beginning with the words "The lawsuit seeks to recover owed overtime wages for employees, plus additional damages," the notice should read, "If Plaintiffs prevail in this lawsuit, employees will be entitled to recover unpaid overtime wages, plus additional damages . . . ."

5.      Defendants contend employees should be warned that they may be liable to pay costs if they do not prevail.  (Defs.' Opp. at 2-3.)  Plaintiffs oppose this proposal.  They cite *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 843 (N.D. Ill. 2016), in which this court expressed reluctance to chill the rights of workers to participate in a collective action by means of a warning that they could be required to sit for their depositions or even pay opposing counsel fees.  (Pltfs.' Reply at 5.)  This court deemed those risks too remote to require inclusion in a notice.  The issue in this case is whether the possibility of an award of costs is equally remote.

Defendants have cited a handful of cases in which courts have endorsed the inclusion of a notice of this possibility:  *see, e.g., Dunkel v. Warrior Energy Servs., Inc.,* 304 F.R.D. 193, 207 (W.D. Pa. 2014) (dictating inclusion of a several-sentence long disclosure of possible liability for costs); *Wright v. Lehigh Valley Hosp. & Health Network*, No. 10-cv-431, 2011 WL 221770, at *7 (E.D. Pa. Jan. 20, 2011) (requiring notice to include provision about opt-ins potentially paying court costs); *Creten-Miller v. Westlake Hardware, Inc.,* 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) (modifying notice to include, "If you do not prevail on your claim, court costs and expenses

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

may possibly be assessed against you"); *Garcia v. Elite Labor Serv., Ltd.*, No. 95 C 2341, 1996 WL 33500122, at *4 (N.D. Ill. July 11, 1996) (modifying notice to include statement that, "if you do not prevail on your claim, court costs and expenses may possibly be assessed against you"); *White v. Kcpar, Inc.*, No. 6:05–cv–1317–Orl–22DAB, 2006 WL 1722348, at *4 (M.D. Fla. June 20, 2006) (finding a notice defective because it did not fully inform recipients about consequences of opting in, including potential liability for costs and expenses).

In reaching its conclusion, the *Creten-Miller* court called such an award "clearly possible and [] not merely theoretical." None of the cases it cited for this conclusion are from this Circuit, and it is not clear that such an award has been made in a collective action here. *Creten-Miller*, 2009 WL 2058734 at *4 (citing *Johnson v. Big Lots Stores, Inc.*, Nos. 04–3201, 05–6627, 2009 WL 1870862, at *9–10 (E.D. La. June 25, 2009) (awarding costs related to claims of 43 individual participants who moved to dismiss their claims); *Gomez v. Reinke*, No. CV91–299–S–LMB, 2008 WL 3200794, at *6 (D. Idaho Aug.7, 2008) (awarding costs to defendants for prevailing on merits of class action claims); *Reyes v. Tex. Expawn, L.P.,* No. V–03–128, 2007 WL 4530533, at *2 (S.D.Tex. Dec.19, 2007) (awarding costs to defendant as prevailing party). *See also Wright*, 2011 WL 221770, at *7. The court therefore remains concerned that the true purpose for inclusion of such a notice is to discourage workers from participating in the litigation. Having reviewed caselaw, however, the court concludes it is appropriate to amend the language under question 8 in the notice to provide some information "concerning the cost issue, without giving it undue emphasis." *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 765 (N.D. Ill. 2011). This court directs that the second sentence of that provision be amended to read, "If you participate in this lawsuit and the employees lose, you will be bound by the outcome of this lawsuit and will not receive any money, and it is possible that a portion of the court costs would be assessed against you in that event."

6.      Defendants argue that notice of this case should be furnished solely by means of first-class mail. Communication via text message or e-mail, Defendants contend, is "unwarranted and susceptible to abuse." (Defs.' Opp. at 3.) Defendants also object to notice by way of a posting at the workplace, but Plaintiffs have not requested such a process. (Defs.' Opp. at 5; Pltfs.' Reply at 5-6 n.4.) Nor have Plaintiffs requested production of employee Social Security numbers and birthdates, so the court need not address Defendants' objection to such production. (Defs.' Opp. at 5-7; Pltfs.' Reply at 8.)

The court agrees with Plaintiffs that e-mail and text communication is the most straightforward and effective method of communicating with the potential class members. As observed in *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017), cited by Plaintiffs, "Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." To that end, the court directs production by Defendants of employee telephone numbers, and any known e-mail addresses, and authorizes one reminder notice. *See Boltinghouse*, 196 F. Supp. 3d at 844. Defendants' purported concern about potential abuse or alteration of the notice (Defs.' Opp. at 3-4) is dispatched by Plaintiffs' explanation that e-mail would include a .pdf version of the notice, and text messages will direct the recipient to website that includes the form notice. (Pltfs.' Reply at 8.) In any event, Defendants themselves should have effective means of determining whether persons who attempt to opt in are or have been employed by Defendants.

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

ENTER:

Dated: June 19, 2019

_____

REBECCA R. PALLMEYER
United States District Judge

4

# EXHIBIT B

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

SAROYA ROBERSON, individually and on )
behalf of all others similarly situated, )
)
Plaintiff, )
) Case No. 17 -L- 733
v. )
)
SYMPHONY POST ACUTE CARE )
NETWORK; SYMPHONY SYCAMORE )
LLC; SYMPHONY HEALTHCARE LLC; )
SYMPHONY M.L. LLC; SYMPHONY )
MONARCH HOLDINGS, LLC; and DOE )
DEFENDANTS 1-100, )
)
Defendants. )

```
       FILED
  ST. CLAIR COUNTY

   MAR 1 2 2019

       Nebelah a. Clay
35      CIRCUIT CLERK
```

## MEMORANDUM AND ORDER
## ON CLASS CERTIFICATION

The case comes before the Court on Plaintiff's Motion for Class Certification ("Motion").

The issues have been briefed and argued by the parties.[1]  The Court hereby **ORDERS**:

**I.**    **NATURE OF THE CASE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.**

Plaintiff Saroya Roberson worked at a nursing home in Swansea, Illinois.  Plaintiff alleges

that as part of timekeeping while she worked at this location, Defendants and others captured

her biometric information or biometric identifiers (a palm scan) within the meaning of the

Illinois Biometric Privacy Information Act, 740 ILCS 14/1 ("BIPA").  Defendants' opposition brief

does not dispute Roberson's biometric information or biometric identifiers were so captured.

BIPA manifests the Illinois General Assembly's findings that:

---

[1] Arguments were heard on December 20, 2018 before Judge Julia R. Gomric. On February 8, 2019, after hearing, but before Judge Gomric ruled on the pending Motion for Class Certification, the court granted Symphony Sycamore LLC's Motion for Substitution as a Matter of Right, and this case was subsequently assigned to the undersigned. The court has reviewed the court file and report of proceedings held on December 20, 2018 and is ready to proceed without the need for additional hearing.

1

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

(1) Biometrics are uniquely sensitive identifiers. "Biometrics are unlike other unique identifiers . . . [and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

(2) Biometric technology is a new frontier subject to unpredictable developments. "The full ramifications of biometric technology are not fully known." *Id*. at § 14/5(f).

(3) People are apprehensive of transactions involving their biometrics. The "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" and are "deterred from partaking in biometric identifier-facilitated transactions." *Id.* at § 14/5(d)-(e).

(4) Regulation of biometric collection, use, and storage serves the public interest. The "public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. at § 14/5(g).

Accordingly, BIPA puts certain requirements on parties dealing with biometric identifiers

or biometric information, including:

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/5(b) (2018).

Plaintiff alleges none of these requirements were met when capturing her biometric information. Defendants' opposition to the Motion does not dispute this.

BIPA further provides a right of action for violations of its requirements:

> Sec. 20. Right of action. Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court . . . against an offending party. A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; . . . .

740 ILCS 14/20 (2018). Plaintiff brought this action pursuant to these and other provisions of BIPA.

Plaintiff alleges the Swansea, Illinois location where her biometric identifiers were captured is part of a network, the Symphony Post Acute Network ("SPAN" or the "Network"). She seeks to certify a class of Illinois citizens who had their biometric information or biometric identifiers captured, collected, *etc.* at any Illinois location in the Network (and associated subclasses discussed below):

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*
>
> Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

## II.    LAW REGARDING A DETERMINATION OF CLASS CERTIFICATION.

"In determining whether to certify a proposed class, the trial court . . . should avoid

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

deciding the underlying merits of the case or resolving unsettled legal questions." *CE Design Ltd. v. C & T Pizza, Inc.,* 2015 IL App (1st) 131465 (2015), ¶ 9. "In making its decision as to whether to certify a class, the court may consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may be adduced at the hearings." *Bueker*, 2016 IL App (5th) 150282 at ¶ 22. "To determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." *Clark*, 343 Ill. App. 3d at 544-45. *See also CD Design*, 2015 IL App (1st) 131465 at ¶ 9 ("In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true . . . ."); *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶ 15 (same).

The factors which the Court must consider on a motion for class certification are the familiar framework established by statute. For a suit to proceed as a class action in Illinois, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (2018). *See also e.g. Clark, et al. v. TAP Pharm. Prods., Inc., et al.,* 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003).

## III.  FIRST FACTOR: NUMEROSITY (735 ILCS 5-2/801(1)).

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1). Where there are a number of potential claimants, and the individual amount claimed by each is small,

4

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

making redress on an individual level difficult, if not impossible, Illinois courts have been particularly receptive to proceeding on a class action basis. *Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). Avoiding unnecessary burdens on the courts themselves is also a legitimate concern. "Affirming the trial court's class certification order will avoid the filing of numerous, repetitive cases placing a burden on the court." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (1st Dist. 2009).

Plaintiff states that Defendants have identified, at a minimum, 552 workers who would be members of the class from the Swansea, Illinois location alone. Defendants' opposition to the Motion does not dispute this; in fact, Defendants' opposition does not mention numerosity at all. Accordingly, the Court finds that the numerosity factor is satisfied. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445 (5th Dist. 1990).

IV.     **SECOND FACTOR: COMMON AND PREDOMINANT ISSUES OF FACT OR LAW (735 ILCS 5-2/801(2)).**

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2) (2018). As the statute is phrased in the alternative, certification requires "only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 81 (1994).

Plaintiff suggests that a case presents common issues when defendants have engaged in the same or similar course of conduct, and that this is particularly true where – as here – the claims are based predominantly upon the application of a single statute or statutory scheme. "A common question may be shown when the claims of the individual class members are based upon the common application of a statute . . . ." *Clark*, 343 Ill. App. 3d at 548. *See also Bueker*, 2016 IL App (5th) 150282, ¶ 27 ("With regard to the commonality requirement, a common issue

5

may be shown where the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or pattern of conduct."); *Hall*, 376 Ill. App. 3d at 831 (same).[2] Defendants' opposition to the Motion did not dispute this general premise.

Thus, according to Plaintiff, "Examination quickly establishes that commonality is easily satisfied in this case. All class members are citizens of Illinois. All are proceeding principally under a single Illinois statute, BIPA. Each was subjected to an identical course of conduct by defendants: The capture of their biometric information."

Plaintiff further goes on to enumerate specific questions of law or fact which she states will predominate:

a. Whether the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class?

b. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing that a biometric identifier or biometric information was being collected or stored?

c. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used?

d. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants receive a written release executed by the Plaintiff and the Class of the biometric identifier or biometric information or the Plaintiff's or Class' legally

---

[2] Bearing in mind that the court does not consider the merits at this stage, see *supra,* the Court also does not consider which class members will ultimately prevail. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the class action.").

6

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

authorized representative?

e.    If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first?

f.    Whether Defendants' violations of BIPA were negligent, or instead, intentional or reckless, within the meaning of 740 ILCS 14/20?

Thus, Plaintiff summarizes: "Defendants' compliance with the requirements of BIPA – a single statutory scheme – is the central question in this case. This same question will predominate for each and every class member."

Defendants argue that common questions do not predominate in this case. Defendants assert that "'The purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation . . .' *Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 448 (2006)." According to Defendants, to satisfy this predominance requirement, a plaintiff must show that "successful adjudication of the class representative's individual claim 'will establish a right of recovery in other class members' such that 'all that should remain is for other class members to file proof of their claim., *Id.* (quotation omitted); *see also Mashal v. City of Chicago*, 2012 IL 112341, ¶33 (same)."

Defendants then go on to provide a list of issues they claim defeat commonality and predominance in this case:

a.    whether a class member used the same type of "finger or hand print reader/scanner" that Roberson used,

7

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

     b.     whether a class member has suffered a sufficient injury to invoke BIPA's private right of action,

     c.     whether a class member has suffered actual injury such that actual damages could be recovered in excess of the BIPA's liquidated damages,

     d.     whether that injury exceeds the liquidated damages provision in BIPA,

     e.     whether that injury was suffered at the hands of any person or business that is in fact "associated with the Symphony Post-Acute Care Network, a/k/a Symphony Post-Acute Network,"

     f.     whether that entity acted negligently or willfully with respect to that particular class member,

     g.     whether that class member's claim is subject to any affirmative defenses, like consent or ratification.

First, since the hearing on Plaintiff's Motion on December 20, 2018, the Supreme Court of Illinois has ruled that "an individual need not allege some injury or adverse effect, beyond violation of this or her right under [BIPA], in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, slip op. at p.13 (Ill. Jan. 25, 2019). As such, many of the arguments raised above are moot.

Moreover, it is well-established that by themselves, such issues do not defeat class certification. "Individual questions of injury and damages do not defeat class certification." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 832 (same). At most, if damage questions do present significant issues, they can be handled in ancillary proceedings. "It is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members." *Clark*, 343 Ill.

8

App. 3d at 548 (internal quotations omitted). In fact, Defendants' own cited authority establishes that these differences (if true) are generally not grounds to defeat class certification. *Walczak v. Onyx Acceptance Corp.,* 365 Ill. App. 3d 664, 679 (2nd Dist. 2006). ("Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action.")

More broadly, Defendants' characterization of the common issues in this case, and which of them will predominate, is questionable. *Smith* was a toxic tort case involving a train derailment, and then a resulting chemical spill, with all the attenuated questions as to proximate causation of bodily injury resulting from a complicated series of events. *Smith*, 233 Ill.2d 442-58. This is not that case. This case involves a single statutory scheme – BIPA – and the issues presented can be summarized in a straightforward way: Did the Network capture biometric information from members of the class, and if so, did they comply with BIPA while doing so? These questions are what will consume "the bulk of the time at trial." *Smith*, 233 Ill.2d at 458.

That BIPA's straightforward, statutory requirements may have been met in some cases, but not others, does not preclude class certification, as Defendants suggest. First, this invites the Court to determine the merits of the case, which the Court does not do at this stage, as has already been established.

Second, the fact that some class members may recover, but not all, is no impediment to class certification. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the

9

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

class action.").

Third, the flexibility of the class action procedure ensures that even if the issues Defendants raise do become significant at some future point in time, the Court has the ability to address such matters then. "If individual damage determinations are necessary, the court can utilize various procedures to determine damages, including the creation of subclasses." *Bueker*, 2016 IL App (5th), ¶ 31 (citing *Hall*, 376 Ill. App. 3d at 832). "Furthermore, if the class becomes unmanageable at some later time in the litigation, the court always has the option to set aside the class certification or a portion of it." *Id.* (citing *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988)).

Finally, while the Court finds that common questions of fact or law will predominate this case as a whole, it alternately finds that issue certification would be appropriate as well. Even in cases involving the most complex questions of injury or damages – and again, this is not that case, as it arises under a single simple statute – classes may be certified as to issues, such as legal issues, or the issue of liability. Even the cases Defendants themselves cite recognize this. *See e.g. Smith*, 223 Ill.2d at 457 ("the trial court in this case did not limit class certification to the issue of liability . . . ."); *Bueker*, 2016 IL App (5th) 150282, ¶ 34 (courts have the ability to limit certification for liability purposes only). Thus, in the alternative, the commonality and predominance of legal and liability issues in this case demonstrate it is also appropriately suited for certification as to common legal issues, and to issues concerning liability.

## V. THIRD FACTOR: ADEQUATE REPRESENTATION OF THE INTERESTS OF THE CLASS (735 ILCS 5-2/801(3)).

Section 801(3) requires that the "representative parties will fairly and adequately protect the interests of the class." 735 ILCS 5/2-801(2) (2018). Adequate representation has

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

two components: (1) adequacy of the named Plaintiff; and (2) adequacy of the named Plaintiff's attorneys. *See Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). As Defendant posits, "[t]he purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Walczak*, 365 Ill. App. 3d at 678.

Defendants do not argue that Plaintiff's attorneys are inadequate. Accordingly, the Court accepts that they will provide proper, efficient, and appropriate protection of the interests of the class in presenting the claims.

Defendants do, however, challenge the adequacy of Plaintiff Roberson. The principal argument made by Defendants is that the interests of Roberson are antagonistic to those of the class, as class members may want to seek a monetary award, and that (according to Defendants) during her deposition Roberson disclaimed any intention of seeking a monetary recovery.

This is wholly unpersuasive. Plaintiff, by way of her pleadings, discovery responses, statements of her attorneys, and otherwise, has made it abundantly clear on multiple occasions that she seeks a monetary recovery in this action, not only on her own behalf, but also on behalf of the other class members. Her deposition responses did not contradict that. In fact, Plaintiff stated she wants the law (BIPA) enforced, and BIPA expressly provides for monetary awards.

The rest of Defendants' adequacy arguments are much in the same vein. Quizzing Plaintiff on what she understands about Defendants' corporate structure, or how the law interprets "injury" or "damages," does nothing to demonstrate Plaintiff's inadequacy as a class

11

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

representative, as it does nothing to show that Plaintiff is either antagonistic to the class or will fail to properly pursue the interests of the class. It merely demonstrates that Plaintiff, a layperson, does not understand the intricacies of the law or lawsuits. But that is why a representative is – not only encouraged, but outright *required* – to hire effective legal counsel.

In short, the quantum of understanding necessary on the part of a representative is not nearly as complex as Defendants would have it. "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Clark*, 343 Ill. App. 3d at 550-51 (internal quotations omitted). The Court finds that the adequacy of representation requirement is fulfilled in this case.

## VI. FOURTH FACTOR: THE CLASS ACTION PROCEDURE IS THE APPROPRIATE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (735 ILCS 5-2/801(4)).

Finally, the fourth statutory factor requires the Court to consider whether "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(d) (2018). The balance of Defendants' remaining arguments are entered on this factor.

One of these arguments centers around who was Plaintiff's employer. Defendants seem to invest this with independent legal significance. But this was already addressed in the context of Defendants' § 2-615 motion to dismiss. The terms "employer" and "employee" appear nowhere in BIPA, nor do any related terms. In fact, BIPA expressly contemplates many circumstances well outside the employment context, such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14-5(b) (2018).

Accordingly, dividing the world up into "Employer Defendants" and "Non-Employer

12

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

Defendants" is meaningless for purposes of BIPA liability, which applies to any "private entity" (740 ILCS 14/10-15 (2018)) who constitutes an "offending party" (740 ILCS 14-20 (2018)).

To the extent Defendants' argument asks this Court to first construe those terms, and then to apply them to the facts of this case, the Court must decline.  This involves disputed issues of fact, going to the merits of the case, and/or unsettled legal issues.  As previously established, it is not the province of the Court to decide these issues on a motion to certify a class.  Nor will the Court render an advisory opinion.  Indeed, issues like this weigh affirmatively in *favor* of class certification, as they will be common questions to which any affected class member will seek an answer – no matter what that answer may be.

Much the same is true for Defendants' other arguments, which may be broadly classified as "corporate liability."  Defendants claim each Network location is independently owned and operated, and argue that only some defendants will be liable as to some class members, mentioning in passing things such as the statutes regarding limited liabilities. Defendants make a further argument that they cannot be held liable for anything other than events occurring in Swansea.  Defendants even go so far as to as to argue there are "constitutional concerns" as to the rights of any non-party entities.  Defendants do not provide any explanation, however, as to how Defendants would have standing to raise any such concerns on behalf of entities with whom they also disavow any connection.

For her part, Plaintiff points out that she has pleaded from the outset of the case a variety of theories assessing mutual liability of the Network.  Those theories include topics such as *respondeat superior*, alter ego, agency, joint enterprise, civil conspiracy, *etc.*  Plaintiff points out any assertion by Defendants as to who did or did not operate any given Network location

13

simply begs the questions this lawsuit will answer. Plaintiff further contends that the fact Defendants raise these common questions shows all the more strongly why this case should proceed as a class action.

Both sides have presented discovery responses, discovery productions, public documents, Network documents, *etc.* in support of their positions. The Court has reviewed all of these materials. The Court finds that none of these materials conclusively resolves such issues either way.

Accordingly, the Court concludes that the parties have legitimate disputes of material facts over these issues, and those issues intersect in several instances with unresolved questions of law. The Court further finds that many of these arguments go to the merits of the case. As such, the Court will not resolve them on a motion for class certification. Nor will the Court issue an advisory opinion.

Once again, the presence of such sweeping issues – essentially, "who is liable for what, and to whom" – argues in favor of class certification, not against it. Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.

**VII.    ORDER AND FINDINGS.**

Pursuant to the foregoing analysis, the Court finds the case is proper to proceed as a class action in accordance with 735 ILCS 5/2-801 (2018). The Court hereby certifies the following class:

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with

14

the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court also finds it appropriate to certify the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court finds it appropriate to certify each of these classes as to all issues in this case. The Court further finds it appropriate to certify these classes as to legal and factual issues concerning the liability of the Network and those associated with it. The Court reserves jurisdiction to certify further subclasses or otherwise amend these certifications as circumstances warrant.

**SO ORDERED:**

**DATE**: March 12, 2019.

Icelttalini

Hon. Kevin T. Hoerner

# EXHIBIT C

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

```
 1        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

 2           COUNTY DEPARTMENT, CHANCERY DIVISION

 3

 4   REGINA MORRIS, on behalf of        )
     herself and all others similarly   )
 5   situated,                          )
                                        )
 6            Plaintiff,                )
                                        )
 7        vs.                           )No. 17-CH-12029
                                        )
 8   WOW BAO LLC, WOW BAO FRANCHISING   )
     LLC and LETTUCE ENTERTAIN YOU      )
 9   ENTERPRISES, INC.,                 )
                                        )
10            Defendants.               )

11

12

13            TRANSCRIPT OF PROCEEDINGS

14   at the hearing in the above-entitled cause before

15   THE HONORABLE ALLEN P. WALKER, Judge of said Court,

16   on December 14, 2021, via Zoom remote videoconference

17   platform, reported by Nohemi Salazar-Pitts, Certified

18   Shorthand Reporter for the State of Illinois,

19   commencing at 2:00 p.m. Central Time.

20

21

22

23

24
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

```
 1    REMOTE APPEARANCES:

 2


 3    STEPHAN ZOURAS, LLP
      BY:  MR. ANDREW C. FICZKO, ESQUIRE
 4    100 North Riverside Plaza
      Suite 2150
 5    Chicago, Illinois  60606
      Phone:  (312) 233-1550
 6    E-mail:  aficzko@stephanzouras.com

 7                 Appeared on behalf of the Plaintiffs;

 8


 9    FOLEY & LARDNER LLP
      BY:  MR. CHRISTOPHER G. WARD, ESQUIRE
10    321 North Clark Street
      Chicago, Illinois  60654
11    Phone:  (312) 832-4364
      E-mail:  cward@foley.com

12
                 Appeared on behalf of Defendant Wow
13               Bao LLC.

14

15

16

17

18

19

20

21

22

23

24
```

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

```
 1                    (The following proceedings were had
 2                via remote videoconferencing:)
 3           THE CLERK:  Morris vs. Wow Bao,
 4  17-CH-12029.
 5           MR. FICZKO:  Good afternoon, your Honor.
 6  Andy Ficzko on behalf of the Plaintiff.
 7           MR. WARD:  And Christopher Ward on behalf
 8  of the Defendant.
 9           THE COURT:  Good afternoon.  All right
10  there's also a Jessica.
11                    (Whereupon, a discussion was had
12                off the record.)
13           THE COURT:  This is on the Plaintiff's
14  petition to certify a class?
15           MR. FICZKO:  Correct, your Honor.
16           THE COURT:  You may proceed.
17           MR. FICZKO:  Thank you, your Honor.  As
18  you just indicated before the court, it is Plaintiff's
19  motion to certify a class of a little over 1300
20  Illinois consumers asserting identical claims under
21  the Biometric Information Privacy Act, or BIPA.
22                    Specifically, these individuals were
23  customers of a Wow Bao restaurant who used facial
24  recognition at an ordering kiosk at one of Wow Bao's
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

1  stores from approximately 2016 through 2017.  To

2  facilitate faster checkouts and higher sales volume,

3  while minimizing payroll costs, the Defendants

4  implemented facial recognition self-ordering kiosks at

5  three of its restaurants that used a customer's facial

6  geometry as a means of identification for ordering

7  food and drinks.

8           When a customer chooses the facial

9  recognition feature, the kiosk built-in facial

10 recognition camera collects the customer's facial

11 geometry and stores the data on its database.  When a

12 customer returns to place a later order, they can

13 recall their previous orders with facial recognition.

14          The facial recognition cameras

15 compare basically the live image of a customer's face

16 with the facial geometry stored in the cloud database

17 until it makes a match.  When a match is found, the

18 kiosk pulls up the customer's orders associated with

19 the customer's guest account.  So basically what

20 happens is a customer would simply walk up to the

21 kiosk and the kiosk would recognize them from their

22 facial geometry for purposes of recalling and placing

23 orders.

24          Through this biometric tracking

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

```
 1   system, the Defendants collected, used, stored, and
 2   disclosed its customers' facial geometry when they
 3   were customers at their restaurants, all while failing
 4   to comply with the simple, easy-to-follow BIPA
 5   requirements.
 6                   For example, Defendants did not
 7   inform them of the purpose and the length of time that
 8   their biometric data was being collected, stored, and
 9   used, and it did not make available to the public a
10   retention schedule and guidelines for the destruction
11   of its customers' biometric data, and they did not
12   receive a release to collect, store, and use their
13   biometric information, nor did they receive consent to
14   disclose this biometric data to third parties such as
15   Nextep Systems Inc. in this case which hosted the
16   biometric data.
17                   The same evidence, the same common
18   evidence shows that the Defendants uniformly violated
19   BIPA in the same way for all 1,369 customers who used
20   their facial recognition kiosk by collecting and
21   disclosing their biometric data.  And what I mean by
22   "biometric data" is biometric information and
23   biometric identifiers as defined by BIPA, all without
24   complying with BIPA.
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

```
 1              Basically, the Defendants concede
 2   that this case meets the requirements for class
 3   certification; they only argue that this motion should
 4   be denied because it may be more difficult than they
 5   anticipated to compile a class list.  But the law is
 6   clear:  We don't need to name specific individuals who
 7   are possible class members.  There's no such rule that
 8   requires a so-called administrative feasibility
 9   requirement.
10              Policy reasons also call for this
11   court to reject such a requirement because it's
12   inconsistent with the general rule that direct notice
13   to the class is not required by due process.  In fact,
14   there are a number of ways to identify class members,
15   including through self-identification.  Notice can
16   also be made by publication if necessary.
17              With all that said, these means
18   shouldn't even be necessary here.  All we need here is
19   the transaction data to call a class list, and
20   discovery showed that the necessary data was collected
21   and stored through the kiosk and the software used
22   therein.
23              Nextep and Defendants had a cloud
24   system that they can access that contains not only
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

1   facial geometry data of its customers but also

2   connects the customers' facial geometry to their

3   credit card numbers and phone numbers in what's called

4   a guest account.

5              Discovery also revealed that the

6   ordering kiosk housed what's called a transaction

7   manager software on the computer within the actual

8   kiosk that store log files, credit card transaction

9   files, and order transaction files which communicate

10  up to the cloud.

11             The kiosk also interfaced with the

12  point of sale system for the purposes of communicating

13  customer information.  All we need to do here is

14  simply connect a user facial geometry file to their

15  order history, get the dates and store locations of

16  these user orders, which would obviously then be

17  connected to other data such as payment data which we

18  could then use to identify class members or even

19  contact them for the purposes of sending notice.

20             With that said, though, what's

21  concerning is that after the lawsuit was filed, there

22  were a total of six facial recognition kiosks used at

23  Wow Bao at the three locations, but all but one or two

24  of these kiosks have either been destroyed or lost,

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

1 and not a single representative of Defendants could
2 testify as to who ordered the kiosk to be destroyed or
3 why they were destroyed despite the obligation to
4 preserve evidence for litigation purposes.
5            Finally, Defendants submit a
6 declaration from Brian Leary, an employee of Nextep.
7 Mr. Leary attempts to contradict all of the evidence
8 in the record that confirms a customer's facial
9 geometry data is linked in guest accounts to their
10 credit card numbers, phone numbers, in addition to
11 their order history.
12            It's worth noting, though, that
13 there's a pending BIPA lawsuit against Nextep, so
14 Mr. Leary clearly has an interest in ensuring that no
15 precedent is set in this case that may impact the case
16 against his company.  But again, there simply is zero
17 evidence to support his contentions.  Nextep's own
18 documents and employee testimony clearly contradict
19 Mr. Leary's unsupported assertions.
20            At the end of the day, Defendants do
21 not challenge that Plaintiff failed to satisfy the
22 actual prerequisites to class certification.  This
23 class should be certified as a class action,
24 Ms. Morris should be appointed as class

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   representative, counsel for Plaintiff should be

2   appointed class counsel, and notice should go out to

3   the 1,369 customers who had their personal and private

4   biometric data illegally collected, used, stored, and

5   disseminated by Defendants in violation of BIPA.

6           THE COURT:  Thank you.

7               Mr. Ward?

8           MR. WARD:  Your Honor, I won't call it

9   omission, but I think it's certainly a downplaying of

10  the critical detail in this case.  Mr. Ficzko said and

11  he alluded to Nextep multiple times, but tried to sort

12  of convolute the Defendants in this case with Nextep

13  and calls Nextep as hosting the data.

14              The reality and the evidence on this

15  across the entire record is clear that Defendants in

16  this case have no access to that data, it's entirely

17  captive within the Nextep system.  So what happens is

18  the Nextep technology captures the data at issue here,

19  uploads it to the Nextep cloud, and there's simply a

20  series of Nextep -- or, I'm sorry, files within the

21  Nextep cloud that is solely within the control of

22  Nextep.

23          THE COURT:  Why does that matter?

24          MR. WARD:  It matters because here is the

VerbalTech Inc. - (312) 869-4039
csrdirect.nsp@gmail.com

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

1  way this works out.  If you look at the Brian Leary

2  declaration, he's the only one with actual personal

3  knowledge in this case that has provided testimony

4  evidence as to how this technology works.  The other

5  two individuals to whom Mr. Ficzko alluded, both

6  testified at their deposition that they have no

7  personal knowledge of how these systems work.

8               One guy is a sales person who does

9  not have any sense of the technology, the other was an

10 installer, essentially, who wrote one e-mail which is

11 what Mr. Ficzko alluded to, and then during his

12 deposition contradicted that e-mail, which is cited in

13 footnote 3 of our brief, the specific testimony he

14 gave saying, no, there is not a link between any

15 identifying data and these facial geometry files.

16              But this is important because the way

17 the system works is -- and this is all laid out very

18 clearly in the Brian Leary declaration -- there's no

19 identifying information within these 1369 files.

20 They're not individuals, by the way, your Honor,

21 they're simply files, they're just facial geometry

22 files.  We have no idea if that, in fact, corresponds

23 to 1369 people or less than that, but it's simply an

24 algorithmic file, and Nextep is in complete possession

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

1  of those data, and it has testified it has no way to
2  unpack those files to identify any single individual.
3                So the only putative class member who
4  we can absolutely identify in this case is the
5  Plaintiff, and that's simply because she's the named
6  party here.
7                Now, I'm not saying that this is a
8  heightened ascertainability standard as they have
9  argued in their reply, and I'm not saying that the
10  court needs to be able to identify all of the class
11  representatives -- or all of the putative class
12  members rather, before it can certify the class.  What
13  I am saying is the court's got to be able to identify
14  at least some of them or have some process --
15                THE COURT:  But the process would
16  simply -- there are two ways to, in the court's
17  mind -- notwithstanding Plaintiff's argument, there
18  are two ways or methodologies that immediately come to
19  mind, number one is publication, number two is simply
20  putting up a sign in the stores, assuming they still
21  exist, inviting anyone who within the time period in
22  question was a customer and submitted themselves to
23  providing their biometric data by facial recognition.
24                MR. WARD:  Sure.

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

1          THE COURT:  Why is that a problem?

2          MR. WARD:  Well, let me just make the

3  first point, your Honor, which is if there is a

4  mechanism to identify any class members, that

5  should've been part of the Plaintiff's burden.  This

6  issue and the key part of why this case is not

7  certifiable was not even addressed in their moving

8  papers.  This is now scrambling on reply.

9          So this should have all been vetted

10  ahead of time, this should have been sorted in

11  discovery.  If they thought that there was a

12  contradiction in the evidence between what we have

13  always asserted, which is you can't identify class

14  members here, and they can think the evidence clearly

15  shows that you can, then that needed to be vetted in

16  discovery and proven in their moving papers.  And if

17  we need a supplemental briefing on that, then so be

18  it, but that is their burden to sort.

19          As to the question of publication or

20  posting, couple things that I think are really

21  important.  The time period here is 2016 to 2017; we

22  are nearing 2022 at this point.  These three stores --

23  well, one of them no longer exists; that was the one

24  near 900 North Michigan Avenue.  The other two are

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

```
 1   within Water Tower and at State and Lake, which is
 2   incredibly high traffic areas, incredibly high traffic
 3   areas for individuals who are tourists, who are
 4   itinerant in Chicago.
 5              The likelihood that we would capture
 6   a representative and sufficient number of
 7   self-identified individuals who used this technology
 8   of Nextep almost five years ago in these high traffic
 9   locations is very unreliable.  And if you look at the
10   authority on this, the courts don't say that
11   publication or a posting is sufficient in all
12   circumstances, right, it's going to be case-specific.
13              And while I agree -- for example,
14   there's a Seventh Circuit case that deals with a bar
15   and a couple of ATMs in a college town where you're
16   going to have much more repeat traffic, there was not
17   nearly the amount of time gap between the
18   certification issue.  And important in that case, by
19   the way, the Seventh Circuit also said we're not even
20   sure what records they do have, versus here we're
21   talking about something 500 years ago -- or, I'm
22   sorry, five years ago in Water Tower and at State and
23   Lake where the amount of traffic and the amount of
24   capture or false hits we might get here, right, what
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   is the court going to do if we publish this and we get

2   zero response?

3              You know, I mean, these are issues

4   that are coming down the path potentially in this

5   case, and I think they needed to be vetted at this

6   stage in class certification and they weren't.  And

7   that's the reason why I bring up the Plaintiff's

8   burden, is because this stuff should have been vetted

9   out or we still need to vet it out, because I think

10  this is really important and we can't simply say, oh,

11  it's a simple combination of looking at the cloud and

12  corresponding it to a transaction data, because I

13  believe the evidence says that's not how it works and

14  it's impossible to get to that stage.

15             So if we have a contradiction in how

16  we look at what the evidence shows, then either the

17  Plaintiff needed to sort that out in their moving

18  papers and satisfy their burden when they sought class

19  certification or, at a minimum, we need to have

20  supplemental briefing on it.

21             THE COURT:  Can I ask you a follow-up

22  question?

23             MR. WARD:  Sure.

24             THE COURT:  It seems to me that the

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

1  company would have kept data on how many people -- and

2  I think this is argued -- how many people used the

3  facial recognition software, how many orders were

4  placed as a consequence of it, if for no other reason,

5  to monitor its effectiveness, and wouldn't that be a

6  source of information in terms of the parameters of

7  how many people would be in this class.

8          MR. WARD:  So, your Honor, the answer to

9  that is Nextep did keep that data, and during the time

10 that our clients were customers of Nextep --

11         THE COURT:  Yeah, but did Nextep destroy

12 that information?

13         MR. WARD:  No.  As I understand it, from

14 my information --

15         THE COURT:  They're subject to subpoena;

16 aren't they?

17         MR. WARD:  They are subject to subpoena,

18 and they are subject to exploration of these issues

19 that I have been raising in terms of whether these

20 1369 files can be linked to 1300-and-some individuals

21 or whatever.

22              My point is that that was never

23 discovered by the Plaintiff, they never went down that

24 route to search that from Nextep; we did.  I

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

1  interviewed Mr. Leary, and he was willing to provide
2  the affidavit that he provided.  He is the only one
3  with the personal knowledge on this that we have been
4  able to identify.
5              So I agree with you, this should have
6  been addressed, but --
7              THE COURT:  Let me ask you one more
8  question, and it's really one of certification,
9  because are you suggesting to the court that the
10 parent company, Lettuce Entertain You, is saying they
11 never kept this kind of information for its stores,
12 and particularly Wow Bao, in particular; that Wow Bao,
13 the management company or the management folks at
14 Wow Bao never within their own -- within the confines
15 of their own facilities never kept this kind of data
16 on who was using this biometric data and whether it
17 was effective and how effective of a marketing tool it
18 was and how effective of a tool for tracking foot
19 traffic in and out of its stores and its customers?
20             MR. WARD:  Your Honor, I think my answer
21 to that is sort of.  Right?  I guess I take issue with
22 the verb "kept," because that meant that they had
23 access to these data at some point, and the reality
24 is -- and again, I have explored this extensively, it

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

1  wasn't really addressed in the Plaintiff's moving

2  papers, but our clients never had access to their

3  data.  The way these kiosks worked is that they would

4  literally take this process and immediately upload it

5  to the cloud --

6                THE COURT:  So they never got reports?

7                MR. WARD:  I'm sorry?

8                THE COURT:  They never got reports?

9                MR. WARD:  What they could do is go onto a

10  dashboard.  That was, again, maintained by Nextep to

11  get some basic customer data, but when Nextep

12  discontinued that service, our clients no longer had

13  access to that.

14                But, again, nothing from that

15  dashboard, your Honor, would provide the customer

16  information.  It's the same issue, it was -- it would

17  simply be sort of bland data about the number of

18  transactions without any idea, any mechanism to trail

19  any single transaction to a user.

20                THE COURT:  Well, yes, but part of this

21  discussion is about how many people are actually in

22  this class, and the transactional data would give you

23  some indication, correct?

24                MR. WARD:  What I understand, your Honor,

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  from Nextep is that it can say it has 1369 files.  As
2  far as whether those are 1369 --
3            THE COURT:  No.  No.  No.  My question
4  goes to the reports that Wow Bao could get off, as you
5  described it, the dashboard as to how many people on a
6  given day or in given month could use this particular
7  system, correct?
8            MR. WARD:  I don't know the answer to that
9  question.  I presume that would have been available in
10  real time, your Honor.  It's not available now because
11  it would correlate back to the Nextep data, but it
12  still would suffer from the same problem, which is
13  it's just very superficial data about a number of
14  transactions, not a number of users and without any
15  ability to identify a specific user to a specific
16  transaction.
17            THE COURT:  Yeah, but the court finds it
18  relatively hard to believe that this would be
19  superficial data in light of the fact that they're
20  doing this anyway.  I mean, they're collecting data.
21  Usually when people collect data, they collect all
22  kinds of data, and that's sort of why the statute is
23  in place in the first place, because of the basic
24  overreaching of companies who are collecting data,

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  biometric or otherwise.

2          So the court finds it somewhat hard

3  to believe that, nah, it's just a limited amount of

4  data relative to the folks who were using this system,

5  and it no longer exists.  That seems fairly

6  implausible to the court.  Tell me why that's the case

7  when we are at this juncture, a data-driven society in

8  every aspect.

9          MR. WARD:  Sure.  And at a superficial

10  level, your Honor, I totally understand the

11  skepticism, right, but again, we go back to this idea

12  of the distinction between my client and Nextep

13  Systems.

14          Nextep has all of the data, has all

15  of the relevant data, and it could have been

16  discovered, it could have been disclosed or explored

17  in discovery by the other side prior to bringing this

18  motion, and they didn't.  So we are left to explain

19  why something seems implausible because, to my view,

20  this record hasn't been totally established and

21  developed by the Plaintiff to show they've met their

22  burden.

23          THE COURT:  Okay.  Humor me one more time,

24  Counsel, because I don't know why your client wouldn't

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

```
 1   have tons of data, because your client put this system
 2   up in the first place, and they did it for a reason.
 3                    They did it because they thought
 4   that, number one, it would improve customer service,
 5   presumably that it would make their operation go
 6   faster; and I would imagine there was a whole host of
 7   other data that they were going to get, biometric,
 8   demographic, and so forth, that they thought would be
 9   useful to them in marketing their store, in traffic in
10   and out of their store, and what their company is
11   buying when they come in, what their favorites are,
12   what they come in and order all the time, how often
13   they do it, when they do it, where they do it, whether
14   it gets delivered or they pick it up, or any number of
15   data points.
16                    So, again, I'm just struggling with
17   this notion that, nah, we don't have a whole lot of
18   stuff, most of it is with the company who provided the
19   software.  That seems to be contrary to the point of
20   putting this system in in the first place so they
21   don't get a lot of data.
22                    MR. WARD:  Sure.  And I think part of the
23   court's understandable skepticism again comes from the
24   fact that this record is underdeveloped.
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1          The way that this all happened is
2    that Nextep had actually been providing kiosks to the
3    Wow Bao stores for a number of years before.  As part
4    of a scheduled upgrade -- and, you know, all this
5    evidence is out there if we need to demonstrate it
6    through briefing or whatever -- before a scheduled
7    upgrade, Nextep installed these three kiosks at
8    these -- it's actually six kiosks at three stores.
9    Without any request to do so from our client, they
10   essentially put facial recognition in as an upgrade.
11          Our clients protested if they were
12   going to have to pay more for it, and Nextep said no.
13   And the evidence fully developed in this case through
14   multiple depositions basically says our clients had no
15   involvement in the process.  Literally, the only thing
16   they did was provide power to the kiosks, a network
17   connection, and then Nextep did everything from there.
18   All of the data are theirs, all of the processes are
19   within their software and their hardware.
20          And so any time -- and this is what
21   our client's witnesses consistently testified to, is
22   anytime they needed any information at all about what
23   was going on with these systems, they had to go to
24   Nextep.  So it's not accurate that our clients put

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

1  these machines with facial recognition into their

2  stores trying to gather additional data and take

3  additional biometrics; they were put in by Nextep at

4  Nextep's choice.  And, yeah, they got used for a

5  little while, although not that well as people

6  testified.

7           But I go back to this point that I

8  think these are important questions; I think these are

9  important aspects of whether this is a certifiable

10  class.  And I have these explanations, your Honor, but

11  ultimately the legal burden is for the Plaintiff to

12  answer that and show why this class can be certified

13  in light of these concerns, and that was never

14  addressed in their moving papers and only scrambled to

15  in response to our opposition.

16           So either the motion should be denied

17  for failure to carry the burden, or at least they

18  should be ordered to brief these issues and

19  demonstrate why these concerns are not surmountable.

20           THE COURT:  All right.  Thank you.

21           Counsel?

22           MR. FICZKO:  Your Honor, just to reiterate

23  my point, Defendant simply has not to this point

24  challenged any of the requirements that we need for

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  class certification.  The so-called ascertainability

2  is not a reason to deny class certification.

3              Defense counsel kept harping on that

4  his client has limited data.  Well, the reason why

5  they have limited data is for -- they have to blame

6  themselves because there is no reason why four, five,

7  all of the kiosks have been destroyed or lost.  We

8  simply -- and no one at Nex- -- or excuse me, at Wow

9  Bao could indicate where they were, why they were

10 destroyed or otherwise.

11             Defendants also contradict what was

12 indicated in Mr. Leary's declaration.

13         THE COURT:  Can I ask you a question?  A

14 question, Mr. --

15         MR. FICZKO:  Sure.

16         THE COURT:  Why does the kiosk having been

17 destroyed matter?  All the data, it sounds to me,

18 would have been uploaded to the cloud, so who cares

19 whether or not the kiosk exists?  Isn't the ultimate

20 issue whether the data itself exists?

21         MR. FICZKO:  That's inaccurate.  There is

22 what's called a Transaction Manager Software that is

23 installed in each computer within the kiosk which

24 stores transaction files, credit card transaction

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   files, log files.  This all goes to connect to the
2   facial geometry, which --
3                THE COURT:  But that data doesn't get
4   uploaded to the cloud?  Those files don't get uploaded
5   to the cloud; they remain resident on the hard drive
6   in the kiosk?  That doesn't make sense to me.
7                MR. FICZKO:  I believe it may be both,
8   your Honor.
9                THE COURT:  Well, if it's both, again, my
10  question is why does it matter where the kiosk is if
11  the data exists somewhere?
12                MR. FICZKO:  Well, we're saying both, that
13  the data exists both in the cloud and it would exist
14  in the computers if Defendants would have kept them.
15                THE COURT:  Okay.
16                MR. WARD:  Your Honor, may I respond on
17  that point?
18                THE COURT:  Just a second, Counsel.  I'll
19  give you an opportunity.
20                MR. WARD.  Sure.  Thank you.
21                MR. FICZKO:  And we did, your Honor,
22  explore this.  And as I indicated, before we filed a
23  lawsuit against Nextep and conveniently this
24  declaration was submitted, all of the evidentiary

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

```
 1  evidence indicates that the geometries, the facial
 2  geometries, are linked to the customer's credit card
 3  and phone number, and there's documents from Nextep
 4  that clearly show that, which we submitted that
 5  describe how their facial recognition kiosks worked,
 6  and how it's link to tender, and how it even says that
 7  one of the whole purposes is now that the customer
 8  doesn't even have to bring back a credit card for the
 9  next time use because it's already saved in the kiosk.
10              THE COURT:  Okay.  Anything else?
11              MR. FICZKO:  No, your Honor.  Thank you.
12              THE COURT:  All right.  Mr. Ward?
13              MR. WARD:  Your Honor, this is just
14  another issue of underdeveloped or misleading of the
15  evidence.  It's not what the evidence shows here from
16  Nextep's own documents.  In fact, the witnesses
17  testified that they never linked credit card to facial
18  recognition because they couldn't either get it to
19  work or it wasn't something they were deploying at
20  Wow Bao.
21              But I think it's critical on this
22  kiosk question because I think you've hit on an
23  important point.  Again, our understanding, and I
24  hired a forensic expert to investigate this once we
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   learned that some of these kiosks had gone because I
2   wanted to determine did we lose anything of importance
3   to this case, we spent quite a bit of money to do it.
4           Mr. Ficzko had the opportunity to
5   depose individuals on it, and what we know is that
6   because everything is cloud-based, there isn't
7   anything lost.  And, in fact, our expert said there is
8   nothing stored on these local hard drives that relates
9   to facial geometry whatsoever.
10          And, again, if the other side wants
11  to contest that point, that's something they have the
12  burden to establish.  So we either need to brief it
13  and they can try and show you the evidence, or we need
14  to deny certification of these -- this is a critical
15  point.  But it's not accurate that we have no one but
16  ourselves to blame here, because we made sure before
17  we made these arguments to the court that we had a
18  full understanding of what we were dealing with, with
19  these data.
20          And Mr. Ficzko just said all of the
21  evidence says that, you know, you can link these
22  things.  Well, then they should have showed it.  They
23  should have showed it in their briefing instead of
24  arguing it in a scrambled reply and making a bunch of

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

1  assertions in oral argument when the actual evidence
2  and testimony says otherwise.
3              So, again, either we need to deny
4  this motion because not being able to identify a
5  single class member and not having had a mechanism
6  proposed for how we could administer this class that
7  is actually feasible is a critical part of the
8  certification inquiry, and that was not met.  So
9  either we need to deny the motion or at least give the
10 Plaintiff the opportunity to certify these burdens.
11          THE COURT:  All right.  Mr. Ficzko, it's
12 your motion, you have the last word.
13          MR. FICZKO:  Thank you, your Honor.
14              As I indicated, ascertainability is
15 not a means to deny a motion for class certification.
16 At this stage, we do not need to identify every
17 individual.  There are means that do not violate due
18 process through which direct notice is not necessary.
19              For example, the Defendants cannot
20 produce the credit card transaction data, the parties
21 may need to subpoena credit card companies, or the
22 parties may need to rely on class member
23 self-identification at the claims stage, or notice, as
24 we previously discussed, by publication or by posting

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

```
 1   it at these Wow Bao restaurants.

 2              Class members can simply be

 3   identified during the claims administration process.

 4   This is not a reason to deny class certification at

 5   this stage.

 6              THE COURT:  All right.  The court is going

 7   to grant the motion for class certification.  The

 8   court finds that the Plaintiff has met the

 9   requirements of identifying that the class is so

10   numerous that joinder of all members is impracticable,

11   that there are questions of fact and law that are

12   common to the class that predominate over any

13   questions affecting only individual members, that the

14   representative parties will fairly and adequately

15   protect the interest of the class, and that the class

16   action is an appropriate method for the fair and

17   efficient adjudication of controversy.  The court also

18   grants class counsel as well as the motion to appoint

19   class representative.

20              So, gentlemen, where does that leave

21   us in terms of next steps?

22         MR. FICZKO:  The next steps will be the

23   notice process, your Honor, which we'll need to decide

24   how to best go about that business.
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

```
 1              THE COURT:  All right.  Let's have a
 2  status 60 days out or so.
 3                   Mark, do we have a date that's
 4  available 60 days out?
 5              THE CLERK:  Yes, Judge, we can do
 6  March 15th at 10:00 a.m.
 7              MR. WARD:  Your Honor, I'll be in trial in
 8  California on that date.  If we can either go a week
 9  before or a couple weeks after, I'd appreciate it.
10              THE COURT:  A couple weeks after, Mark?
11              THE CLERK:  Would April 4th work for
12  counsel?
13              MR. WARD:  That should be fine for me,
14  your Honor.  I appreciate it.
15              MR. FICZKO:  That works for Plaintiff.
16              THE COURT:  April 4th at 10:00.
17                   All right?
18              MR. FICZKO:  Yes, your Honor.
19                   Should we write an order?
20              THE COURT:  Yes.
21              MR. FICZKO:  Will do.
22              THE COURT:  Ms. Pitts, is there anything
23  you need from the court?
24              THE REPORTER:  There isn't.  Thank you,
```

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1    your Honor.

2              THE COURT:   All right.   Then, gentlemen,

3    thank you.   You folks have a great holiday.

4                   (Which were all the proceedings

5                    that were had in the above-entitled

6                    cause on this date.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

```
 1   STATE OF ILLINOIS      )
                            )    SS:
 2   COUNTY OF C O O K      )

 3

 4          I, NOHEMI SALAZAR-PITTS, a Certified

 5   Shorthand Reporter doing business in the City of

 6   Chicago, certify that I reported in shorthand the

 7   proceedings of said hearing, and that the foregoing is

 8   a true and correct transcript of my shorthand notes so

 9   taken as aforesaid and contains the proceedings given

10   at said hearing.

11

12

13          _____
                Certified Shorthand Reporter
14              LICENSE NO.:  084-4648

15

16

17

18

19

20

21

22

23

24
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

Page 32

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

**A**

**a.m** 29:6
**ability** 18:15
**able** 11:10,13
   16:4 27:4
**above-entitled**
   1:14 30:5
**absolutely** 11:4
**access** 6:24 9:16
   16:23 17:2,13
**account** 4:19 7:4
**accounts** 8:9
**accurate** 21:24
   26:15
**Act** 3:21
**action** 8:23
   28:16
**actual** 7:7 8:22
   10:2 27:1
**addition** 8:10
**additional** 22:2
   22:3
**addressed** 12:7
   16:6 17:1
   22:14
**adequately**
   28:14
**adjudication**
   28:17
**administer** 27:6
**administration**
   28:3
**administrative**
   6:8
**affidavit** 16:2
**aficzko@step...**
   2:6
**aforesaid** 31:9
**afternoon** 3:5,9
**ago** 13:8,21,22
**agree** 13:13 16:5
**ahead** 12:10
**algorithmic**
   10:24

**ALLEN** 1:15
**alluded** 9:11
   10:5,11
**amount** 13:17
   13:23,23 19:3
**ANDREW** 2:3
**Andy** 3:6
**answer** 15:8
   16:20 18:8
   22:12
**anticipated** 6:5
**anytime** 21:22
**anyway** 18:20
**APPEARAN...**
   2:1
**Appeared** 2:7
   2:12
**appoint** 28:18
**appointed** 8:24
   9:2
**appreciate** 29:9
   29:14
**appropriate**
   28:16
**approximately**
   4:1
**April** 29:11,16
**areas** 13:2,3
**argue** 6:3
**argued** 11:9
   15:2
**arguing** 26:24
**argument** 11:17
   27:1
**arguments**
   26:17
**ascertainability**
   11:8 23:1
   27:14
**aspect** 19:8
**aspects** 22:9
**asserted** 12:13
**asserting** 3:20
**assertions** 8:19

27:1
**associated** 4:18
**assuming** 11:20
**ATMs** 13:15
**attempts** 8:7
**authority** 13:10
**available** 5:9
   18:9,10 29:4
**Avenue** 12:24

**B**

**back** 18:11
   19:11 22:7
   25:8
**Bao** 1:8,8 2:13
   3:3,23 7:23
   16:12,12,14
   18:4 21:3 23:9
   25:20 28:1
**Bao's** 3:24
**bar** 13:14
**basic** 17:11
   18:23
**basically** 4:15
   4:19 6:1 21:14
**behalf** 1:4 2:7
   2:12 3:6,7
**believe** 14:13
   18:18 19:3
   24:7
**best** 28:24
**biometric** 3:21
   4:24 5:8,11,13
   5:14,16,21,22
   5:22,23 9:4
   11:23 16:16
   19:1 20:7
**biometrics** 22:3
**BIPA** 3:21 5:4
   5:19,23,24
   8:13 9:5
**bit** 26:3
**blame** 23:5
   26:16

**bland** 17:17
**Brian** 8:6 10:1
   10:18
**brief** 10:13
   22:18 26:12
**briefing** 12:17
   14:20 21:6
   26:23
**bring** 14:7 25:8
**bringing** 19:17
**built-in** 4:9
**bunch** 26:24
**burden** 12:5,18
   14:8,18 19:22
   22:11,17 26:12
**burdens** 27:10
**business** 28:24
   31:5
**buying** 20:11

**C**

**C** 2:3 31:2
**California** 29:8
**call** 6:10,19 9:8
**called** 7:3,6
   23:22
**calls** 9:13
**camera** 4:10
**cameras** 4:14
**captive** 9:17
**capture** 13:5,24
**captures** 9:18
**card** 7:3,8 8:10
   23:24 25:2,8
   25:17 27:20,21
**cares** 23:18
**carry** 22:17
**case** 5:15 6:2
   8:15,15 9:10
   9:12,16 10:3
   11:4 12:6
   13:14,18 14:5
   19:6 21:13
   26:3

**case-specific**
   13:12
**cause** 1:14 30:6
**Central** 1:19
**certainly** 9:9
**certifiable** 12:7
   22:9
**certification** 6:3
   8:22 13:18
   14:6,19 16:8
   23:1,2 26:14
   27:8,15 28:4,7
**certified** 1:17
   8:23 22:12
   31:4,13
**certify** 3:14,19
   11:12 27:10
   31:6
**challenge** 8:21
**challenged**
   22:24
**CHANCERY**
   1:2
**checkouts** 4:2
**Chicago** 2:5,10
   13:4 31:6
**choice** 22:4
**chooses** 4:8
**Christopher** 2:9
   3:7
**Circuit** 1:1
   13:14,19
**circumstances**
   13:12
**cited** 10:12
**City** 31:5
**claims** 3:20
   27:23 28:3
**Clark** 2:10
**class** 3:14,19 6:2
   6:5,7,13,14,19
   7:18 8:22,23
   8:23,24 9:2
   11:3,10,11,12

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

12:4,13 14:6
14:18 15:7
17:22 22:10,12
23:1,2 27:5,6
27:15,22 28:2
28:4,7,9,12,15
28:15,18,19
**clear** 6:6 9:15
**clearly** 8:14,18
10:18 12:14
25:4
**CLERK** 3:3
29:5,11
**client** 19:12,24
20:1 21:9 23:4
**client's** 21:21
**clients** 15:10
17:2,12 21:11
21:14,24
**cloud** 4:16 6:23
7:10 9:19,21
14:11 17:5
23:18 24:4,5
24:13
**cloud-based**
26:6
**collect** 5:12
18:21,21
**collected** 5:1,8
6:20 9:4
**collecting** 5:20
18:20,24
**collects** 4:10
**college** 13:15
**combination**
14:11
**come** 11:18
20:11,12
**comes** 20:23
**coming** 14:4
**commencing**
1:19
**common** 5:17
28:12

**communicate**
7:9
**communicating**
7:12
**companies**
18:24 27:21
**company** 8:16
15:1 16:10,13
20:10,18
**compare** 4:15
**compile** 6:5
**complete** 10:24
**comply** 5:4
**complying** 5:24
**computer** 7:7
23:23
**computers**
24:14
**concede** 6:1
**concerning** 7:21
**concerns** 22:13
22:19
**confines** 16:14
**confirms** 8:8
**connect** 7:14
24:1
**connected** 7:17
**connection**
21:17
**connects** 7:2
**consent** 5:13
**consequence**
15:4
**consistently**
21:21
**consumers** 3:20
**contact** 7:19
**contains** 6:24
31:9
**contentions** 8:17
**contest** 26:11
**contradict** 8:7
8:18 23:11
**contradicted**

10:12
**contradiction**
12:12 14:15
**contrary** 20:19
**control** 9:21
**controversy**
28:17
**conveniently**
24:23
**convolute** 9:12
**COOK** 1:1
**correct** 3:15
17:23 18:7
31:8
**correlate** 18:11
**corresponding**
14:12
**corresponds**
10:22
**costs** 4:3
**counsel** 9:1,2
19:24 22:21
23:3 24:18
28:18 29:12
**COUNTY** 1:1,2
31:2
**couple** 12:20
13:15 29:9,10
**court** 1:1,15 3:9
3:13,16,18
6:11 9:6,23
11:10,15 12:1
14:1,21,24
15:11,15 16:7
16:9 17:6,8,20
18:3,17,17
19:2,6,23
22:20 23:13,16
24:3,9,15,18
25:10,12 26:17
27:11 28:6,6,8
28:17 29:1,10
29:16,20,22,23
30:2

**court's** 11:13,16
20:23
**courts** 13:10
**credit** 7:3,8 8:10
23:24 25:2,8
25:17 27:20,21
**critical** 9:10
25:21 26:14
27:7
**customer** 4:8,12
4:20 7:13
11:22 17:11,15
20:4 25:7
**customer's** 4:5
4:10,15,18,19
8:8 25:2
**customers** 3:23
5:3,19 7:1 9:3
15:10 16:19
**customers'** 5:2
5:11 7:2
**cward@foley....**
2:11

**D**

**dashboard**
17:10,15 18:5
**data** 4:11 5:8,11
5:14,16,21,22
6:19,20 7:1,17
7:17 8:9 9:4,13
9:16,18 10:15
11:1,23 14:12
15:1,9 16:15
16:16,23 17:3
17:11,17,22
18:11,13,19,20
18:21,22,24
19:4,14,15
20:1,7,15,21
21:18 22:2
23:4,5,17,20
24:3,11,13
26:19 27:20

**data-driven**
19:7
**database** 4:11
4:16
**date** 29:3,8 30:6
**dates** 7:15
**day** 8:20 18:6
**days** 29:2,4
**dealing** 26:18
**deals** 13:14
**December** 1:16
**decide** 28:23
**declaration** 8:6
10:2,18 23:12
24:24
**Defendant** 2:12
3:8 22:23
**Defendants** 1:10
4:3 5:1,6,18
6:1,23 8:1,5,20
9:5,12,15
23:11 24:14
27:19
**Defense** 23:3
**defined** 5:23
**delivered** 20:14
**demographic**
20:8
**demonstrate**
21:5 22:19
**denied** 6:4 22:16
**deny** 23:2 26:14
27:3,9,15 28:4
**DEPARTME...**
1:2
**deploying** 25:19
**depose** 26:5
**deposition** 10:6
10:12
**depositions**
21:14
**describe** 25:5
**described** 18:5
**despite** 8:3

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

Page 34

destroy 15:11
destroyed 7:24
  8:2,3 23:7,10
  23:17
destruction 5:10
detail 9:10
determine 26:2
developed 19:21
  21:13
difficult 6:4
direct 6:12
  27:18
disclose 5:14
disclosed 5:2
  19:16
disclosing 5:21
discontinued
  17:12
discovered
  15:23 19:16
discovery 6:20
  7:5 12:11,16
  19:17
discussed 27:24
discussion 3:11
  17:21
disseminated
  9:5
distinction
  19:12
DIVISION 1:2
documents 8:18
  25:3,16
doing 18:20 31:5
downplaying
  9:9
drinks 4:7
drive 24:5
drives 26:8
due 6:13 27:17

_____ E _____

e-mail 2:6,11
  10:10,12

easy-to-follow
  5:4
effective 16:17
  16:17,18
effectiveness
  15:5
efficient 28:17
either 7:24
  14:16 22:16
  25:18 26:12
  27:3,9 29:8
employee 8:6,18
ensuring 8:14
ENTERPRIS...
  1:9
Entertain 1:8
  16:10
entire 9:15
entirely 9:16
ESQUIRE 2:3,9
essentially 10:10
  21:10
establish 26:12
established
  19:20
evidence 5:17,18
  8:4,7,17 9:14
  10:4 12:12,14
  14:13,16 21:5
  21:13 25:1,15
  25:15 26:13,21
  27:1
evidentiary
  24:24
example 5:6
  13:13 27:19
excuse 23:8
exist 11:21
  24:13
exists 12:23 19:5
  23:19,20 24:11
  24:13
expert 25:24
  26:7

explain 19:18
explanations
  22:10
exploration
  15:18
explore 24:22
explored 16:24
  19:16
extensively
  16:24

_____ F _____

face 4:15
facial 3:23 4:4,5
  4:8,9,10,13,14
  4:16,22 5:2,20
  7:1,2,14,22 8:8
  10:15,21 11:23
  15:3 21:10
  22:1 24:2 25:1
  25:5,17 26:9
facilitate 4:2
facilities 16:15
fact 6:13 10:22
  18:19 20:24
  25:16 26:7
  28:11
failed 8:21
failing 5:3
failure 22:17
fair 28:16
fairly 19:5 28:14
false 13:24
far 18:2
faster 4:2 20:6
favorites 20:11
feasibility 6:8
feasible 27:7
feature 4:9
Ficzko 2:3 3:5,6
  3:15,17 9:10
  10:5,11 22:22
  23:15,21 24:7
  24:12,21 25:11

26:4,20 27:11
  27:13 28:22
  29:15,18,21
file 7:14 10:24
filed 7:21 24:22
files 7:8,9,9 9:20
  10:15,19,21,22
  11:2 15:20
  18:1 23:24
  24:1,1,4
Finally 8:5
finds 18:17 19:2
  28:8
fine 29:13
first 12:3 18:23
  20:2,20
five 13:8,22 23:6
FOLEY 2:9
folks 16:13 19:4
  30:3
follow-up 14:21
following 3:1
food 4:7
foot 16:18
footnote 10:13
foregoing 31:7
forensic 25:24
forth 20:8
found 4:17
four 23:6
FRANCHISI...
  1:8
full 26:18
fully 21:13

_____ G _____

G 2:9
gap 13:17
gather 22:2
general 6:12
gentlemen 28:20
  30:2
geometries 25:1
  25:2

geometry 4:6,11
  4:16,22 5:2 7:1
  7:2,14 8:9
  10:15,21 24:2
  26:9
give 17:22 24:19
  27:9
given 18:6,6
  31:9
go 9:2 17:9
  19:11 20:5
  21:23 22:7
  28:24 29:8
goes 18:4 24:1
going 13:12,16
  14:1 20:7
  21:12,23 28:6
Good 3:5,9
grant 28:7
grants 28:18
great 30:3
guess 16:21
guest 4:19 7:4
  8:9
guidelines 5:10
guy 10:8

_____ H _____

happened 21:1
happens 4:20
  9:17
hard 18:18 19:2
  24:5 26:8
hardware 21:19
harping 23:3
hearing 1:14
  31:7,10
heightened 11:8
high 13:2,2,8
higher 4:2
hired 25:24
history 7:15
  8:11
hit 25:22

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

Page 35

**hits** 13:24
**holiday** 30:3
**Honor** 3:5,15,17
  9:8 10:20 12:3
  15:8 16:20
  17:15,24 18:10
  19:10 22:10,22
  24:8,16,21
  25:11,13 27:13
  28:23 29:7,14
  29:18 30:1
**HONORABLE**
  1:15
**host** 20:6
**hosted** 5:15
**hosting** 9:13
**housed** 7:6
**Humor** 19:23

**I**

**idea** 10:22 17:18
  19:11
**identical** 3:20
**identification**
  4:6
**identified** 28:3
**identifiers** 5:23
**identify** 6:14
  7:18 11:2,4,10
  11:13 12:4,13
  16:4 18:15
  27:4,16
**identifying**
  10:15,19 28:9
**illegally** 9:4
**Illinois** 1:1,18
  2:5,10 3:20
  31:1
**image** 4:15
**imagine** 20:6
**immediately**
  11:18 17:4
**impact** 8:15
**implausible** 19:6

19:19
**implemented**
  4:4
**importance** 26:2
**important** 10:16
  12:21 13:18
  14:10 22:8,9
  25:23
**impossible**
  14:14
**impracticable**
  28:10
**improve** 20:4
**inaccurate**
  23:21
**including** 6:15
**inconsistent**
  6:12
**incredibly** 13:2
  13:2
**indicate** 23:9
**indicated** 3:18
  23:12 24:22
  27:14
**indicates** 25:1
**indication** 17:23
**individual** 11:2
  27:17 28:13
**individuals** 3:22
  6:6 10:5,20
  13:3,7 15:20
  26:5
**inform** 5:7
**information**
  3:21 5:13,22
  7:13 10:19
  15:6,12,14
  16:11 17:16
  21:22
**inquiry** 27:8
**installed** 21:7
  23:23
**installer** 10:10
**interest** 8:14

28:15
**interfaced** 7:11
**interviewed**
  16:1
**investigate**
  25:24
**inviting** 11:21
**involvement**
  21:15
**issue** 9:18 12:6
  13:18 16:21
  17:16 23:20
  25:14
**issues** 14:3
  15:18 22:18
**itinerant** 13:4

**J**

**Jessica** 3:10
**joinder** 28:10
**Judge** 1:15 29:5
**juncture** 19:7

**K**

**K** 31:2
**keep** 15:9
**kept** 15:1 16:11
  16:15,22 23:3
  24:14
**key** 12:6
**kind** 16:11,15
**kinds** 18:22
**kiosk** 3:24 4:9
  4:18,21,21
  5:20 6:21 7:6,8
  7:11 8:2 23:16
  23:19,23 24:6
  24:10 25:9,22
**kiosks** 4:4 7:22
  7:24 17:3 21:2
  21:7,8,16 23:7
  25:5 26:1
**know** 14:3 18:8
  19:24 21:4
  26:5,21

**knowledge** 10:3
  10:7 16:3

**L**

**laid** 10:17
**Lake** 13:1,23
**LARDNER** 2:9
**law** 6:5 28:11
**lawsuit** 7:21
  8:13 24:23
**learned** 26:1
**Leary** 8:6,7,14
  10:1,18 16:1
**Leary's** 8:19
  23:12
**leave** 28:20
**left** 19:18
**legal** 22:11
**length** 5:7
**Let's** 29:1
**Lettuce** 1:8
  16:10
**level** 19:10
**LICENSE** 31:14
**light** 18:19
  22:13
**likelihood** 13:5
**limited** 19:3
  23:4,5
**link** 10:14 25:6
  26:21
**linked** 8:9 15:20
  25:2,17
**list** 6:5,19
**literally** 17:4
  21:15
**litigation** 8:4
**little** 3:19 22:5
**live** 4:15
**LLC** 1:8,8 2:13
**LLP** 2:3,9
**local** 26:8
**locations** 7:15
  7:23 13:9

**log** 7:8 24:1
**longer** 12:23
  17:12 19:5
**look** 10:1 13:9
  14:16
**looking** 14:11
**lose** 26:2
**lost** 7:24 23:7
  26:7
**lot** 20:17,21

**M**

**machines** 22:1
**maintained**
  17:10
**making** 26:24
**management**
  16:13,13
**manager** 7:7
  23:22
**March** 29:6
**Mark** 29:3,10
**marketing** 16:17
  20:9
**match** 4:17,17
**matter** 9:23
  23:17 24:10
**matters** 9:24
**mean** 5:21 14:3
  18:20
**means** 4:6 6:17
  27:15,17
**meant** 16:22
**mechanism** 12:4
  17:18 27:5
**meets** 6:2
**member** 11:3
  27:5,22
**members** 6:7,14
  7:18 11:12
  12:4,14 28:2
  28:10,13
**met** 19:21 27:8
  28:8

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

**method** 28:16
**methodologies** 11:18
**Michigan** 12:24
**mind** 11:17,19
**minimizing** 4:3
**minimum** 14:19
**misleading** 25:14
**money** 26:3
**monitor** 15:5
**month** 18:6
**Morris** 1:4 3:3 8:24
**motion** 3:19 6:3 19:18 22:16 27:4,9,12,15 28:7,18
**moving** 12:7,16 14:17 17:1 22:14
**multiple** 9:11 21:14

**N**

**nah** 19:3 20:17
**name** 6:6
**named** 11:5
**near** 12:24
**nearing** 12:22
**nearly** 13:17
**necessary** 6:16 6:18,20 27:18
**need** 6:6,18 7:13 12:17 14:9,19 21:5 22:24 26:12,13 27:3 27:9,16,21,22 28:23 29:23
**needed** 12:15 14:5,17 21:22
**needs** 11:10
**network** 21:16
**never** 15:22,23

16:11,14,15 17:2,6,8 22:13 25:17
**Nex-** 23:8
**Nextep** 5:15 6:23 8:6,13 9:11,12,13,17 9:18,19,20,21 9:22 10:24 13:8 15:9,10 15:11,24 17:10 17:11 18:1,11 19:12,14 21:2 21:7,12,17,24 22:3 24:23 25:3
**Nextep's** 8:17 22:4 25:16
**Nohemi** 1:17 31:4
**North** 2:4,10 12:24
**notes** 31:8
**notice** 6:12,15 7:19 9:2 27:18 27:23 28:23
**noting** 8:12
**notion** 20:17
**notwithstandi...** 11:17
**number** 6:14 11:19,19 13:6 17:17 18:13,14 20:4,14 21:3 25:3
**numbers** 7:3,3 8:10,10
**numerous** 28:10

**O**

**O** 31:2,2
**obligation** 8:3
**obviously** 7:16
**oh** 14:10

**Okay** 19:23 24:15 25:10
**omission** 9:9
**once** 25:24
**operation** 20:5
**opportunity** 24:19 26:4 27:10
**opposition** 22:15
**oral** 27:1
**order** 4:12 7:9 7:15 8:11 20:12 29:19
**ordered** 8:2 22:18
**ordering** 3:24 4:6 7:6
**orders** 4:13,18 4:23 7:16 15:3
**overreaching** 18:24

**P**

**P** 1:15
**p.m** 1:19
**papers** 12:8,16 14:18 17:2 22:14
**parameters** 15:6
**parent** 16:10
**part** 12:5,6 17:20 20:22 21:3 27:7
**particular** 16:12 18:6
**particularly** 16:12
**parties** 5:14 27:20,22 28:14
**party** 11:6
**path** 14:4
**pay** 21:12
**payment** 7:17

**payroll** 4:3
**pending** 8:13
**people** 10:23 15:1,2,7 17:21 18:5,21 22:5
**period** 11:21 12:21
**person** 10:8
**personal** 9:3 10:2,7 16:3
**petition** 3:14
**phone** 2:5,11 7:3 8:10 25:3
**pick** 20:14
**Pitts** 29:22
**place** 4:12 18:23 18:23 20:2,20
**placed** 15:4
**placing** 4:22
**Plaintiff** 1:6 3:6 8:21 9:1 11:5 14:17 15:23 19:21 22:11 27:10 28:8 29:15
**Plaintiff's** 3:13 3:18 11:17 12:5 14:17 17:1
**Plaintiffs** 2:7
**platform** 1:17
**Plaza** 2:4
**point** 7:12 12:3 12:22 15:22 16:23 20:19 22:7,23,23 24:17 25:23 26:11,15
**points** 20:15
**Policy** 6:10
**possession** 10:24
**possible** 6:7
**posting** 12:20 13:11 27:24
**potentially** 14:4

**power** 21:16
**precedent** 8:15
**predominate** 28:12
**prerequisites** 8:22
**preserve** 8:4
**presumably** 20:5
**presume** 18:9
**previous** 4:13
**previously** 27:24
**prior** 19:17
**Privacy** 3:21
**private** 9:3
**problem** 12:1 18:12
**proceed** 3:16
**proceedings** 1:13 3:1 30:4 31:7,9
**process** 6:13 11:14,15 17:4 21:15 27:18 28:3,23
**processes** 21:18
**produce** 27:20
**proposed** 27:6
**protect** 28:15
**protested** 21:11
**proven** 12:16
**provide** 16:1 17:15 21:16
**provided** 10:3 16:2 20:18
**providing** 11:23 21:2
**public** 5:9
**publication** 6:16 11:19 12:19 13:11 27:24
**publish** 14:1
**pulls** 4:18
**purpose** 5:7

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

Page 37

purposes 4:22
7:12,19 8:4
25:7
put 20:1 21:10
21:24 22:3
putative 11:3,11
putting 11:20
20:20

**Q**

question 11:22
12:19 14:22
16:8 18:3,9
23:13,14 24:10
25:22
questions 22:8
28:11,13
quite 26:3

**R**

raising 15:19
real 18:10
reality 9:14
16:23
really 12:20
14:10 16:8
17:1
reason 14:7 15:4
20:2 23:2,4,6
28:4
reasons 6:10
recall 4:13
recalling 4:22
receive 5:12,13
recognition 3:24
4:4,9,10,13,14
5:20 7:22
11:23 15:3
21:10 22:1
25:5,18
recognize 4:21
record 3:12 8:8
9:15 19:20
20:24
records 13:20

REGINA 1:4
reiterate 22:22
reject 6:11
relates 26:8
relative 19:4
relatively 18:18
release 5:12
relevant 19:15
rely 27:22
remain 24:5
remote 1:16 2:1
3:2
repeat 13:16
reply 11:9 12:8
26:24
reported 1:17
31:6
Reporter 1:18
29:24 31:5,13
reports 17:6,8
18:4
representative
8:1 9:1 13:6
28:14,19
representatives
11:11
request 21:9
required 6:13
requirement 6:9
6:11
requirements
5:5 6:2 22:24
28:9
requires 6:8
resident 24:5
respond 24:16
response 14:2
22:15
restaurant 3:23
restaurants 4:5
5:3 28:1
retention 5:10
returns 4:12
revealed 7:5

right 3:9 13:12
13:24 16:21
19:11 22:20
25:12 27:11
28:6 29:1,17
30:2
Riverside 2:4
route 15:24
rule 6:7,12

**S**

Salazar-Pitts
1:17 31:4
sale 7:12
sales 4:2 10:8
satisfy 8:21
14:18
saved 25:9
saying 10:14
11:7,9,13
16:10 24:12
says 14:13 21:14
25:6 26:21
27:2
schedule 5:10
scheduled 21:4
21:6
scrambled 22:14
26:24
scrambling 12:8
search 15:24
second 24:18
self-identificat...
6:15 27:23
self-identified
13:7
self-ordering
4:4
sending 7:19
sense 10:9 24:6
series 9:20
service 17:12
20:4
set 8:15

Seventh 13:14
13:19
shorthand 1:18
31:5,6,8,13
should've 12:5
show 19:21
22:12 25:4
26:13
showed 6:20
26:22,23
shows 5:18
12:15 14:16
25:15
side 19:17 26:10
sign 11:20
similarly 1:4
simple 5:4 14:11
simply 4:20 7:14
8:16 9:19
10:21,23 11:5
11:16,19 14:10
17:17 22:23
23:8 28:2
single 8:1 11:2
17:19 27:5
situated 1:5
six 7:22 21:8
skepticism
19:11 20:23
so-called 6:8
23:1
society 19:7
software 6:21
7:7 15:3 20:19
21:19 23:22
solely 9:21
somewhat 19:2
sorry 9:20 13:22
17:7
sort 9:11 12:18
14:17 16:21
17:17 18:22
sorted 12:10
sought 14:18

sounds 23:17
source 15:6
specific 6:6
10:13 18:15,15
Specifically 3:22
spent 26:3
SS 31:1
stage 14:6,14
27:16,23 28:5
standard 11:8
State 1:18 13:1
13:22 31:1
status 29:2
statute 18:22
STEPHAN 2:3
steps 28:21,22
store 5:12 7:8,15
20:9,10
stored 4:16 5:1,8
6:21 9:4 26:8
stores 4:1,11
11:20 12:22
16:11,19 21:3
21:8 22:2
23:24
Street 2:10
struggling 20:16
stuff 14:8 20:18
subject 15:15,17
15:18
submit 8:5
submitted 11:22
24:24 25:4
subpoena 15:15
15:17 27:21
suffer 18:12
sufficient 13:6
13:11
suggesting 16:9
Suite 2:4
superficial
18:13,19 19:9
supplemental
12:17 14:20

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

support 8:17
sure 11:24 13:20
   14:23 19:9
   20:22 23:15
   24:20 26:16
surmountable
   22:19
system 5:1 6:24
   7:12 9:17
   10:17 18:7
   19:4 20:1,20
systems 5:15
   10:7 19:13
   21:23

**T**

take 16:21 17:4
   22:2
taken 31:9
talking 13:21
technology 9:18
   10:4,9 13:7
Tell 19:6
tender 25:6
terms 15:6,19
   28:21
testified 10:6
   11:1 21:21
   22:6 25:17
testify 8:2
testimony 8:18
   10:3,13 27:2
thank 3:17 9:6
   22:20 24:20
   25:11 27:13
   29:24 30:3
theirs 21:18
thing 21:15
things 12:20
   26:22
think 9:9 12:14
   12:20 14:5,9
   15:2 16:20
   20:22 22:8,8

25:21,22
third 5:14
thought 12:11
   20:3,8
three 4:5 7:23
   12:22 21:7,8
time 1:19 5:7
   11:21 12:10,21
   13:17 15:9
   18:10 19:23
   20:12 21:20
   25:9
times 9:11
tons 20:1
tool 16:17,18
total 7:22
totally 19:10,20
tourists 13:3
Tower 13:1,22
town 13:15
tracking 4:24
   16:18
traffic 13:2,2,8
   13:16,23 16:19
   20:9
trail 17:18
transaction 6:19
   7:6,8,9 14:12
   17:19 18:16
   23:22,24,24
   27:20
transactional
   17:22
transactions
   17:18 18:14
transcript 1:13
   31:8
trial 29:7
tried 9:11
true 31:8
try 26:13
trying 22:2
two 7:23 10:5
   11:16,18,19

12:24

**U**

ultimate 23:19
ultimately 22:11
underdeveloped
   20:24 25:14
understand
   15:13 17:24
   19:10
understandable
   20:23
understanding
   25:23 26:18
uniformly 5:18
unpack 11:2
unreliable 13:9
unsupported
   8:19
upgrade 21:4,7
   21:10
upload 17:4
uploaded 23:18
   24:4,4
uploads 9:19
use 5:12 7:18
   18:6 25:9
useful 20:9
user 7:14,16
   17:19 18:15
users 18:14
Usually 18:21

**V**

verb 16:22
versus 13:20
vet 14:9
vetted 12:9,15
   14:5,8
videoconference
   1:16
videoconferen...
   3:2
view 19:19
violate 27:17

violated 5:18
violation 9:5
volume 4:2
vs 1:7 3:3

**W**

walk 4:20
WALKER 1:15
wanted 26:2
wants 26:10
Ward 2:9 3:7,7
   9:7,8,24 11:24
   12:2 14:23
   15:8,13,17
   16:20 17:7,9
   17:24 18:8
   19:9 20:22
   24:16,20 25:12
   25:13 29:7,13
wasn't 17:1
   25:19
Water 13:1,22
way 5:19 10:1
   10:16,20 11:1
   13:19 17:3
   21:1
ways 6:14 11:16
   11:18
we'll 28:23
we're 13:19,20
   24:12
week 29:8
weeks 29:9,10
went 15:23
weren't 14:6
whatsoever 26:9
willing 16:1
witnesses 21:21
   25:16
word 27:12
work 10:7 25:19
   29:11
worked 17:3
   25:5

works 10:1,4,17
   14:13 29:15
worth 8:12
wouldn't 15:5
   19:24
Wow 1:8,8 2:12
   3:3,23,24 7:23
   16:12,12,14
   18:4 21:3 23:8
   25:20 28:1
write 29:19
wrote 10:10

**X**

**Y**

yeah 15:11
   18:17 22:4
years 13:8,21,22
   21:3

**Z**

zero 8:16 14:2
Zoom 1:16
ZOURAS 2:3

**0**

084-4648 31:14

**1**

1,369 5:19 9:3
10:00 29:6,16
100 2:4
1300 3:19
1300-and-some
   15:20
1369 10:19,23
   15:20 18:1,2
14 1:16
15th 29:6
17-CH-12029
   1:7 3:4

**2**

2:00 1:19

# EXHIBIT D

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RICHARD ROGERS, individually** ) | |
| **and on behalf of similarly** ) | |
| **situated individuals,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 19 C 3083** |
| ) | |
| **BNSF RAILWAY COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Richard Rogers has sued BNSF Railway Company on behalf of a putative class

for violations of the Illinois Biometric Information Privacy Act (BIPA).  The Court

assumes familiarity with this case's factual and procedural background.  Rogers has

moved to certify a class under Federal Rule of Civil Procedure 23(b)(3).  The Court

grants Rogers's motion for the reasons stated below.

### Discussion

Rogers has moved to certify the following class of 44,149 members: "All

individuals whose fingerprint information was registered using an Auto-Gate System at

one of BNSF's four Illinois facilities at any time between April 4, 2014 and January 25,

2020."  Pl.'s Mot. for Class Cert. at 6 (dkt. no. 91).

At the class certification stage, the Court does not "adjudicate th[e] case," but

rather "select[s] the method best suited to adjudication of the controversy fairly and

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

efficiently." *Amgen v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).  In order for the case proceed as a class action, Rogers must show that the proposed class satisfies Rule 23, which sets out the requirements for class certification.  *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017).

First, under Rule 23(a), a putative class must satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)–(4).  Rule 23(a) requires the class to be so numerous that joinder of all members is impracticable; there are common questions of law or fact; the representatives' claims are typical of those of the class; and the representatives fairly and adequately protect the interests of the class.

Second, the proposed class must fall within one of the three categories in Rule 23(b).  *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).  Rogers argues for certification under Rule 23(b)(3), which requires finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## A.     Class definition

Before turning to Rule 23, the Court must first address BNSF's challenge to Rogers's class definition.  BNSF asserts that the proposed class is too broad because it includes an estimated 8,805 individuals whose claims are no longer timely based on the one-and-done claim accrual theory.  *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012) ("If, however, a class is defined so broadly as to include a great number of members who for some reason could not have been harmed

2

by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification."); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.").

The Court rejects this argument for the reasons previously discussed in the opinion denying BNSF's motion for summary judgment. *See* Memo. Op. & Order at 16–17 (dkt. no. 142). The plain text of section 15(b) does not limit a plaintiff to suing within the statute of limitations after the first violation of the statute. *See Petersen v. Wallach*, 198 Ill. 2d 439, 447, 764 N.E.2d 19, 24 (2002) (explaining that courts must follow a statute's plain language when clear); *see also Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 732 (N.D. Ill. 2020) (interpreting section 15(b) as accruing upon every violation). And Rogers's proposed class only includes individuals who had their biometric information captured at least once after April 4, 2014, which is five years before Rogers filed this suit. Thus the proposed class is not facially overbroad. *See Kohen*, 571 F.3d at 677 (explaining that "a class will often include persons who have not been injured by the defendant's conduct" and that "[s]uch a possibility or indeed inevitability does not preclude class certification").

**B.      Rule 23(a)**

As previously stated, Rule 23(a) sets out four requirements for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). BNSF only disputes adequacy of representation. The Court will nonetheless address each of the Rule 23(a) requirements in turn.

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

### 1. Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Seventh Circuit has explained that "[t]he key numerosity inquiry . . . is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 773 (7th Cir. 2021). "Answering that question requires evaluation of the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Id.* (internal quotations and citations omitted).

As indicated, BNSF does not dispute numerosity. "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania*, 850 F.3d at 859. The Court concludes that the proposed class of 44,149 individuals satisfies the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "[T]he class claims 'must depend on a common contention' that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 598 (7th Cir. 2021) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

BNSF does not dispute commonality. Rogers asserts that there was a standardized pattern of conduct toward all members of the proposed class: biometric registration during a driver's initial visit to a BNSF facility and biometric scanning upon subsequent visits. This common fact pattern gives rise to common questions of fact

4

and law. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."). The Court concludes that the proposed class satisfies the commonality requirement.

### 3. Typicality

Rule 23(a) requires the class representative's claims to be typical of those of the potential class members. Fed. R. Civ. P. 23(a)(3). "As a general matter, '[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Howard*, 989 F.3d at 605 (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)) (alteration in original). "The individual claims may feature some factual variations so long as they 'have the same essential characteristics.'" *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)).

BNSF does not dispute typicality. Rogers's claim is virtually identical to the claims of the proposed class members, as it arises from a uniform course of conduct. The Court concludes that the proposed class satisfies the typicality requirement.

### 4. Adequacy of representation

A representative party must demonstrate that he "will fairly and adequately protect the interests of the class." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 585 (7th Cir. 2020) (internal quotation marks omitted). To demonstrate adequacy of representation, the Court must assess "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

separate interests," and "the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). A "named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *Stampley*, 958 F.3d at 585 (internal quotation marks omitted).

BNSF challenges the adequacy of Rogers as the named plaintiff based only on the purportedly individual defense that his claim is time-barred. Like its arguments on the class definition, this argument rests on the one-and-done theory of claim accrual. Again, the Court overrules this argument. (That aside, there is every reason to believe that the same defense, if it had merit, would apply to a significant proportion of class members.) If the Illinois Supreme Court ultimately decides differently on the claim accrual issue, the Court is prepared to address whether the contours of the class should be modified and/or whether there should be subclasses with separate representation of each. *See Howard*, 989 F.3d at 610 ("If and when [potential conflicts] become real, the district court can certify subclasses with separate representation of each." (alteration in original)). For now though, the "mere possibility that a trivial level of intra-class conflict may materialize" is not enough to "foreclose[] class certification entirely." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013).

The Court concludes that Rogers and the class members possess the same interest in vindicating their statutory rights under BIPA such that Rogers adequately represents the class. *See Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020). The Court further concludes, and BNSF does not dispute, that class counsel have demonstrated their adequacy. *See* Fed. R. Civ. P. 23(g).

6

## C.    Rule 23(b)

### 1.    Predominance

Under Rule 23(b)(3), a plaintiff must demonstrate that "questions of law and fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Predominance is akin to commonality, but it imposes more stringent requirements.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997).  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.*

BNSF does not dispute predominance.  As discussed earlier regarding commonality, the questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof.  Specifically, the common issue of demonstrating BNSF operated the AGS and collected biometric information in violation of BIPA will predominate over any potential individualized issues.  Accordingly, the Court concludes that the proposed class satisfies the predominance requirement.

### 2.    Superiority

Rule 23(b)(3) limits class certification to cases where the class action device "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Supreme Court has explained that this should "cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Prods., Inc.*, 521 U.S. at 615.  As a general matter, " [t]he more claimants

there are, the more likely a class action is to yield substantial economies in litigation."

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

BNSF does not dispute superiority. The Court concludes that this case is well-suited for class treatment, especially because the claims involve uniform statutory damages and there is no indication that class members' interests would be better served by individually controlling their own actions. Furthermore, consolidating these claims in this forum is particularly appropriate given BIPA is an Illinois statute, and the alleged violations all occurred within Illinois.

### Conclusion

For the foregoing reasons, the Court grants the plaintiff's motion for class certification [dkt. no. 90]. The Court certifies the following class under Rule 23(b)(3):

> All individuals whose fingerprint information was registered using an Auto-Gate System at one of BNSF's four Illinois facilities at any time between April 4, 2014 and January 25, 2020.

The Court also appoints the following attorneys as class counsel: Myles McGuire, Evan M. Meyers, David L. Gerbie, and Brendan Duffner of McGuire Law, P.C. The case is set for a telephonic status hearing on April 1, 2022 at 8:15 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

MATTHEW F. KENNELLY
United States District Judge

Date: March 22, 2022

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# EXHIBIT E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| ERICA NORMAN, individually, and | ) | |
| on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| SERVALL BIOMETRICS D/B/A | ) | |
| PATRONSCAN, INC., | ) | |
| | ) | |
| Defendant. | | |

**AFFIDAVIT OF ERICA NORMAN**

      I, Erica Norman, being first duly cautioned, swear, and affirm as follows:

1.  I am over the age of 18 and competent to testify.

2.  I am the Named Plaintiff and proposed Class Representatives in this case.

3.  I understand what it means to be a class representative. As a class representative, I am looking out for the interests of the other class members.

4.  I do not have any conflicts with the class members because they were treated like I was with respect to this lawsuit. I have their interests in mind, as well as my own, in bringing this lawsuit.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: 03/20/2023

*Erica Norman*
Erica Norman (Mar 20, 2023 10:37 CDT)
Erica Norman

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# Affidavit of Erica Norman

Final Audit Report                                        2023-03-20

| | |
|---|---|
| Created: | 2023-03-17 |
| By: | Wexler Boley and Elgersma LLP (bl@wbe-llp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAEK48_dIkZbDMAFs-kejj-JMFXw36GbQb |

## "Affidavit of Erica Norman" History

🗎 Document created by Wexler Boley and Elgersma LLP (bl@wbe-llp.com)
2023-03-17 - 4:09:27 PM GMT

✉ Document emailed to Erica Norman (ericalnorman@gmail.com) for signature
2023-03-17 - 4:19:51 PM GMT

🗎 Email viewed by Erica Norman (ericalnorman@gmail.com)
2023-03-20 - 3:36:34 PM GMT

✍ Document e-signed by Erica Norman (ericalnorman@gmail.com)
Signature Date: 2023-03-20 - 3:37:04 PM GMT - Time Source: server

✅ Agreement completed.
2023-03-20 - 3:37:04 PM GMT

Names and email addresses are entered into the Acrobat Sign service by Acrobat Sign users and are unverified unless otherwise noted.

 

Powered by
Adobe
Acrobat Sign

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# EXHIBIT F

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ERICA NORMAN, individually,<br>and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SERVALL BIOMETRICS D/B/A<br>PATRONSCAN, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF RYAN F. STEPHAN

I, Ryan Stephan, being first duly cautioned, swears and affirms as follows:

1. I am one of Plaintiff's Counsel in the above-referenced matter.

2. I submit this Affidavit in support of Plaintiff's Motion for Class Certification and Request for Discovery on Certification Issues.

3. I am an Partner of the law firm of Stephan Zouras, LLP. Attached hereto as Exhibit 1 is a true and correct copy of the firm's resume.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: March 17, 2023                              _/s/ Ryan F. Stephan_
                                                                    Ryan F. Stephan

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# EXHIBIT 1

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# FIRM RESUME



# STEPHAN ZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550
stephanzouras.com

## **Fighting for the Rights of People.** Driven by Justice. Dedicated to **You**.

FILED DATE: 3/24/2023 4:34 PM   2023CH02874



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550
**stephanzouras.com**

## FIRM PROFILE

**STEPHAN ZOURAS, LLP** is a nationwide law firm that has helped recover more than **$500 million** for people in groundbreaking class and collective actions.



**Stephan Zouras, LLP** has "substantial class action experience [and] have secured multi-million-dollar class recoveries...."

*Bhattacharya v. Capgemini North America, Inc.*, 324 F.R.D. 353, 363 (N.D. Ill. 2018) (Kennelly, J.)

FILED DATE: 3/24/2023 4:34 PM   2023CH02874



help establish favorable precedent for employees and consumers on appeal. And outside the courtroom, our attorneys testify before legislative bodies and work on legislation designed to protect worker's rights.

Our Chicago-based firm is recognized for its leadership, its zealous, thorough and efficient prosecution of class actions, and for achieving outstanding results at both the trial and appellate levels throughout the United States.

We represent hard working people from all walks of life who deserve the protections our laws provide to prevent corporate abuse, injustice and greed.



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## OUR STORY

When Ryan and Jim founded **Stephan Zouras, LLP**, in 2007, they had a vision. They wanted to create a law firm that *empowers* individuals to band together to take on wealthy and powerful corporations who shirk the law and take advantage of employees and consumers.

Today, that vision is a REALITY.

## EXPERIENCE

Not only are we passionate about what we do, we know what we are doing. Collectively, our firm has several decades of experience litigating in federal and state courts throughout the United States. We have established *groundbreaking* and precedent-setting court decisions, including securing a major decision for employees at the United States Supreme Court in 2022, and forced major corporations to change unlawful employment practices and make safer products.

## DEDICATION

Because we love what we do, we don't cut corners. We will review your claim (at no cost), provide prompt feedback and determine next steps. If we choose to pursue your case, we will drive your case to the best desirable outcome, all while keeping you informed at every step of the way. We don't get paid unless we win. And if we can't help, we will try to find you someone who can.

## REPUTATION

We are known throughout the legal community as among the most skilled and qualified practitioners in the field. But some of our proudest accolades come from our clients.

FILED DATE: 3/24/2023 4:34 PM   2023CH02874



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

## PRINCIPAL ATTORNEYS



is a founding partner of Stephan Zouras, LLP. Dedicating his entire professional career to combating corporate abuse and injustice, Jim has helped recover hundreds of millions in individual and class actions arising under the federal and state wage and hour laws, biometric privacy and other complex litigation, along with wrongful death and other catastrophic personal injury actions.

He has successfully tried over a dozen major jury trials and argued approximately 20 appeals as lead appellate counsel before federal and state appellate courts, including the Illinois Supreme Court. Jim is frequently invited as a speaker at national class action and trial seminars. In addition to his admission to numerous trial and appellate courts, Jim is a member of the bar of the Supreme Court of the United States.

Jim and his cases have been profiled by numerous media outlets including the Chicago Tribune, the Chicago Sun-Times, WVON Radio, Bloomberg BNA, Billboard Magazine, TMZ and CBS Consumer Watch.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- ESTABLISHED ENDOWED SCHOLARSHIP FUND AT UNIVERSITY OF ILLINOIS AT CHICAGO; 2021
- INVITED SPEAKER AT NATIONAL EMPLOYMENT LAWYERS ASSOCIATION (IL); 2021
- INVITED SPEAKER AT ILLINOIS INSTITUTE FOR CONTINUING LEGAL EDUCATION; 2018-2022
- INVITED SPEAKER AT ILLINOIS STATE BAR ASSOCIATION; 2018-2019
- INVITED SPEAKER AT ILLINOIS TRIAL LAWYERS ASSOCIATION; 2016
- INVITED SPEAKER AT THE CHICAGO BAR ASSOCIATION; 2008 AND 2016
- INVITED SPEAKER AT THE PRACTICING LAW INSTITUTE; 2012 AND 2015
- INVITED SPEAKER AT THE BRIDGEPORT CONTINUING EDUCATION WAGE AND HOUR SEMINAR; 2012 AND 2014
- EDITOR, ILLINOIS WAGE HOUR TREATISE; 2022
- CONTRIBUTING AUTHOR, AMERICAN BAR ASSOCIATION FEDERAL LABOR STANDARDS LEGISLATION SUBCOMMITTEE, MIDWINTER REPORT; 2016
- HELLENIC BAR ASSOCIATION OF ILLINOIS; 2001-PRESENT

FILED DATE: 3/24/2023 4:34 PM   2023CH02874



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

## PRINCIPAL ATTORNEYS

- ILLINOIS SUPER LAWYER; 2009-PRESENT
- ILLINOIS TRIAL LAWYERS ASSOCIATION; 1997-PRESENT
- ILLINOIS TRIAL LAWYERS ASSOCIATION, BOARD OF MANAGERS; 2022-2023
- ILLINOIS STATE BAR ASSOCIATION; 1997-PRESENT
- NATIONAL EMPLOYMENT LAWYERS ASSOCIATION; 2007-PRESENT
- PUBLIC JUSTICE FOUNDATION; 2018-PRESENT
- CHICAGO FOOD PANTRY VOLUNTEER
- SHIRLEY RYAN ABILITYLAB VOLUNTEER

## EDUCATION

- DEPAUL UNIVERSITY COLLEGE OF LAW, J.D. WITH HONOR, ORDER OF THE COIF, [1995]
- UNIVERSITY OF ILLINOIS CHICAGO, POLITICAL SCIENCE, WITH DISTINCTION [1992]



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL. 60606
312-233-1550

## PRINCIPAL ATTORNEYS

FILED DATE: 3/24/2023 4:34 PM   2023CH02874



is a founding principal of Stephan Zouras, LLP.  Throughout his career, Ryan has been a passionate advocate for worker and consumer rights, and has helped hundreds of thousands of everyday people recover damages in unpaid overtime, privacy claims, employment disputes, business litigation, products liability and personal injury cases.  Ryan has successfully tried cases to verdict including obtaining a $9,000,000 verdict on behalf of 200 employees who were misclassified and denied overtime pay.

Ryan has also served as lead or co-lead counsel on hundreds of complex class and collective action cases involving privacy issues, wage and hour matters and consumer fraud claims, amongst others, and has helped recover over $250 Million for hundreds of thousands of people. In these cases, Ryan has helped establish precedent in both privacy and wage and hour law, forced major corporations to change unlawful employment practices and helped recover hundreds of millions of dollars for his clients.

Ryan and his cases have been profiled by numerous media outlets including Good Morning America, Fortune, ESPN, Fox News, The Guardian, The New York Times, Think Progress, USA Today and Vice Sports.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- AMERICAN ASSOCIATION FOR JUSTICE; 2020-PRESENT
- AMERICAN BAR ASSOCIATION; 2007-PRESENT
- CHICAGO LIGHTS TUTOR; 2009-2010
- CHICAGO CARES TUTOR; 2008-2009
- FEED MY STARVING CHILDREN VOLUNTEER; 2014-2015
- ILLINOIS STATE BAR ASSOCIATION; 2000-PRESENT
- ILLINOIS TRIAL LAWYERS ASSOCIATION; 2021-PRESENT
- ILLINOIS TRIAL LAWYERS ASSOCIATION BOARD OF ADVOCATES; 2022-PRESENT
- PUBLIC JUSTICE FOUNDATION; 2018-PRESENT

## EDUCATION

- CHICAGO KENT COLLEGE OF LAW, J.D., [2000]

- UNIVERSITY OF ILLINOIS URBANA CHAMPAIGN, B.A., POLITICAL SCIENCE, [1996]



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

## PRINCIPAL ATTORNEYS

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

Ryan and Jim are admitted to the Supreme Court of the United States, the United States Court of Appeals for the First, Third and Seventh Circuits, and the Trial Bar of the United States District Court for the Northern District of Illinois. Ryan and Jim are admitted to practice in the Northern, Central and Southern Districts of Illinois, the United States Bankruptcy Court for the Northern District of Illinois, and are generally admitted to practice in the District Court of Colorado, the Eastern District of Michigan and the Eastern District of Wisconsin.

In addition, they have been admitted pro hac vice in the United States District Courts for the District of Alaska, the District of Arizona, the District of Columbia, the Northern, Central and Southern Districts of California, the Superior Court for the State of California, the District Court of Columbia, the Northern, Middle and Southern Districts of Florida, the Northern District of Georgia, the Southern District of Indiana, the Northern and Southern Districts of Iowa, the Western District of Kentucky, the District Court of Maryland, the District Court of Massachusetts, the District Court of Minnesota, the Eastern and Western Districts of Missouri, the District Court of New Mexico, the Southern and Eastern Districts of New York, the District Court of New Jersey, the Eastern and Middle Districts of Pennsylvania, the First Judicial District of Pennsylvania, the Eastern, Middle and Western Districts of North Carolina, the Southern District of Ohio, the District Court of Oregon, the Eastern and Middle Districts of Pennsylvania, the Middle District of Tennessee, the Northern and Southern Districts of Texas, and the Western District of Washington.

In every consecutive year since 2009, Chicago Magazine's Super Lawyer Section selected both Jim and Ryan as two of the top attorneys in Illinois, a distinction given to no more than 5% of the lawyers in the state.



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL. 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM    2023CH02874



A tireless fighter for working people, Andy has spent his entire professional career focusing on Employment Litigation and has represented thousands of employees in class, collective and individual actions nationwide and has recovered hundreds of thousands of dollars in unpaid minimum wages, overtime compensation, and other benefits.

Andy has been recognized by Chicago Magazine's Super Lawyers section as a Rising Star and Super Lawyer for eight consecutive years, a distinction given to no more than 5% of Illinois lawyer. Andy served as the second chair in two major federal jury trials to verdict on behalf of Plaintiffs in wage and hour matters and one state jury trial to verdict on behalf of Plaintiffs in a breach of contract matter.

Andy is admitted to the United States Supreme Court, the United States District Court for the Seventh Circuit, the United States Bankruptcy Court for the Northern District of Illinois, the Trial Bar of the United States District Court for the Northern District of Illinois, and is generally admitted to the District Court of Colorado. Andy has been admitted pro hac vice to the District of Alaska, the Central and Northern Districts of California, the District of Columbia, the Northern District of Georgia, the Southern District of Indiana, the Northern and Southern Districts of Iowa, the District of Massachusetts, the Western District of Missouri, the Southern District of New York, the Middle and Western Districts of North Carolina, the Southern District of Ohio, the Eastern and Middle Districts of Pennsylvania, the Northern and Southern Districts of Texas, and the Western District of Washington.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- CHICAGO BAR ASSOCIATION; 2009-PRESENT
- ILLINOIS STATE BAR ASSOCIATION; 2009-PRESENT
- ILLINOIS TRIAL LAWYERS ASSOCIATION; 2021-PRESENT
- NORTHERN DISTRICT OF ILLINOIS TRAIL BAR ASSOCIATION; 2010-PRESENT
- CHICAGO FOOD PANTRY VOLUNTEER; 2012

## EDUCATION

- DRAKE UNIVERSITY LAW SCHOOL, J.D., [2009]
- LAFAYETTE COLLEGE, B.S., PSYCHOLOGY, [2002]



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL. 60606
312-233-1550

## PARTNERS



A steadfast advocate for individual rights, Teresa has helped thousands of clients hold corporations accountable in employment and consumer protection cases. Teresa has extensive experience in a wide range of employment cases, including wage and hour class and collective actions and employment discrimination.

Teresa is a 2013 graduate of Chicago-Kent College of Law, where she served as Editor of the Law Review. Since 2019, Teresa has served on the Advocacy Council Leadership Committee for Women Employed, an Illinois nonprofit that advocates for the advancement of working women through fair workplaces and education opportunities. Every year since 2016, Teresa has been recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.

Teresa is admitted to the Trial Bar of the United States District Court for the Northern District of Illinois, the Northern District of Illinois, the United States Court of Appeals for the Third and Seventh Circuits, and is generally admitted to the District Court of Colorado. She has been admitted pro hac vice to the District Court of Arizona, the Northern District of California, the Superior Court for the State of California, the Middle District of Florida, the District Court of New Mexico, the Eastern and Southern Districts of New York, the Western District of North Carolina, the Northern District of Ohio, the Eastern and Middle Districts of Pennsylvania, the Middle District of Tennessee, and the Western District of Washington.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- ABA/BNA AGE DISCRIMINATION IN EMPLOYMENT LAW SUPPLEMENT, CHAPTER EDITOR; 2016-PRESENT
- AMERICAN ASSOCIATION FOR JUSTICE; 2019-PRESENT
- CHICAGO BAR ASSOCIATION; 2013-PRESENT
- FEDERAL BAR ASSOCIATION; 2012-PRESENT
- ILLINOIS STATE BAR ASSOCIATION; 2013-PRESENT
- ILLINOIS TRIAL LAWYER ASSOCIATION; 2017-PRESENT
- PUBLIC JUSTICE FOUNDATION; 2021-PRESENT

## EDUCATION

- CHICAGO-KENT COLLEGE OF LAW, J.D., CUM LAUDE, [2013]
- UNIVERSITY OF CHICAGO, B.A., CINEMA AND MEDIA STUDIES, [2002]

FILED DATE: 3/24/2023 4:34 PM  2023CH02874



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## PARTNERS



is a staunch advocate for individual rights, representing people in a wide-range of legal disputes, including unpaid wages, employee misclassification, improper wage deduction, Employee Retirement Income Security Act (ERISA) violations, antitrust, and consumer fraud. Katie is also a member of the legal team pursuing claims on behalf of employees and consumers for violations of the Illinois Biometric Privacy Act (BIPA). Her broad knowledge in such areas helps clients understand their rights and recover damages when laws are violated.

Katie is admitted to practice in Illinois, the United States District Courts for the Central, Northern and Southern Districts of Illinois, and is generally admitted to the District Court of Colorado and the Eastern District of Wisconsin. She has been admitted pro hac vice to the District of Arizona, the Northern District of California, the Southern District of Iowa, the Middle District of Florida, the District Court of Minnesota, the Fourth Judicial District for the State of Minnesota, the Eastern and Western Districts of North Carolina, the District of New Mexico, the Eastern and Southern Districts of New York, the Eastern District of Pennsylvania, and the United States Court of Appeals for the Seventh Circuit.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- CHAPTER EDITOR, BUREAU OF NATIONAL AFFAIRS AGE DISCRIMINATION IN EMPLOYMENT ACT TREATISE, 2D ED.; 2016
- CHICAGO BAR ASSOCIATION; 2013-PRESENT
- ILLINOIS STATE BAR ASSOCIATION; 2015-PRESENT
- ILLINOIS TRIAL LAWYERS ASSOCIATION; 2021-PRESENT
- SAINT MARY'S COLLEGE CHICAGO EAST ALUMNAE CLUB MEMBER; 2012-PRESENT
- VICE CHAIR, YLS MOOT COURT COMPETITION COMMITTEE; 2016-2019
- WOMEN'S BAR ASSOCIATION OF ILLINOIS; 2015-PRESENT
- YOUNG LAWYERS SOCIETY OF THE CHICAGO BAR ASSOCIATION; 2014-PRESENT

## EDUCATION

- THE JOHN MARSHALL LAW SCHOOL, J.D., [2015]
- SAINT MARY'S COLLEGE, B.A., POLITICAL SCIENCE & PSYCHOLOGY, [2012]

FILED DATE: 3/24/2023 4:34 PM   2023CH02874



## ASSOCIATES



started her career at Stephan Zouras in 2017 when she worked as a law clerk. Anna is a skilled and dedicated advocate for individuals and groups of people who have been injured, deprived of earned wages or otherwise mistreated by employers. She has worked tirelessly on an array of individual and class actions lawsuits involving unpaid wages, employee misclassification, tip-pool violations, retaliation, biometric privacy violations, and RICO violations. As the assisting attorney in one of the first in-person jury trials for unpaid wages following the COVID-19 pandemic, Anna obtained a verdict and corresponding six-figure damages award on behalf of one of her clients. Anna achieved the first ruling in the state of Illinois awarding treble damages over and above liquidated damages for claims brought under the Illinois Minimum Wage Law and the Fair Labor Standards Act – a landmark ruling for employee rights.

Anna has been recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers. She was one of only twelve graduating students inducted into the Chicago-Kent Bar & Gavel Society.

Anna is admitted to the Trial Bar of the United States District Court for the Northern District of Illinois, the Central and Southern Districts of Illinois, and the United States Court of Appeals for the Seventh Circuit. She has also been admitted pro hac vice to the Northern District of California, the Eastern District of New York, the Northern District of Ohio, the Eastern District of Pennsylvania and Court of Common Pleas for the State of Ohio.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- CHICAGO BAR ASSOCIATION YLS MOOT COURT COMMITTEE; 2019-2021
- CHICAGO BAR ASSOCIATION; 2018-PRESENT
- CHICAGO-KENT BAR AND GAVEL SOCIETY; 2018 INDUCTEE
- CHICAGO-KENT MOOT COURT HONOR SOCIETY, PRESIDENT AND MEMBER; 2016-2018
- CHICAGO-KENT JUSTINIAN SOCIETY, SECRETARY; 2016-2018
- ILLINOIS TRIAL LAWYERS ASSOCIATION; 2021-PRESENT
- NATIONAL EMPLOYMENT LAWYERS ASSOCIATION; 2022
- WOMEN'S BAR ASSOCIATION OF ILLINOIS; 2018-PRESENT

## EDUCATION

- CHICAGO-KENT COLLEGE OF LAW, J.D., [2018]
- MARQUETTE UNIVERSITY, B.A., CUM LAUDE, ENGLISH [2013]

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# SZ

## ASSOCIATES



has worked as an Associate Attorney since 2021. Paige first joined the Stephan Zouras team as a law clerk in 2019, with a passion and dedication for vindicating Illinois citizens' rights under the Biometric Information Privacy Act (BIPA). Since joining the firm, Paige has assisted in a wide range of trailblazing individual and class actions in federal and state court, at the trial and appellate levels, involving biometric privacy violations and compliance, consumer breach of contract, improper wage deductions, unpaid wages, employee misclassification, employment discrimination, and retaliatory discharge claims.

Paige graduated cum laude from Chicago-Kent College of Law, where she was a member of the Dean's List and served as the Executive Notes & Comments Editor of the Chicago-Kent Law Review.

Paige is admitted to the Seventh Circuit Court of Appeals, and the Northern, Southern and Central Districts of Illinois. She has also been admitted pro hac vice in the Northern and Central District of California and the Eastern District of Pennsylvania.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- CHICAGO BAR ASSOCIATION; 2021-PRESENT
- WOMEN'S BAR ASSOCIATION OF ILLINOIS; 2021-PRESENT
- ILLINOIS STATE BAR ASSOCIATION; 2021-PRESENT
- ILLINOIS TRIAL LAWYERS ASSOCIATION; 2021-PRESENT

## EDUCATION

- CHICAGO-KENT COLLEGE OF LAW, J.D., CUM LAUDE [2020]
- UNIVERSITY OF WISCONSIN-MADISON, B.A. POLITICAL SCIENCE WITH HONORS IN THE LIBERAL ARTS, [2016]

FILED DATE: 3/24/2023 4:34 PM    2023CH02874



## ASSOCIATES



joined the Stephan Zouras team in 2022 as an Associate Attorney, with a passion to advocate for individual rights. Prior to joining the firm, Mohammed served as a judicial law clerk to the Honorable Pamela McLean Meyerson in the Chancery Division of the Circuit Court of Cook County where he gained in-depth knowledge of the Illinois Biometric Information Privacy Act, complex class actions, insurance-coverage disputes, FOIA-actions, and employment disputes under administrative review.

He earned a Bachelor's Degree from Michigan State University and his law degree from the American University Washington College of Law. In law school, Mohammed served as a Student Attorney for the International Human Rights Law Clinic where he represented asylum seekers in federal immigration court. Additionally, Mohammed interned at the U.S. Department of Justice – Civil Rights Division and for United States District Court Judge George Caram Steeh III.

Mohammed is admitted to practice in Illinois and Washington, D.C., and the United States District Court for the Northern District of Illinois.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- SOUTH ASIAN BAR ASSOCIATION; 2016-PRESENT
- ILLINOIS STATE BAR ASSOCIATION; 2020-PRESENT
- MUSLIM BAR ASSOCIATION OF CHICAGO; 2022-PRESENT

## EDUCATION

- AMERICAN UNIVERSITY WASHINGTON COLLEGE OF LAW, J.D., [2019]
- MICHIGAN STATE UNIVERSITY, B.A., INTERNATIONAL RELATIONS [2016]

FILED DATE: 3/24/2023 4:34 PM   2023CH02874



## ASSOCIATES



joined the Stephan Zouras team as a law clerk in 2020, with a passion and dedication for vindicating Illinois citizens' rights under the Illinois Biometric Information Privacy Act (BIPA). Since joining the Stephan Zouras legal team, Michael has assisted in trailblazing actions involving BIPA, employee misclassification, breach of contract, unpaid wages, personal injury, and employment discrimination claims.

Michael graduated cum laude from the University of Illinois – Chicago School of Law, where he was a member of the Dean's List, and a published member of the UIC Law Review. While in law school, Michael served as a Student Attorney for the Community Enterprise & Solidarity Economy Clinic where he consulted small business owners on corporate entity registration and regulatory compliance with Illinois cannabis license applications.

Michael earned his undergraduate degree from the University of Illinois – Urbana/Champaign, where he graduated with a degree in Finance.

Michael is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- CHICAGO BAR ASSOCIATION; 2022 – PRESENT
- AUXILIARY BOARD MEMBER – ONWARD NEIGHBORHOOD HOUSE; 2020 – PRESENT

## EDUCATION

- UNIVERSITY OF ILLINOIS - CHICAGO SCHOOL OF LAW, J.D., CUM LAUDE [2022]
- UNIVERSITY OF ILLINOIS - URBANA/CHAMPAIGN, B.S., FINANCE [2017]

FILED DATE: 3/24/2023 4:34 PM   2023CH02874



OF COUNSEL



is a highly skilled and successful class-action attorney who joined Stephan Zouras, LLP in 2016. Dave manages our Philadelphia office and has spent his entire career fighting to protect the rights of thousands of healthcare professionals, restaurant workers, transportation workers, IT professionals, shareholders, union members and consumers.

Before joining the private sector, Dave completed a unique clerkship with the Hon. Stephen E. Levin in the Philadelphia Court of Common Pleas, during which he helped to develop a respected and efficient system to resolve the Court's class action cases and contributed to several well-regarded works on class actions.

Dave earned a J.D. from the Temple University School of Law in 1994. While attending law school, Dave was awarded the Barristers Award for excellence in trial advocacy and worked as a teaching assistant for Hon. Legrome Davis (E.D. Pa.) as part of Temple's award-winning Integrated Trial Advocacy program.

Dave is a member of the Pennsylvania and New Jersey Bar Associations, and has been admitted to practice in many courts nationwide, including: the United States Courts of Appeals for the Third and Sixth Circuits and the District Courts of California, Florida, Illinois, Michigan, New Jersey, New York, Pennsylvania, Tennessee and the District of Columbia.

## PROFESSIONAL & COMMUNITY ACTIVITIES

- ILLINOIS STATE BAR ASSOCIATION; 2017-PRESENT
- UNIVERSITY OF CHICAGO ALUMNI INTERVIEWER; 1994-PRESENT
- PENNSYLVANIA BAR ASSOCIATION MEMBER; 1995-PRESENT
- PHILADELPHIA BAR ASSOCIATION MEMBER; 1995-PRESENT
- UNION LEAGUE OF PHILADELPHIA MEMBER; 2001-PRESENT
- STREET TAILS ANIMAL RESCUE FOSTER CARE SPONSOR; 2014-PRESENT
- UNIVERSITY OF CHICAGO "WISR" ALUMNI MENTORING NETWORK; 2017-PRESENT
- PHILADELPHIA BAR ASSOCIATION LEGAL-LINE VOLUNTEER; 2015-2020
- FOUNDATION FOR FIRST RESPONDERS AND FIREFIGHTERS SPONSOR; 1994-2020
- AMERICAN BAR ASSOCIATION MEMBER;1994-2015
- HEAD HOUSE CONSERVANCY BOARD MEMBER; 2008-2015



FILED DATE: 3/24/2023 4:34 PM  2023CH02874

## OF COUNSEL

- AIDS SERVICES IN ASIAN COMMUNITIES (ASAIC) SPONSOR; 1994-2014
- FRIENDS OF INGLIS HOUSE VOLUNTEER; 2001-2014
- OLD CITY CIVIC ASSOCIATION BOARD MEMBER, EXECUTIVE COMMITTEE MEMBER AND SECRETARY; 2002-2014
- TEMPLE UNIVERSITY BEASLEY SCHOOL OF LAW MOOT COURT HONOR SOCIETY JUDGE; 2002-2011

## EDUCATION

- TEMPLE UNIVERSITY SCHOOL OF LAW, J.D. [1994]
- UNIVERSITY OF CHICAGO, B.A. CUM LAUDE [1991]

# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

| CASE | COURT | JUDGMENT |
| --- | --- | --- |
| Meadows v. NCR Corporation | Northern District of Illinois<br>No. 16-cv-06221 | 5/21/2021 - Jury Verdict (Plaintiff)<br>7/09/2021 - Trial Court Judgment<br>**$225,000** |
| Retaliation Arbitrations | American Arbitration Association<br>Redacted for Confidentiality | 2/2019 & 9/2020 - Arbitration<br>Judgment - **$400,0000** |
| Ray v. DISH Network | American Arbitration Association<br>No. 01-15-0003-4651 | 3/17/2019 – Arbitration Judgment<br>**$3.25 mil** |
| Franco v. Ideal Mortgage Bankers<br>d/b/a Lend America | Eastern District of New York<br>No. 07-cv-3956 | 12/14/2017 – Trial Court Judgment<br>**$15.2 mil** |
| Frisari v. DISH Network | American Arbitration Association<br>No. 18-160-001431-12 | 8/25/2016 - Arbitration Judgment<br>**$2.5 mil** |
| Huskey v . Ethicon, Inc. | Southern District of West Virginia<br>No. 2:12-cv-05201 | 9/10/2014 - Jury Verdict (Plaintiff)<br>**$3.27 mil** |
| Lee v. THR & Associates, Inc. | Central District of Illinois<br>No. 12-cv-3078 | 5/22/2014 - Trial Court Judgment<br>**$12.2 mil** |
| Vilches v. The Travelers Companies, Inc. | American Arbitration Association<br>No. 11-160-000355-11 | 12/12/2012 - Arbitration Judgment |
| Kyriakoulis v. DuPage Health Center | Northern District of Illinois<br>No. 10-cv-7902 | 11/16/2012 - Jury Verdict (Plaintiff) |
| Smith v. Safety-Kleen Systems, Inc. | Northern District of Illinois<br>No. 10-cv-6574 | 7/11/2012 - Jury Verdict (Plaintiff) |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

| CASE | COURT | JUDGMENT |
|---|---|---|
| Wong v. Wice Logistics | Circuit Court of Cook County, IL No. 08-L-13380 | 1/30/2012 - Jury Verdict (Plaintiff) |
| Daniels v. Premium Capital Funding | Eastern District of New York No. 08-cv-4736 | 10/18/2011 - Jury Verdict (Plaintiff) **$9 mil** |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

**Courts nationwide have appointed the firm as lead or co-lead counsel in numerous class and collective actions in which they have collectively secured over one hundred million dollars in verdicts and settlements including:**

| CASE | COURT | SETTLEMENT |
|---|---|---|
| Gniecki v. Columbia Sussex Management, LLC | Circuit Court of Cook County, IL No. 21-CH-00677 | 10/06/2022 - Final Approval **$500,000** |
| Brown v. Weathertech | Circuit Court of Cook County, IL No. 19-CH-00503 | 9/26/2022 - Final Approval **$1.375 mil** |
| Johnson v. Verizon Wireless | Northern District of Illinois No. 21-cv-00187 | 9/12/2022 - Final Approval |
| Bruhn v. Jewel-Osco | Circuit Court of Cook County, IL No. 18-CH-01737 | 9/08/2022 - Final Approval **$1.575 mil** |
| Meier v. Robert Rohrman, et al. | Circuit Court of Cook County, IL No. 14-CH-11513 | 5/31/2022 - Final Approval **$855,000** |
| Robertson v. Hostmark Hospitality Group, Inc., et al. | Circuit Court of Cook County, IL No. 18-CH-05194 | 4/14/2022 - Final Approval **$503,000** |
| Parsons v. Personnel Staffing Group | Circuit Court of Cook County, IL No. 20-CH-473 | 3/22/2022 - Final Approval **$4.68 mil** |
| Mosby v. The Ingalls Memorial Hospital, et al. | Circuit Court of Cook County, IL No. 18-CH-05031 | 3/14/2022 - Final Approval **$2.42 mil** |
| Bledsoe v. LHC Group, Inc. and; George v. LHC Group, Inc. | District Court of Arizona No. cv-18-02863, and; No. cv-21-01402 | 2/08/2022 - Final Approval |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

| CASE | COURT | SETTLEMENT |
|---|---|---|
| Krzyzanowski v. Brunch Café | Northern District of Illinois No. 19-cv-07427 | 2/02/2022 - Final Approval |
| Toor v. CoreCentric Solutions, Inc. | Circuit Court of DuPage County, IL No. 2019-CH-000989 | 1/25/2022 - Final Approval |
| Peatry v. Bimbo Bakeries USA, Inc. | Northern District of Illinois No. 19-cv-02942 | 1/12/2022 - Final Approval |
| Ripper v. Area Disposal Service, Inc. | Circuit Court of Peoria County, IL No. 2020-CH-00124 | 11/16/2021 - Final Approval **$577,000** |
| O'Sullivan v. All Star Management, Inc. | Circuit Court of Cook County, IL No. 19-CH-11575 | 9/02/2021 - Final Approval **$5.85 mil** |
| Sanchez v. Visual Pak | Circuit Court of Cook County, IL No. 18-CH-02651 | 8/10/2021 - Final Approval **$3.5 mil** |
| Ramos v. BOX Acquisitions, LLC | Circuit Court of Cook County, IL No. 20-CH-03887 | 8/05/2021 - Final Approval **$1.38 mil** |
| Civcon Services, Inc. v. Accesso Services, LLC | Northern District of Illinois No. 20-cv-01821 | 7/08/2021 - Final Approval **$500,000** |
| Van Jacobs v. New World Van Lines, Inc. | Circuit Court of Cook County, IL No. 19-CH-02619 | 7/07/2021 - Final Approval |
| Liu v. Four Seasons Hotels, Ltd. | Circuit Court of Cook County, IL No. 17-CH-14949 | 6/30/2021 - Final Approval **$575,900** |
| Bedford v. Lifespace Communities, Inc. | Northern District of Illinois No. 20-cv-04574 | 5/12/2021 - Final Approval **$987,850** |

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

| CASE | COURT | SETTLEMENT |
|------|-------|------------|
| Heard v. THC - Northshore, Inc. | Circuit Court of Cook County, IL<br>No. 17-CH-16918 | 5/05/2021 - Final Approval<br>**$2.25mil** |
| Thome v. Novatime Technology, Inc. | Northern District of Illinois<br>No. 19-cv-06256 | 3/08/2021 - Final Approval<br>**$14.1 mil** |
| Kusinski v. ADP, LLC | Circuit Court of Cook County, IL<br>No. 17-CH-12364 | 2/10/2021 - Final Approval<br>**$25 mil** |
| Trayes v. Mid-Con Hospitality Group, LLC | Circuit Court of Cook County, IL<br>No. 19-CH-11117 | 2/03/2021 - Final Approval<br>**$616,500** |
| Collier v. Pete's Fresh Market | Circuit Court of Cook County, IL<br>No. 19-CH-05125 | 12/03/2020 - Final Approval<br>**$4.2 mil** |
| Bryant v. Loews Chicago Hotel, Inc. | Northern District of Illinois<br>No. 19-cv-03195 | 10/30/2020 - Final Approval<br>**$1 mil** |
| Bigger v. Facebook, Inc. | Northern District of Illinois<br>No. 17-cv-7753 | 10/22/2020 - Final Approval<br>**$1.6 mil** |
| Johns v. Club Fitness of Alton, LLC | Circuit Court of Madison County, IL<br>No. 18-L-000080 | 10/13/2020 - Final Approval<br>**$750,000** |
| Bryski v. Nemera Buffalo Grove, LLC | Circuit Court of Cook County, IL<br>No. 18-CH-07264 | 10/05/2020 - Final Approval |
| Thomas v. Kik Custom Products, Inc. | Circuit Court of Cook County, IL<br>No. 19-CH-02471 | 9/30/2020 - Final Approval<br>**$1 mil** |
| Gauzza v. Prospect Medical Holdings, Inc. | Eastern District of Pennsylvania<br>No. 20-cv-03599 | 9/15/2020 - Final Approval<br>**$1.9 mil** |
| Bradford v. Farmington Foods, Inc. | Circuit Court of Cook County, IL<br>No. 19-CH-12888 | 8/17/2020 - Final Approval |

# SZ STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

| CASE | COURT | SETTLEMENT |
|------|-------|------------|
| Trottier v. Summit Staffing | Circuit Court of Cook County, IL<br>No. 19-CH-02731 | 8/04/2020 - Final Approval<br>**$1mil** |
| Jackson v. A. Finkl & Sons, Co. | Circuit Court of Cook County, IL<br>No. 2018-CH-07424 | 7/21/2020 - Final Approval |
| Thome v. Flexicorps. Inc. | Circuit Court of Cook County, IL<br>No. 18-CH-01751 | 7/02/2020 - Final Approval<br>**$1 mil** |
| Goings v. Applied Acoustics | Circuit Court of Cook County, IL<br>No. 17-CH-14954 | 6/02/2020 - Final Approval |
| Jones v. Santa Rosa Consulting, Inc. | Southern District of New York<br>No. 18-cv-11005 | 5/26/2020 - Final Approval |
| Jones v. Encore Health Resources, LLC | Southern District of Texas<br>No. 19-cv-03298 | 2/19/2020 - Final Approval |
| Potoski v. Wyoming Valley Health Care System | Middle District of Pennsylvania<br>No. 11-cv-00582 | 1/14/2020 - Final Approval |
| Stewart v. First Transit, Inc. | Eastern District of Pennsylvania<br>No. 18-cv-03768 | 12/30/2019 - Final Approval<br>**$1 mil** |
| Jordan v. Meridian Bank | Eastern District of Pennsylvania<br>No. 17-cv-05251 | 12/19/2019 - Final Approval<br>**$1 mil** |
| George v. Schulte Hospitality Group, Inc. | Circuit Court of Cook County, IL<br>No. 18-CH-04413 | 12/16/2019 - Final Approval<br>**$1 mil** |
| Edmond v. DPI Specialty Foods, Inc. | Circuit Court of Cook County, IL<br>No. 18-CH-09573 | 11/18/2019 - Final Approval<br>**$500,000** |
| Watts v. Chicago Lakeshore Hospital | Circuit Court of Cook County, IL<br>No. 17-CH-12756 | 11/13/2019 - Final Approval<br>**$858,000** |

# SZ

# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

| CASE | COURT | SETTLEMENT |
|------|-------|-----------|
| Bey v. Walker HealthCare and; Pierce v. Encore Health Resources | Southern District of Texas No. 19-cv-00060 No. 18-cv-04736 | 9/19/2019 - Final Approval **$2.4 mil** |
| Kuck v. Planet Home Lending, LLC | Eastern District of New York No. 17-cv-04769 | 9/13/2019 - Final Approval |
| Dixon v. The Washington & Jane Smith Home | Northern District of Illinois No. 17-cv-08033 | 8/20/2019 - Final Approval **$1.35 mil** |
| Jones v. Chicago Bridge & Iron Company | Western District of North Carolina No. 17-cv-00424 | 8/06/2019 - Final Approval |
| Sharrieff v. Raymond Management Company | Circuit Court of Cook County, IL No. 18-CH-01496 | 8/01/2019 - Final Approval |
| Ostrander v. Customer Engineering Services, LLC | District Court of Colorado No. 15-cv-01476 | 3/25/2019 - Final Judgment |
| Davis v. Vanguard Home Care, LLC | Northern District of Illinois No. 16-cv-07277 | 3/22/19 – Final Approval |
| Goh v. NCR Corporation | American Arbitration Association No. 01-15-0004-0067 | 2/25/19 – Final Approval |
| Moseman v. U.S. Bank National Association | Western District of North Carolina No. 17-cv-00481 | 1/07/19 – Final Approval |
| Ivy v. Adventist Midwest Health | Northern District of Illinois No. 16-cv-7606 | 11/14/18 – Final Approval |
| Bhattacharya v. Capgemini | Northern District of Illinois No. 16-cv-07950 | 11/13/18 - Final Approval **$990,000** |

# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

| CASE | COURT | SETTLEMENT |
|------|-------|------------|
| Carver v. Presence Health Network | Northern District of Illinois No. 15-cv-02905 | 7/10/18 – Final Approval **$20mil** |
| Stapleton v. Advocate Health Care | Northern District of Illinois No. 14-cv-01873 | 6/27/18 – Final Approval |
| Brown v. Health Resource Solutions, Inc. | Northern District of Illinois No. 16-cv-10667 | 4/20/18 – Final Approval **$900,000** |
| Eggleston v. USCC Services, LLC | Northern District of Illinois No. 16-cv-06775 | 2/16/18 – Final Approval **$1.25mil** |
| Caison v. Sogeti USA, LLC | Northern District of Illinois No. 17-cv-2786 | 2/12/18 – Final Approval |
| Kaminski v. Bank of America, N.A. | Northern District of Illinois No. 16-cv-10844 | 2/15/18 – Final Approval **$850,000** |
| Byrne v. Centegra Health System | Northern District of Illinois No. 17-cv-00018 | 1/29/18 – Final Approval |
| Donoghue v. Verizon Communications, Inc. | Eastern District of Pennsylvania No. 16-cv-4742 | 11/16/17 – Final Approval **$800,000** |
| Tompkins v. Farmers Insurance Exchange | Eastern District of Pennsylvania No. 14-cv-3737 | 9/27/17 – Final Approval **$775,000** |
| In re Sears Holdings Corporation Stockholder and Derivative Litigation | Court of Chancery of the State of Delaware, No. 11081-VCL | 5/9/17 – Final Approval **$40mil** |
| Oaks v. Sears | Northern District of Illinois No. 1:15-cv-11318 | 4/12/17 – Final Approval |
| Hauser v. Alexian Brothers Home Health | Northern District of Illinois No. 15-cv-6462 | 4/06/17 – Final Approval **$1mil** |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

| CASE | COURT | SETTLEMENT |
|------|-------|------------|
| Leiner v. Johnson & Johnson | Northern District of Illinois No. 15-cv-5876 | 1/31/17 – Final Approval **$5mil** |
| Reed v. Friendly's Ice Cream, LLC | Middle District of Pennsylvania No. 15-cv-00298 | 1/31/17 – Final Approval **$3.5 mil** |
| McPhearson v. 33 Management | Circuit Court of Cook County, IL No. 15-CH-17302 | 11/3/16 – Final Approval |
| Cook v. Bank of America | Northern District of Illinois No. 15-cv-07718 | 8/2/16 – Final Approval **$3.25 mil** |
| Lukas v. Advocate Health Care | Northern District of Illinois No. 14-cv-2740 | 6/29/16 – Final Approval **$4.75mil** |
| Kurgan v. Chiro One Wellness Centers, LLC | Northern District of Illinois No. 10-cv-1899 | 4/27/16 – Final Approval |
| Heba v. Comcast | First Judicial District of Pennsylvania Court of Common Pleas, No. 12-471 | 4/06/16 – Final Approval |
| Johnson v. Casey's General Stores, Inc. | Western District of Missouri No. 15-cv-3086 | 3/03/16 – Final Approval **$500,000** |
| Fields v. Bancsource, Inc. | Northern District of Illinois No. 14-cv-7202 | 2/03/16 – Final Approval |
| Elder v. Comcast Corporation | Northern District of Illinois No. 12-cv-1157 | 1/11/16 – Final Approval **$700,000** |
| Posada v. Continental Home Loans, Inc. | Eastern District of New York 15-cv-4203 | 1/13/16 - Final Approval |
| Struett v. Susquehanna Bank | Eastern District of Pennsylvania No. 15-cv-176 | 10/27/15 – Final Approval |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

| CASE | COURT | SETTLEMENT |
|---|---|---|
| Faust v. Comcast Corporation | District Court of Maryland No. 10-cv-2336 | 10/11/15 - Final Approval |
| Butler v. DirectSat USA, LLC | District Court of Maryland No. 10-cv-02747 | 9/03/15 - Final Approval |
| Sosnicki v. Continental Home Loans, Inc. | Eastern District of New York No. 12-cv-1130 | 7/30/15 - Final Approval |
| Bordell v. Geisinger Medical Center | Northumberland Court of Common Pleas, No. 12-cv-1688 | 4/8/15 – Final Approval |
| Harvey v. AB Electrolux | Northern District of Iowa No. 11-cv-3036 | 3/23/15 – Final Approval |
| Price v. NCR Corporation | American Arbitration Association No. 51-610-908-12 | 3/18/15 – Final Approval **$2.95 mil** |
| Frebes v. Mask Restaurants, LLC | Northern District of Illinois No. 13-cv-3473 | 1/15/15 – Final Approval |
| Jones v. Judge Technical Services Inc. | Eastern District of Pennsylvania No. 11-cv-6910 | 12/15/14 – Final Approval **$1.22 mil** |
| Howard v. Securitas Security Services USA, Inc., and; Hawkins v. Securitas Security Services USA, Inc. | Northern District of Illinois No. 08-cv-2746 and; No. 09-cv-3633 | 5/7/14 – Final Approval |
| Thomas v. Matrix Corporation Services | Northern District of Illinois No. 10-cv-5093 | 2/12/14 – Final Approval |
| Sexton v. Franklin First Financial | Eastern District of New York No. 08-cv-04950 | 9/30/13 – Final Approval |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

| CASE | COURT | SETTLEMENT |
|---|---|---|
| Outlaw v. Secure Health, L.P. | Eastern District of Pennsylvania No. 11-cv-602 | 9/24/13 – Final Approval |
| Robinson v. RCN Telecom Services, Inc. | Eastern District of Pennsylvania No. 10-cv-6841 | 8/5/13 – Final Approval |
| Holland v. Securitas Security Services USA, Inc. | Superior Court of California, County of Los Angeles, No. BC 394708 | 7/26/13- Final Approval |
| Ord v. First National Bank of Pennsylvania | Western District of Pennsylvania No. 12-cv-766 | 6/21/13 – Final Approval **$3mil** |
| Holley v. Erickson Living Management, LLC | Eastern District of Pennsylvania No. 11-cv-2444 | 6/13/13 – Final Approval |
| Hansen v. Per Mar Security Services | Southern District of Iowa No. 09-cv-459 | 5/15/13 - Final Approval |
| Pomphrett v. American Home Bank | Eastern District of Pennsylvania No. 12-cv-2511 | 3/14/13 – Final Approval **$2.4 mil** |
| Glatts v. Crozer-Keystone Health System | Philadelphia Court of Common Pleas, No. 0904-1314 | 2/06/13 – Final Approval **$1.2 mil** |
| Chambers v. Front Range Environmental, LLC | Northern District of Illinois No. 12-cv-891 | 1/23/13 - Final Approval |
| Searson v. Concord Mortgage Corporation | Eastern District of New York No. 07-cv-3909 | 11/19/12 - Final Approval |
| Ellenbecker v. North Star Cable Construction, Inc. | Northern District of Illinois No. 09-cv-7293 | 11/14/12 - Final Approval |
| Williams v. Securitas Security Services USA, Inc. | Eastern District of Pennsylvania No. 10-cv-7181 | 11/08/12 - Final Approval |

# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

| CASE | COURT | SETTLEMENT |
|------|-------|------------|
| Molyneux v. Securitas Security Services USA, Inc. | Southern District of Iowa No. 10-cv-588 | 11/05/12 - Final Approval |
| Kernats v. Comcast Corporation | Northern District of Illinois No. 09-cv-3368 | 5/28/12 - Final Approval |
| Petersen v. Marsh USA, Inc. | Northern District of Illinois No. 10-cv-1506 | 9/21/11 - Final Approval |
| Thompson v. World Alliance Financial Corp. | Eastern District of New York No. 08-cv-4951 | 8/05/11 - Final Approval |
| Harris v. Cheddar's Casual Cafe, Inc. | American Arbitration Association No. 51 460 00557 10 | 6/1/11 - Final Approval |
| Turner v. Mercy Health System | Philadelphia Court of Common Pleas, No. 0801-3670 | 4/20/11 – Final Approval **$2.75 mil** |
| Cedeno v. Home Mortgage Desk, Corp. | Eastern District of New York No. 08-cv-1168 | 6/15/10 - Final Approval |
| Perkins v. Specialty Construction Brands, Inc. | Northern District of Illinois No. 09-cv-1678 | 11/15/09 - Final Approval |
| Wineland v. Casey's General Stores, Inc. | Southern District of Iowa No. 08-cv-00020 | 10/22/09 - Final Approval |
| Jones v. Casey's General Stores, Inc. | Southern District of Iowa No. 07-cv-400 | 10/22/09 - Final Approval |
| Stuart v. College Park | Circuit Court of Cook County, IL No. 05-CH-09699 | 12/11/07 - Final Approval |
| Huebner v. Graham C Stores | Circuit Court of Cook County, IL No. 06-CH-09695 | 11/15/07 - Final Approval |

# SZ

# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

| CASE | COURT | SETTLEMENT |
|------|-------|------------|
| Perez v. RadioShack Corporation | Northern District of Illinois<br>No. 02-cv-7884 | 9/14/07 - Final Approval<br>**$9 mil** |
| Reinsmith v. Castlepoint Mortgage | District Court of Massachusetts<br>No. 05-cv-01168 | 4/3/07 - Final Approval |
| Kutcher v. B&A Associates | Circuit Court of Cook County, IL<br>No. 03-CH-07610 | 11/20/06 - Final Approval |
| Ciesla v. Lucent Technologies, Inc. | Northern District of Illinois<br>No. 05-cv-1641 | 7/31/06 - Final Approval |
| Casale v. Provident Bank | District Court of New Jersey<br>No. 04-cv-2009 | 7/25/05 - Final Approval |
| Corbin v. Barry Realty | Circuit Court of Cook County, IL<br>No. 02-CH-16003 | 3/22/05 - Final Approval |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

Our firm is at the forefront of BIPA litigation to protect the biometric data and privacy of employees and consumers. We have brought numerous class action lawsuits against employers and other retail businesses who have collected biometric data without consent and without instituting the proper safeguards including:

| CASE | COURT |
|---|---|
| Ala v. U.S. Acrylic, LLC | Circuit Court of Lake County, Illinois, No. 2022-CH-0000069 |
| Alderman v. The Kroger Co. | Circuit Court of Williamson County, Illinois, No. 2021-L-21 |
| Alquero v. Grand Victoria Riverboat Casino | Circuit Court of Cook County, Illinois, No. 2019-CH-09603 |
| Andere v. Amita Health Adventist Medical Center Bolingbrook | Circuit Court of Will County, Illinois, No. 2021-L-000893 |
| Anthony v. Towneplace Suites | Circuit Court of Cook County, Illinois, No. 2021-CH-05389 |
| Arnold v. Roundy's Supermarkets, Inc. | Circuit Court of Cook County, Illinois, No. 2020-CH-05622 |
| Arroyo v. OTO Development, LLC | Circuit Court of Cook County, Illinois, No. 2020-CH-07170 |
| Ayala v. American Louver Company | Circuit Court of Cook County, Illinois, No. 2019-CH-04163 |
| Blunt v. G2K Logistics, LLC | Circuit Court of Cook County, Illinois, No. 2022-CH-01637 |
| Bowens v. SMASHotels | Circuit Court of Cook County, Illinois, No. 2022-CH-08312 |
| Boyd v. Lazer Spot, Inc. | Northern District of Illinois, No. 2021-cv-08173 |
| Brammer v. Ava Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-07379 |
| Bray v. Lathem Time Co. | Northern District of Georgia, 2022-cv-01748 |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

| CASE | COURT |
| --- | --- |
| Buford v. GDI Services, Inc. | Circuit Court of Cook County, Illinois, No. 2020-CH-05007 |
| Burt v. Anixter Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-04569 |
| Cameron v. Polar Tech Industries, Inc. | Circuit Court of DeKalb County, Illinois, No. 2019-CH-000013 |
| Campos v. City View Multicare Center, LLC | Circuit Court of Cook County, Illinois, No. 2019-CH-07082 |
| Campos v. Midwest Time Recorder, Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-07229 |
| Cervantes v. Grant Park Packing Co., Inc. | Circuit Court of Cook County, Illinois, No. 2022-CH-07020 |
| Chatman v. Crate and Barrel | Circuit Court of Cook County, Illinois, No. 2018-CH-09277 |
| Clow v. Sygma Network Inc. | Circuit Court of Vermilion County, Illinois, No. 2022-LA-000004 |
| Coleman v. Greenwood Hospitality Management, LLC | Northern District of Illinois, No. 2021-cv-00806 |
| Cosenza v. DiNico's Pizza | Circuit Court of Cook County, Illinois, No. 2020-CH-00614 |
| Cothron v. White Castle | Northern District of Illinois, No. 2019-cv-00382 |
| Crowden v. Silver Cross Hospitals & Medical Centers | Circuit Court of Will County, Illinois, No. 2022-CH-0063 |
| Currie v. McDonald's | Circuit Court of Lake County, Illinois, 2020-CH-0467 |
| Davis v. Wirco, Inc. | Central District of Illinois, No. 2021-cv-02279 |
| Doporcyk v. Mariano's | Circuit Court of Cook County, Illinois, No. 2017-CH-08092 |
| Dowell v. Springfield Memorial Hospital, et al. | Circuit Court of Sangamon County, Illinois, No. 2022-LA-134 |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

| CASE | COURT |
| --- | --- |
| Duarte v. Vanee Foods Company | Circuit Court of Cook County, Illinois, No. 2021-CH-01318 |
| Ebert v. Eclipse Advantage, LLC | Circuit Court of Grundy County, Illinois, No. 2020-L-53 |
| Ebert v. Total Staffing Solutions, Inc. | Circuit Court of Cook County, Illinois, No. 2021-CH-04338 |
| Fields v. Abra Auto Body & Glass | Circuit Court of Cook County, Illinois, No. 2017-CH-12271 |
| Figueroa v. Kronos, Inc. | Northern District of Illinois, No. 2019-cv-01306 |
| Figueroa v. Tony's Fresh Market | Circuit Court of Cook County, Illinois, No. 2018-CH-15728 |
| Finley v. Clark Manor | Circuit Court of Cook County, Illinois, No. 2020-CH-07265 |
| Fisher v. HP Property Management, LLC | Circuit Court of Cook County, Illinois, No. 2019-CH-14082 |
| Francois v. South Shore Hospital, Corp. | Circuit Court of Cook County, Illinois, No. 2021-CH-02564 |
| Francois v. Swipeclock, LLC | Circuit Court of Cook County, Illinois, No. 2022-CH-01041 |
| Fuentes v. Focal Point Exports, LTD | Circuit Court of Cook County, Illinois, No. 2019-CH-03890 |
| Fulton v. SCR Medical Transport, Inc. | Circuit Court of Cook County, Illinois, No. 2020-CH-00927 |
| Garriott v. Food Movers Two Limited Partnership | Circuit Court of Cook County, Illinois, No. 2020-CH-07030 |
| George v. Bricton 191 Associates, LLC | Circuit Court of Cook County, Illinois, No. 2019-CH-04014 |
| Goings v. UGN, Inc. | Circuit Court of Cook County, Illinois, No. 2017-CH-14954 |
| Gorgas v. Amazon.com, Inc. et al. | Northern District of Illinois, No. 2022-cv-05159 |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## CASE

## COURT

| CASE | COURT |
|------|-------|
| Heard v. Becton, Dickinson & Company | Northern District of Illinois, No. 2019-cv-4158 |
| Heard v. Omnicell, Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-06817 |
| Heard v. St. Bernard Hospital | Circuit Court of Cook County, Illinois, No. 2017-CH-16828 |
| Heard v. Weiss Memorial Hospital Foundation | Circuit Court of Cook County, Illinois, No. 2019-CH-06763 |
| Hogan v. Amazon.com, Inc. | Northern District of Illinois, No. 2021-cv-3169 |
| Howe v. Speedway, LLC | Northern District of Illinois, No. 2019-cv-01374 |
| Ibarra v. Prospera, LLC | Northern District of Illinois, No. 2020-cv-07015 |
| Ingram v. LSL Healthcare | Circuit Court of Cook County, Illinois, No. 2021-CH-00220 |
| Johns v. Paycor, Inc. | Northern District of Illinois, No. 2020-cv-00264 |
| Johnson v. Gold Standard Baking, Inc. | Circuit Court of Cook County, Illinois, No. 2018-CH-09011 |
| Johnson v. Food 4 Less | Northern District of Illinois, No. 2022-cv-02409 |
| Johnson v. NCR | Circuit Court of Cook County, Illinois, No. 2022-CH-04265 |
| Johnson v. Thermoflex | Circuit Court of Cook County, Illinois, No. 2020-CH-00000479 |
| Kardos v. ABT Electronics, Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-01235 |
| Keene v. Plymouth Place, Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-01953 |
| Kelley v. Chicago Behavioral Hospital | Circuit Court of Cook County, Illinois, No. 2020-CH-03302 |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

## CASE

## COURT

| CASE | COURT |
|---|---|
| King v. Garfield Park Hospital, LLC | Circuit Court of Cook County, Illinois, No. 2020-CH-00056 |
| Krause v. Caputo's New Farm Produce | Circuit Court of Cook County, Illinois, No. 2018-Ch-11660 |
| Landa v. Menasha Packaging Co., LLC | Circuit Court of Cook County, Illinois, No. 2020-CH-05251 |
| Landa v. MJ Holding Company, LLC | Circuit Court of Cook County, Illinois, No. 2020-CH-05247 |
| Lawrence v. McLane/Midwest, Inc. | Circuit Court of Vermilion County, Illinois, No. 2021-L-000061 |
| Lopez v. Metraflex | Circuit Court of Cook County, Illinois, No. 2020-CH-05354 |
| Loving v. Belhaven Nursing & Rehabilitation Center, LLC | Circuit Court of Cook County, Illinois, No. 2020-CH-04176 |
| Lyons v. Harri (US), LLC | Circuit Court of Cook County, Illinois, No. 2022-CH-03207 |
| Marquez v. North Riverside Golf Club | Circuit Court of Cook County, Illinois, No. 2020-CH-05895 |
| Mazya v. Northwestern Lake Forest Hospital | Circuit Court of Cook County, Illinois, No. 2018-CH-07161 |
| McAdams v. Design Toscano, Inc. | Circuit Court of Cook County, Illinois, No. 2022-CH-05387 |
| McGraw v. Lakeshore Beverage | Circuit Court of Cook County, Illinois, No. 2020-CH-00343 |
| Measaw v. Heritage Operations Group, LLC | Circuit Court of Cook County, Illinois, No. 2019-CH-08321 |
| Meegan v. NFI Industries, Inc. | Northern District of Illinois, No. 2020-cv-00465 |
| Mendenhall v. Burger King | Circuit Court of Cook County, Illinois, No. 2019-CH-10636 |
| Michaels v. Continental Nursing and Rehabilitation Center, LLC | Circuit Court of Cook County, Illinois, No. 2022-CH-02591 |



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## CASE

## COURT

Michaels v. Infinity Healthcare Management of Illinois, LLC — Circuit Court Cook County, Illinois, No. 2021-CH-05859

Mitchell v. Bottled Blonde Chicago, LLC — Northern District of Illinois, No. 2020-cv-06460

Mitchell v. Electrolux Home Products, et al. — Circuit Court of Cook County, Illinois, No. 2022-CH-08926

Molina v. Mercyhealth System, Corp. — Circuit Court of Winnebago County, Illinois, No. 2020-L-0000286

Morgan v. Ruler Foods, Inc. — Southern District of Illinois, No. 2020-cv-01270

Morris v. Nextep Systems, Inc. — Northern District of Illinois, No. 2021-cv-2404

Morris v. Wow Bao, LLC — Circuit Court of Cook County, Illinois, No. 2017-CH-12029

Mosby v. The Ingalls Memorial Hospital — Circuit Court of Cook County, Illinois, No. 2018-CH-05031

Nordstrom v. Dial Senior Management, Inc. — Northern District of Illinois, No. 2019-cv-07183

Nosal v. Rich Products Corporation — Northern District of Illinois, No. 2020-cv-4972

Peaks-Smith v. Saint Anthony Hospital — Circuit Court of Cook County, Illinois, No. 2018-CH-07077

Peoples v. Wheaton Village Nursing and Rehabilitation Center, LLC — Circuit Court of DuPage County, Illinois, No. 2021-L-001234

Pruitt v. Par-A-Dice Hotel Casino — Central District of Illinois, No. 2020-cv-01084

Purnell v. Pure's Food Specialties, LLC — Circuit Court of Lake County, Illinois, No. 2021-CH-00991

Quentere v. G.H. Cretors — Northern District of Illinois, No. 2020-cv-07306

Quentere v. Staffing Network, LLC — Circuit Court of Lake County, Illinois, No. 2020-CH-00000654



# STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL  60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

## CASE

## COURT

| CASE | COURT |
|---|---|
| Quentere v. Tablecraft Product Company | Circuit Court of Lake County, Illinois, No. 2020-CH-00000493 |
| Ramsey Daley's Medical Transportation, Inc. | Circuit Court of Cook County, Illinois, No. 2018-CH-01935 |
| Redd v. Amazon, Inc. | Northern District of Illinois, No. 2020-cv-06485 |
| Redd v. Amazon Web Services, Inc. | Circuit Court of Cook County, Illinois, No. 2022-CH-08721 |
| Robinson v. Taco Bell | Circuit Court of Cook County, Illinois, No. 2022-CH-04364 |
| Rogers v. Thorek Memorial Hospital | Circuit Court of Cook County, Illinois, No. 2021-CH-02304 |
| Sanchez v. Elite Labor Services | Circuit Court of Cook County, Illinois, No. 2018-CH-02651 |
| Sanchez v. Tide Cleaners | Circuit Court of Cook County, Illinois, No. 2020-CH-02640 |
| Seaton v. Atos Healthcare Services, LLC | Circuit Court of Cook County, Illinois, No. 2021-CH-00611 |
| Severinsen v. Menard, Inc. | Circuit Court of Peoria County, Illinois, No. 2022-CH-0000009 |
| Shird v. Snipes | Circuit Court of Cook County, Illinois, No. 2022-CH-05329 |
| Taitts v. Elior, Inc. | Circuit Court of Cook County, Illinois, No. 2020-CH-03664 |
| In Re: TikTok, Inc., Consumer Privacy Litigation | Northern District of Illinois, No. 2020-cv-04699 |
| Taitts v. Elior, Inc. | Circuit Court of Cook County, Illinois, No. 2020-CH-03664 |
| Thome v. Axis Insurance Company | Circuit Court of Cook County, Illinois, No. 2021-CH-03259 |
| Thornton v. Generations at Peoria, LLC | Circuit Court of Cook County, Illinois, No. 2021-CH-03481 |
| Tims v. Black Horse Carriers, Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-03522 |

 STEPHANZOURAS, LLP

100 N. Riverside , Suite 2150
Chicago, IL 60606
312-233-1550

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

| CASE | COURT |
| --- | --- |
| Townsend v. The Estates of Hyde Park, LLC | Circuit Court of Cook County, Illinois, No. 2019-CH-11849 |
| Treadwell v. Power Solutions International, Inc. | Northern District of Illinois, No. 2018-cv-08212 |
| Trinidad  v. Bridgeview Advisors, LLC | Circuit Court of Cook County, Illinois, No. 2020-CH-06600 |
| Trio v. Turing Video, Inc. | Circuit Court of Cook County, Illinois, No. 2021-CH-03264 |
| Trottier v. Attendance Demand, Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-13230 |
| Valenzuela v. Reliable Staffing Services, Inc. | Circuit Court of Cook County, Illinois, No. 2020-CH-06632 |
| Walker v. Pet Supplies Plus | Circuit Court of Cook County, Illinois, No. 2021-CH-03851 |
| Walton v. Roosevelt University | Circuit Court of Cook County, Illinois, No. 2019-CH-04176 |
| Webster v. South Holland Home, LLC | Circuit Court of Cook County, Illinois, No. 2019-CH-12365 |
| Webster v. Triad Senior Living, Inc. | Circuit Court of Cook County, Illinois, No. 2019-CH-10787 |
| Webster v. Windsor Estates Nursing & Rehab Centre, LLC | Circuit Court of Cook County, Illinois, No. 2019-CH-11441 |
| Wheeler v. EMCO Chemical Distributors, Inc. | Circuit Court of Cook County, Illinois, No. 2021-CH-05597 |
| Wheeler v. Ridgeview Rehab & Nursing Center, LLC | Circuit Court of Cook County, Illinois, No. 2019-CH-14577 |
| Williams v. Wing Stop | Circuit Court of Cook County, Illinois, No. 2022-CH-00326 |
| Wilson v. Magna Exteriors Belvidere | Circuit Court of Boone County, Illinois, No. 2020-L-0039 |
| Young v. International Precision Components Corp. | Circuit Court of Lake County, Illinois, No. 2020-CH-00000521 |
| Young v. Taylor Farms Illinois, Inc. | Circuit Court of Cook County, Illinois, No. 2020-CH-05284 |

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# EXHIBIT G

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

ERICA NORMAN, individually and on behalf
of all others similarly situated,

                              Plaintiffs,

*v.*

SERVALL BIOMETRICS d/b/a PATRONSCAN,
Inc.

                              Defendants.

Docket No. _____

Hon. _____

Calendar _____

### <u>AFFIDAVIT OF KENNETH A. WEXLER</u>

      I, Kenneth A. Wexler, being first duly cautioned, swear and affirm as follows:

1. I am one of Plaintiffs' Counsel in the above-referenced matter.

2. I submit this Affidavit in support of Plaintiffs' Motion for Class Certification and Request for Discovery on Certification Issues.

3. I am the founding and managing partner of the law firm Wexler Boley & Elgersma LLP. Attached hereto as Exhibit 1 is a true and correct copy of the firm's résumé.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: March 21, 2023

                                                   */s/ Kenneth A. Wexler*
                                                   Kenneth A. Wexler
                                                   WEXLER BOLEY & ELGERSMA
                                                   311 S. Wacker Drive
                                                   Suite 5450
                                                   Chicago, IL 60606
                                                   Tel: 312-346-2222
                                                   kaw@wbe-llp.com

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# EXHIBIT 1

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# FIRM RESUME

WB&E   Wexler Boley & Elgersma LLP

311 S. Wacker Dr. Suite 5450 // Chicago, IL 60606

Phone 312.346.2222 // Fax 312.346.0022

www.wbe-llp.com  //  info@wbe-llp.com



FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# Table of Contents

The Firm_____2

Leadership Positions_____4

Successes_____7

Practice Areas and Representative Cases _____9

Antitrust _____9

Business and Commercial Litigation_____12

Consumer Protection_____13

Privacy and Information Security _____13

Government Representation _____14

Healthcare Litigation_____14

Securities and Corporate Governance_____15

Whistleblower and False Claims_____16

Our Professionals_____17

# The Firm

## WHO WE ARE.

Wexler Boley & Elgersma is nationally recognized as a leading firm in complex class action and multidistrict litigation, from investigation to trial and appeals, within the following legal areas:

> // Antitrust
>
> // Business and Commercial Litigation
>
> // Consumer Protection
>
> // Government Representation
>
> // Healthcare Litigation
>
> // Securities and Corporate Governance
>
> // Whistleblower and False Claims

## WE WORK FOR ALL.

At WBE, we rely on the justice system to hold the powerful accountable for conduct that harms others. We are dedicated to protecting the rights and interests of all and, in this pursuit, represent shareholders, consumers, pension plans, institutional investors, businesses, governments, and organizations from all over the world. We act with the utmost integrity in our determination to achieve the most meaningful relief for our clients.

## *WE GET RESULTS.*

WBE is frequently retained by clients to pursue high-stakes litigation – often against some of the largest corporations represented by the most renowned law firms in the country. We regularly are asked by co-counsel to work with them and their clients on cases of wide-ranging importance. Through this work, we have helped shape the law and continue to pave the way for future successes for those aggrieved by fraud, antitrust violations, unfair competition, and other types of unlawful conduct.

WB&E WEXLER BOLEY & ELGERSMA LLP

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## OUR WORK IS RECOGNIZED.

WBE attorneys have been recognized by their peers as well as by legal organizations for their outstanding level of service and commitment to the firm's cases and clients. Partner Ken Wexler has an **AV Preeminent** rating from Martindale-Hubbell – the highest peer review rating. Ken has been named an **Illinois Super Lawyer** since 2008, and other attorneys have been named Rising Stars.

WBE was named a highly recommended Illinois litigation firm in the 2012 inaugural edition of **Benchmark Plaintiff,** with Ken Wexler named as a local litigation star. Ken Wexler has received the same honors every year since.

> "Despite a small roster of attorneys, (WBE) regularly goes toe-to-toe with some of the largest companies and corporations in the world."
> **Benchmark Plaintiff, 2012**

"I admire very much the work that you have done in this case, and you have taught me something. I think I'm more knowledgeable and a better judge because I've had contact with you. And thank you very much."
*Hon. G. Patrick Murphy, Clancy-Gernon Funeral Homes, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 09-cv-1008 (S.D. Ill.)*

"I wanted to express appreciation again to class counsel for taking this case. I believe these are the kind of cases Federal Courts should do and are appropriate for class resolution."
*Hon. Patti B. Saris, In re Pharmaceutical Industry Average Wholesale Price Litig., MDL No. 1456, No. 01-cv-12257 (D. Mass.) (final settlement hearing, with defendant GlaxoSmithKline, July 19, 2007)*

"[T]his multiplier is justified by the risk of non-recovery in this case and the need to reward counsel for their significant achievement on behalf of the End-Payor Class . . . End-Payor Plaintiffs' counsel are highly experienced in complex antitrust class action litigation . . . . they have obtained a significant settlement for the Class despite the complexity and difficulties of this case."
*Hon. John R. Padova, Nichols v. SmithKline Beecham Corp., No. 00-cv-6222, 2005 U.S. Dist. LEXIS 7061, at *71-72, 79 (E.D. Pa. Apr. 22, 2005)*

WB&E WEXLER BOLEY & ELGERSMA LLP

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

www.wbe-llp.com

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# **Leadership Positions**

WBE is frequently appointed as lead counsel and to plaintiff steering committees in complex, high-stakes litigation. Some of those appointments include:

| CASE | COURT | APPOINTMENT |
|------|-------|-------------|
| *In re Copaxone Antitrust Litigation, No. 2:22-cv-01232* | D.N.J. | *Interim Co-Lead Class Counsel* |
| *Hogan, et al. v. Amazon.com, Inc., No. 21-cv-3169* | N. D. Ill. | *Interim Co-Lead Counsel* |
| *In Re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litigation, No. 3:21-cv-00007* | S. D. Ind. | *Interim Co-Lead Counsel* |
| *Ciofoletti, et al. v. Securian Financial Group, et al., No. 18-cv-03025* | D. Minn. | *Interim Co-Lead Counsel* |
| *In re Xyrem (Sodium Oxybate) Antitrust Litigation, No. 20-md-02966-LHK* | N.D. Cal. | *Plaintiffs' Steering Committee* |
| *In re: DPP Beef Litigation, No. 20-cv-01319* | D. Minn. | *Plaintiffs' Steering Committee* |
| *Powell Prescription Center, et al. v. Surescripts, LLC, No. 1:19-cv-006627* | N.D. Ill. | *Interim Co-Lead Counsel* |
| *Precious Plate, Inc., et al. v. Olin Corporation, et al., No. 1:19-cv-00990* | W.D. NY | *Interim Co-Lead Counsel* |
| *In re Broiler Chicken Antitrust Litigation No. 16-cv-8637* | ND. Ill. | *Liaison Class Counsel* |
| *United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, et. al. v. Allergan, PLC No.: 15-cv-12731* | D. Mass. | *Co-Lead Counsel* |
| *In re Nexium (Esomeprazole) Antitrust Litig., 12-MD-02409* | D. Mass. | *Co-Lead Counsel* |

WB&E WEXLER BOLEY & ELGERSMA LLP

www.wbe-llp.com

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

| CASE | COURT | APPOINTMENT |
|------|-------|-------------|
| *In re Actos End-Payor Antitrust Litigation, Case No. 13-cv-09244* | *S.D.N.Y.* | *Interim Co-Lead Counsel* |
| *Underwood v. I.F.F.A. Servs., No. 09-390-GPM; Clancy-Gernon Funeral Homes, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 09-1008-GPM; Pettett Funeral Home, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 10-1000-GPM* | *S.D. Ill.* | *Lead Settlement Class Counsel* |
| *Celebrex Antitrust Litigation No: 14-cv-0395* | *E.D. Va.* | *Interim Co-Lead Class Counsel* |
| *In re Suboxone Antitrust Litigation, MDL 2445* | *E.D. Pa.* | *Interim Co-Lead Class Counsel* |
| *In re Niaspan Antitrust Litigation, Case No. 13-MD-02460* | *E.D. Pa.* | *Interim Co-Lead Counsel* |
| *Levine v. American Psychological Association, Inc., Case No. 10-cv-01780* | *D.D.C.* | *Co-Lead Class Counsel* |
| *Roberts v. Electrolux Home Products Inc., Case No. 12-cv-1644* | *C.D. Cal.* | *Co-Lead Class Counsel* |
| *In re Skelaxin (Metaxalone) Antitrust Litigation, MDL No. 2343* | *E.D. Tenn.* | *Plaintiffs' Executive Committee* |
| *In re Effexor XR Antitrust Litigation, Case No. 11-cv-05661* | *D.N.J.* | *Plaintiffs' Executive Committee* |
| *In re Flonase Antitrust Litigation, Case No. 08-cv-3301* | *E.D. Pa.* | *Plaintiffs' Executive Committee* |
| *In re Prograf Antitrust Litigation, Case No. 11-cv-11870* | *D. Mass.* | *Plaintiffs' Executive Committee* |
| *In re Lipitor Antitrust Litigation, MDL No. 2332* | *D. N.J.* | *Interim Co-Lead Class Counsel* |
| *Gomez v. PNC Bank, National Association No. 1:12-cv-1274* | *N.D. Ill.* | *Lead Class Counsel* |

WB&E WEXLER BOLEY & ELGERSMA LLP

www.wbe-llp.com

| CASE | COURT | APPOINTMENT |
|------|-------|-------------|
| In re Wellbutrin XL Indirect Purchaser Antitrust Litigation, Case No. 2:08-cv-02433 | E.D. Pa. | Co-Lead Class Counsel |
| Carter v. Allstate Ins. Co., Case No. 02-CH-16092 | Cir. Ct. Ill. – Cook County | Co-Lead Counsel |
| In re Webloyalty.com, Inc. Marketing and Sales Practices Litigation No.: MDL No. 1820 | D. Mass. | Co-Lead Counsel |
| Levie v. Sears Roebuck & Co. et al, No. 1:04-cv-7643 | N.D. Ill. | Liaison Class Counsel |
| In re Medtronic, Inc. Implantable Defibrillators Products Liability Litigation, MDL No. 1726 | D. Minn. | Plaintiffs' Steering Committee |
| In re Pet Foods Products Liability Litigation, MDL No. 1850 | D. N.J. | Co-Lead Counsel |
| New England Carpenters Health Benefits Fund v. First Databank, Case No. 1:05-cv-11148 | D. Mass. | Co-Lead Class Counsel |
| In re BP Products North America, MDL No. 1801 | N.D. Ill. | Co-Lead Class Counsel |
| In re Hypodermic Products Antitrust Litigation No.: MDL No. 1730 | D. N.J. | Co-Lead Class Counsel |
| In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456 | D. Mass. | Co-Lead Counsel |
| Nichols v. SmithKline Beecham Corp., Case No. 2:00-cv-06222-JP | E.D. Pa. | Co-Lead Class Counsel |
| Virginia M. Damon Trust v. Mackinac Financial Corp., f/k/a North Country Financial Corp., Case No. 2:03-cv-0135 | W.D. Mich. | Co-Lead Counsel |
| Stephen A. Ellerbrake and John E. Casey v. Campbell-Hausfeld et al. No.: 01-L-540 | Cir. Ct. Ill. – St. Clair County | Co-Lead Counsel |

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

www.wbe-llp.com

# Successes

Since its founding, the firm has participated in cases achieving millions of dollars in settlements and savings for its clients and consumers. In cases in which the firm has served as Co-Lead Counsel, it has recovered over a billion dollars for its clients. Listed below are some of the firm's representative settlements and verdicts.

## SIGNIFICANT RECOVERIES AND VERDICTS

| CASE | COURT | RECOVERY |
|------|-------|----------|
| Roberts v. Electrolux Home Products, Inc., Case No. 12-cv-01644 | C.D. Cal. | Settlement valued at more than $35.5M |
| In re Hypodermic Products Antitrust Litigation, MDL No. 1730 | D. N.J. | Settlement of $22M |
| New England Carpenters Health Benefits Fund v. First Databank, Case No. 05-cv-11148 | D. Mass. | $350M settlement with McKesson; $2.7M with FDB and Medispan |
| In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456 | D. Mass. | Multiple settlements totaling more than $350M |
| In re Guidant Defibrillators Products Liability Litigation, MDL No. 1708 | D. Minn. | $195M |
| Underwood v. I.F.F.A. Servs., No. 09-390-GPM; Clancy-Gernon Funeral Homes, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 09-1008-GPM; Pettett Funeral Home, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 10-1000 | S.D. Ill. | $41.15M |
| In re Flonase Antitrust Litigation, Case No. 08-cv-3301 | E.D. Pa. | $46M |
| In re OSB Antitrust Litigation, Case No. 06-cv-00826 | E.D. Pa. | $120M |
| In re Pet Food Products Liability Litigation, MDL No. 1850 | D. N.J. | $24M |

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

| CASE | COURT | RECOVERY |
|------|-------|----------|
| *In re Webloyalty.com, Inc. Marketing and Sales Practices Litigation, MDL No. 1820* | *D. Mass.* | *Allowed customers to recover up to 100% of unauthorized charges* |
| *In re BP Prods. North America, Inc. Antitrust Litigation, MDL No. 1801* | *N.D. Ill.* | *$15.25M* |
| *In re Medtronic Inc. Implantable Defibrillator Products Liability Litigation, MDL No. 1726* | *D. Minn.* | *$75M* |
| *Wington v. CB Richard Ellis, Inc., Case No. 02-cv-6832* | *N.D. Ill.* | *A favorable settlement that made available monetary relief for eligible claimants, as well as a charitable contribution to the Commercial Real Estate Women Network* |
| *In re Pressure Sensitive Labelstock Antitrust Litigation, MDL No. 1556* | *E.D. Pa.* | *$46.5M* |
| *In re Synthroid Marketing Litigation, MDL No. 1182* | *N.D. Ill.* | *$87.4M* |
| *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co., Case No. 01-cv-01295* | *D.D.C.* | *$135M settlement* |
| *Nichols v. Smithkline Beecham Corp. ("Paxil"), Case No. 00-cv-6222* | *E.D. Pa.* | *$65M* |

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# Practice Areas

WBE is a nationally recognized leader in complex class action and multidistrict litigation, with a commitment to excellence and achieving meaningful relief for its clients. The firm's diverse litigation practice spans the areas of antitrust, business and commercial litigation, consumer fraud litigation, government representation, healthcare litigation, securities and corporate governance, and whistleblower and false claims litigation.

## ANTITRUST

Unfortunately, individuals and businesses sometimes violate the rules of our market-based system, imposing artificially inflated prices on market participants. Conduct prohibited by state and federal antitrust laws can take the form of illegally-maintained monopolies, price fixing, the improper exchange of competitive information, patent abuses, and other forms of unfair competition.

WBE is a leader in private antitrust enforcement, litigating a wide variety of class action cases involving many prominent industries, including the pharmaceutical, entertainment, service rental, lumber, energy, and electronic products industries.

Representative cases in the firm's antitrust practice area include:

*POWELL PRESCRIPTION CENTER, ET. AL. V. SURESCRIPTS, LLC, ET. AL.,* **NO. 1:19–cv-06627 (N.D. Ill.)**
WBE, along with co-counsel, filed this class action suit alleging that Surescripts uses its monopolistic market share to conduct anticompetitive practices in the e-prescription markets, such as entering into loyalty agreements with certain customers that allow the company to charge higher transaction fees than would be possible in a competitive market, as well as issuing threats against customers to ensure no other market competitors emerged. The lawsuit also names RelayHealth and Allscripts—competitors that Plaintiffs allege entered into non-compete and exclusive dealing an agreements with SureScripts in exchange for a portion of SureScripts' monopoly profits.

*PRECIOUS PLATE, INC., ET. AL. V. OLIN CORPORATION, ET. AL.,* **NO. 1:19-cv-00990 (W.D. NY.)**
WBE and its co-counsel filed this class action suit alleging that the largest domestic suppliers of caustic soda engaged in a conspiracy to fix the price at which caustic soda was sold in the United States. After years of declining prices, plaintiffs allege that the defendants engaged in coordinated supply reductions and redirection of domestic caustic soda supply to export markets, which allowed them to raise the price of caustic soda by nearly 50% over three years.  These price increases would not have been possible absent defendants' coordinated and anticompetitive conduct.

 WEXLER BOLEY & ELGERSMA LLP

### *IN RE BROILER CHICKEN ANTITRUST LITIGATION,* **16: cv -8637 (N.D. ILL.)**

WBE, along with co-counsel, filed this class action alleging that the nation's largest chicken producers (such as Tyson and Pilgrims) agreed with each other to limit the supply of broiler chickens, in order to raise the prices on chicken and chicken products. The Court appointed WBE as Liaison Counsel on behalf of a class of restaurants (and institutions, such as prisons and nursing homes) that purchased the defendants' chicken from a wholesaler. The plaintiffs are seeking to recover damages suffered when they overpaid on purchases of the defendants' chicken. The defendants filed motions to dismiss the case, but in November of 2017 the Court denied those motions almost entirely, issuing a 92-page opinion. The parties are in the discovery phase of the case, which will last into 2019.

### *UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS MIDWEST HEALTH BENEFITS FUND, ET. AL. V. ALLERGAN, PLC NO.***: 15-cv-12731 (D. MASS.)**

WBE filed this case against Allergan in June 2015 on behalf of a putative class of end-payors alleging that Plaintiffs and all Asacol end-payors were harmed by defendants' conduct in engaging in an unlawful "product hop." Patients had always paid for the brand name version of Asacol. In July 2013, a generic version was planned for release on the market, but because of the defendant's withdrawal of the drug from the market, a generic version does not exist and consumers are still paying higher prices for similar brand name versions. WBE was appointed co-lead counsel. The Hon. Judge Denise J. Casper of the United States District Court District of Massachusetts granted plaintiffs' motion for class certification and denied the defendants' motion for summary judgement. The First Circuit stayed the trial set to begin on January 22, 2018 pending the resolution of Defendants' appeal of the District Court's class certification decision.

### *IN RE NEXIUM ANTITRUST LITIG.,* **MDL NO. 2409 (D. MASS.)**

WBE, along with co-counsel, filed this antitrust class action, alleging that defendant AstraZeneca entered into non-competition agreements with a number of generic pharmaceutical manufacturers in order to delay marketing entry of generic versions of its blockbuster drug Nexium. Starting in October 2014, WBE participated in a six-week jury trial in the action; it was the first trial of a "reverse payment" antitrust action since the Supreme Court's *Actavis* decision. While the jury made several key findings in favor of the Plaintiffs, it ultimately returned a verdict in favor of defendants AstraZeneca and Ranbaxy. Plaintiffs have since moved for a new trial, and end-payor plaintiffs (represented by WBE and others) have moved for injunctive relief.

### *IN RE LIPITOR ANTITRUST LITIG.,* **MDL. NO. 2332 (D. N.J.)**

WBE filed this class action against Pfizer Inc. and Ranbaxy Pharmaceuticals Inc., among others, seeking damages and equitable relief on behalf of end-payors of Lipitor and/or its generic bioequivalents for violations of antitrust and consumer protection laws. Plaintiffs allege that, among other things, defendants fraudulently procured a patent covering Lipitor and entered into an anticompetitive settlement with Ranbaxy in order to keep generic versions of the blockbuster drug off of the market.

### NICHOLS V. SMITHKLINE BEECHAM CORP. ("PAXIL"), No. 00-CV-6222 (E.D. PA.)

WBE served as co-lead counsel in this case involving alleged efforts by GlaxoSmithKline, including "sham" patent litigation, to keep generic versions of Paxil off the market. This case is believed to be one of the first, if not the first, to allege misuse of patents to delay generic competition in a pharmaceutical market brought under Section 2 of the Sherman Act (rather than Section 1). The case settled for $65 million.

### IN RE EFFEXOR XR ANTITRUST LITIG., No. 11-CV-5661 (D. N.J.)

WBE was appointed to the Indirect Purchaser Class Executive Committee in this antitrust litigation against pharmaceutical manufacturer Wyeth, Inc. regarding its antidepressant Effexor XR. The complaint alleges that Wyeth fraudulently obtained a number of method-of-use patents for Effexor XR and engaged in sham litigation against sixteen potential generic competitors in an effort to protect the Effexor XR monopoly. Plaintiffs further allege that Wyeth entered into an anticompetitive settlement with the first generic ANDA filer, Teva Pharmaceutical Industries, Ltd., and its US subsidiary Teva Pharmaceuticals USA, Inc., which delayed the entry of generic Effexor XR competitors for more than two years.

For more information about the firm's Antitrust Litigation practice, please visit the firm's website, at **http://www.wbe-llp.com/practice-areas/antitrust-litigation/**.

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## BUSINESS AND COMMERCIAL LITIGATION

Confronting well-heeled and well-represented adversaries, WBE attorneys represent businesses throughout the country in complex disputes ranging from breach of contract claims to business torts, including fraud, unfair competition, and breaches of fiduciary duty. The firm has represented small businesses on a contingency basis when those businesses were faced with litigating against larger adversaries that engaged in unfair and unlawful conduct.

Although WBE attorneys are always prepared to offer zealous advocacy for the firm's clients in state or federal courts, they also have employed creative approaches to successfully handle difficult cases through alternative dispute resolution such as mediation or arbitration. The firm's willingness to extend its services in cases that other firms are unwilling or unable to handle is just another testament to its commitment to positive change.

For more information about the firm's Business and Commercial Litigation practice, including summaries of representative cases, please visit the firm's website, at **http://www.wbe-llp.com/practice-areas/business-commercial-litigation/**.

WB&E WEXLER BOLEY & ELGERSMA LLP

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## CONSUMER PROTECTION

WBE is a national leader in prosecuting consumer protection claims on behalf of both businesses and individuals in state and federal courts throughout the country. The firm has successfully prosecuted cases involving, but not limited to:

// unlawful environmental dumping

// improper Internet "lead generation" practices

// unfair billing practices of telecommunications companies

// mislabeling of dietary supplements

// the sale of defective drugs and household appliances

// unfair payment policies of health insurance companies

// false advertising by Internet service providers

// deceptive practices of social networking sites

// unlawful debt reduction scams

For more information about the firm's Consumer Protection practice, including summaries of representative cases, please visit the firm's website, at
**http://www.wbe-llp.com/practice-areas/consumer-protection/**.

## PRIVACY AND INFORMATION SECURITY

In a digital age, there are few assets more valuable to companies than data on current or potential customers. Because of this, many companies place more importance on obtaining personal information than concern for consumer privacy. WBE is actively protecting the privacy rights of individuals by taking action against companies who disregard privacy laws and mishandle consumer data. Our efforts include matters involving:

// Electronic collection and disclosure of personal information to third parties without proper consent, in violation of federal and state privacy laws, including the California Consumer Privacy Act of 2018 (CCPA)

// Violations of the Illinois Biometric Information Privacy Act (BIPA), which is intended to safeguard personal biometric identifiers such as fingerprints, voice prints, and face, hand, and retina features

// Data breaches that result in personal information being exposed to nefarious parties

 WEXLER BOLEY & ELGERSMA LLP

// Unsolicited text messages, excessive robocalls, and junk faxes; and

// Disregard for numerous privacy laws, including the Electronic Communications Privacy Act (ECPA), Children's Online Privacy Protection Act (COPPA), the Gramm-Leach-Biley Act that require financial institutions to provide consumer privacy notices explaining their information sharing practices, and similar federal and state privacy laws.

## GOVERNMENT REPRESENTATION

Our state, local, and federal governments are often victims of the same securities and healthcare frauds that are inflicted on businesses and individuals in the private sector. The government is an insurer through Medicare or Medicaid, and therefore overpays when brand name pharmaceutical manufacturers unlawfully suppress generic competition for their drugs. Similarly, government entities are investors with respect to their treasuries and pension plans. Thus, when false and misleading statements are issued by public companies, government entities are entitled to the same securities fraud damages that are available to private investors. Governments are also owed fiduciary duties in certain circumstances, and are often parties to multi-million-dollar contracts, the breach of which can result in significant damages.

WBE helps government entities recover the funds taken from them through the unlawful conduct of others. Ultimately, those funds belong to taxpayers, who are the intended beneficiaries of government services. WBE believes that government officials have not only the right, but also the obligation, to try to recover these assets for their constituents.

For more information about the firm's Government Representation practice, including summaries of representative cases, please visit the firm's website, at **http://www.wbe-llp.com/practice-areas/government-representation/**.

## HEALTHCARE LITIGATION

In the wake of ever-rising healthcare costs, WBE is at the forefront of legal action being taken nationwide to challenge wide-ranging fraudulent and unfair conduct in the healthcare industry. Our firm has prosecuted claims for:

    // reporting of fraudulent pharmaceutical prices

    // failures to recall defective health devices

 WB&E WEXLER BOLEY & ELGERSMA LLP

www.wbe-llp.com

// an industry-wide conspiracy to increase the prices of over 400 brand name drugs

// the filing of baseless lawsuits and administrative actions to delay generic drug entry

// challenging pharmaceutical manufacturers' marketing of prescription opioids

// a pharmacy's illegal substitution of more expensive versions of generic drugs

Bringing claims under RICO, the antitrust laws, state consumer protection statutes, and more, WBE has successfully prosecuted cases against some of the largest companies in the healthcare industry, including McKesson Corp., Becton Dickinson, AstraZeneca, GlaxoSmithKline, Abbott Laboratories, Bristol-Myers Squibb, Johnson & Johnson, and Bayer Corporation.

WBE's case against McKesson Corp. for manipulating the reimbursement benchmark for drug purchases resulted in one of the largest RICO settlements ever.

For more information about the firm's Healthcare Litigation practice, including summaries of representative cases, please visit the firm's website, at
**http://www.wbe-llp.com/practice-areas/healthcare-litigation/.**

## SECURITIES AND CORPORATE GOVERNANCE

Over the last few years, we have learned all too well that lack of regulation and oversight can lead to corrupt corporate leadership, lack of transparency regarding the risks of significant investments, and the repeated securitization of the same bad investments.

WBE has committed its resources to helping pension plans, governments, and others recover assets lost as a result of the weakness of mortgage-backed securities, auction rate securities, credit swaps, derivative swaps, and overextended securities lending programs. Through its membership in the National Association of State Treasurers, and its increased involvement in institutional finance and investment conferences, WBE has catapulted itself to the forefront of this area of litigation, seeking redress and the recovery of assets lost through gross negligence and breaches of fiduciary duties by those in whom institutional investors placed their trust and confidence.

Securities litigation can often result in changes to corporate governance and policies designed to prevent future misconduct. We believe the importance of this work cannot be overstated. The firm seeks to ensure that corporate officers and directors fulfill their responsibilities and provide full disclosure and transparency to those buying and selling

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

securities, helping to ensure that our capital markets truly reflect the accurate information that should underlie every commercial transaction.

*For more information about the firm's Securities and Corporate Governance practice, including summaries of representative cases, please visit the firm's website, at* **http://www.wbe-llp.com/practice-areas/securities-corp-governance/.**

## WHISTLEBLOWER AND FALSE CLAIMS LITIGATION

Under the Federal False Claims Act and state law counterparts, private citizens or "whistleblowers" may sue on behalf of the government for fraud committed against it. This type of fraud costs taxpayers billions of dollars each year. If a case is successful, the government may be able to recover treble damages and civil penalties for each violation and the private citizen or "relator" can receive his or her attorneys' fees and costs, as well as a portion of the funds awarded by the court.

WBE is committed to seeing companies and individuals held responsible for fraud against the government and to representing private citizens willing to come forward and expose fraud.

For more information about the firm's Whistleblower and False Claims Litigation practice, including summaries of representative cases, please visit the firm's website, at **http://www.wbe-llp.com/practice-areas/whistleblower-false-claims-litigation/.**

WB&E WEXLER BOLEY & ELGERSMA LLP

# Our Professionals

Our legal team consists of professionals with a broad range of experiences and diverse backgrounds. Many of our lawyers serve as leaders in charitable institutions, teach at universities, and are members of national, state, and local bar associations. All of our professionals have earned the respect and admiration of our clients, judges, and co-counsel by the strength of their experience, diverse backgrounds, and overall commitment to excellence.

## OUR PARTNERS

The partners of WBE have been regularly selected as "Super Lawyers" and "Rising Stars" in Illinois. Named partner Kenneth A. Wexler is rated AV® Preeminent™ by Martindale-Hubbell, the highest rating in legal ability and ethics a lawyer can obtain. In addition, he has been named Illinois Local Litigation Stars by Benchmark Plaintiff every year since 2012.

## OUR ASSOCIATES

Our associates hail from some of the top schools in the nation and have been recognized for outstanding academic achievement. As law students, WBE associates served on the editorial boards of law reviews and journals, received academic honors, acted as student leaders, and participated in a variety of clinical programs to receive real-world legal experience before entering practice. Our associates have garnered numerous top-of-class honors.

WB&E WEXLER BOLEY & ELGERSMA LLP

**KENNETH A. WEXLER**

**MANAGER AND FOUNDING PARTNER**

Kenneth A. Wexler, the founder of the firm, is a 1980 graduate of the Georgetown University Law Center. He received a Bachelor of Arts degree in 1977, *summa cum laude*, from Washington University in St. Louis, Missouri.

For over 30 years, Ken has devoted himself to helping those whose rights have been denied, or who have been victims of the unscrupulous or fraudulent actions of others, typically more powerful persons or entities. Founder of WBE, Ken was also a founding partner of the firms formerly known as Miller Faucher Cafferty & Wexler LLP and Wexler Wallace LLP, respectively. He began his career and was a partner in the Chicago law firm now known as Much Shelist, PC.

Ken has been in leadership positions in cases with far-ranging subject matters, including brand name manufacturer suppression of competition from generic drugs, fraudulent and deceptive product overcharges, discrimination and harassment, corporate waste and mismanagement, cost recovery for defective medical devices, false advertising, and government fraud. Ken's practice is devoted to complex class action and commercial litigation, which includes a substantial amount of health care litigation, claims brought under federal and state false claims statutes, and cases alleging violations of the securities and antitrust laws. At present, Ken is particularly focused on protecting issuers of municipal bonds, recovering losses for pension funds and other investors that were victimized by unlawful and improvident securities lending practices, and cost-recovery for victims of health care fraud, including Taft-Hartley Funds, self-insured employers, and government entities.

Ken is a member of the Chicago Bar Association, Illinois State Bar Association, Federal Bar Association, American Bar Association, Chicago Council of Lawyers, American Association for Justice, and the Illinois Trial Lawyers Association. He is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, United States District Court for the Northern and Southern Districts of Illinois, the United States Court of Appeals for the First, Second, Third, Sixth, and Seventh Circuits, and the United States Court of Appeals for the District

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

of Columbia. With so many of the firm's cases pending in jurisdictions across the country, Ken has also been admitted to practice *pro hac vice* in United States District Courts of California, Connecticut, the District of Columbia, Florida, Maine, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New Mexico, New York, Ohio, Pennsylvania, South Dakota, Tennessee, Virginia, and Wisconsin.

Along with bar activities, Ken is a fellow of The Roscoe Pound Institute and is a former member of the American Constitution Society for Law and Policy, the Center for International Legal Studies, the National Association of State Treasurers, and the Executive Committee of the Civil Rights for the Anti-Defamation League. Ken also volunteers with the Chicago coalition for the Homeless and is a lifetime member of the 100 Club of Chicago, which provides support for the families of first responders who died in the line of duty.

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

**JUSTIN N.
BOLEY**

**PARTNER**

Justin N. Boley's principal area of practice is complex class
action litigation in antitrust matters. Since joining the firm, he has
been heavily involved with virtually all of the firm's
pharmaceutical antitrust cases, including, among others: In re
Nexium (Esomeprazole) Antitrust Litigation, In re Wellbutrin XL
Antitrust Litigation; In re Prograf Antitrust Litigation, In re Lipitor
Antitrust Litigation, In re Effexor Antitrust Litigation, In re
Androgel Antitrust Litigation, and In re Skelaxin (Metaxalone)
Antitrust Litigation.  He has also worked on antitrust cases
involving price-fixing in international commodities markets and
manipulation of benchmark interest rates, and he has taken the
lead on investigations into the cartelization of the credit
derivatives market and price-fixing among online travel sites
and hotels.

Justin came to the firm after attending school abroad and
obtaining a Master's Degree in International Relations.  During
law school, Justin's focus on corporate law, finance, and
complex litigation earned him numerous top-of-the-class
academic honors; he was awarded CALI Awards in Antitrust,
Contracts, Legal Analysis, Research, and Writing III, Commercial
Arbitration, Natural Resource Law, and Legal Profession (Ethics).
Justin was a member of the Public Interest Law Committee at
DePaul College of Law for three years.  He also worked as a
member of the New Media Team in President Obama's
Presidential campaign headquarters in Chicago, where he
helped facilitate the online organizing efforts of grassroots
groups nationwide.

Justin is admitted to the bar of the State of Illinois, Western
District of Wisconsin, United State Court of Appeals, Seventh
Circuit, and the United States District Court for the Northern
District of Illinois.

WB&E WEXLER BOLEY & ELGERSMA LLP

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

## KARA A. ELGERSMA

### PARTNER

Kara A. Elgersma is a 2000 graduate of Georgetown University Law Center, with Bachelor of Arts Degrees in English and History obtained from the University of Kansas in 1997.

Kara came to WBE from K&L Gates LLP, where she was a partner. At K&L Gates, Kara was a member of the Antitrust and Trade Regulation Department, focusing on antitrust litigation, franchising and dealership disputes, class actions and other complex commercial litigation, as well as advising clients on a variety of regulatory matters, including antitrust, FCC, and energy regulatory policies.

Kara's experience includes all aspects of complex commercial litigation. In addition, she is well-versed in arbitration, including pre-hearing case development and management, as well as the conduct of full hearings.

For six months in 2004, Kara was "on loan" to Kraft Foods Global, Inc., Northfield, Illinois, where she directly assisted the Chief Litigation Counsel for the company and handled a wide variety of litigation matters, including small and large product liability claims, general commercial litigation, civil investigative demands, business subpoenas, labor and employment litigation, and bankruptcy matters.

She is admitted to the bars of the Supreme Court of Illinois and Wisconsin, the District of Columbia Court of Appeals, the United States District Courts for the Northern District of Illinois, the District of Columbia, the District of Colorado and the Western District of Wisconsin, the United States Courts of Appeals for the Third, Fourth, Sixth, Seventh, and Tenth Circuits, and the Supreme Court of the United States.

Kara is a member of the American Bar Association, the Illinois State Bar Association, and the District of Columbia Bar Association. She was a Board Member of the Competition Law360 Advisory Board for 2009 to 2010, and she was involved as a Board Member for Girls On The Run of Northern Virginia, as well as a volunteer with Chicago Volunteer Legal Services.

WB&E WEXLER BOLEY & ELGERSMA LLP

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

**BETHANY R. TURKE**

**PARTNER**

Bethany R. Turke joined WBE after practicing in the New York and Chicago offices of Latham & Watkins LLP. Bethany's practice at Latham involved a wide range of civil and criminal litigation matters, including securities litigation, contract disputes, government investigations, and employment matters.  She was also very active in Latham's *pro bono* practice, working tirelessly on behalf of clients facing various immigration, employment, and housing discrimination issues.  Before joining Latham & Watkins, Bethany served as a law clerk to the Honorable Cheryl L. Pollak of the United States District Court for the Eastern District of New York.  She received her J.D. from Harvard Law School in 2006.

Bethany is actively involved on cases in a number of WBE's practice specialties, including the firm's antitrust, healthcare, and consumer protection practice areas.

**MELINDA J. MORALES**

**PARTNER**

Throughout her career, Melinda ("Mindy") Morales has represented clients across a broad range of complex litigation on both sides of the courtroom. Mindy has over twenty years of experience in state and federal court advocating for both plaintiffs and defendants at the trial and appellate levels. This gives Mindy a unique perspective that allows her to anticipate her opposing counsel's methods and provides insight into their approach.

Mindy's early career was devoted to working exclusively on class action litigation in the areas of consumer fraud, antitrust, and securities. Over the years she has gained extensive experience handling disputes involving consumer protection laws, employment laws, insurance coverage issues, and commercial contract and partnership issues.  In the class action arena, her accomplishments include acting as a core member of the trial and appellate team that obtained a $1 billion verdict on behalf of plaintiffs in a landmark consumer fraud case, co-authoring

www.wbe-llp.com

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

multiple winning appellate briefs, and arguing on behalf of plaintiffs to address the extraterritorial reach of the Illinois Consumer Fraud Act.

Mindy's desire to get back to helping regular people and businesses whose rights have been trampled, led her to WBE, where she serves as a Partner. When she's not advocating for her clients, Mindy enjoys spending time with her family, skiing, hiking, travelling, and volunteering at local charities.

**TYLER J. STORY**

**PARTNER**

Beginning in law school, Tyler J. Story has focused his attention towards antitrust litigation.  While a student at Pennsylvania State University, he held two antitrust research assistant positions: one in which he explored issues of indirect purchaser standing in state antitrust suits, the other in which he focused specifically on the application of antitrust law and economics in the pharmaceutical industry

Since joining WBE, Tyler has been actively involved in various aspects of litigation concerning brand name manufacturer suppression of competition from generic drugs.

**ZORAN (ZOKI) TASIĆ**

**ASSOCIATE**

Zoki joined WBE in February 2021 to work on complex class-action litigation in the areas of antitrust, consumer protection, and healthcare. His work at the firm builds on his previous experiences as a plaintiff-side class-action attorney and as a trial attorney for the Antitrust Division of the U.S. Department of Justice. Before joining the firm, Zoki worked in private practice as a plaintiff-side class-action attorney. During that time, he developed cases from scratch, oversaw all aspects of discovery, wrote class-certification briefs in multiple cases, and played an instrumental role in the drafting of the first consumer class-action

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

complaint in what became the *In re: Zantac (Ranitidine) Products Liability Litigation* MDL. Zoki also had leading roles in a billion-dollar RICO case involving pharmaceutical pricing and a novel antitrust case concerning bid rigging in the market for search-engine advertising.

**EAGHAN DAVIS**

**ASSOCIATE**

Eaghan joined WBE in April 2022 to work on the firm's False Claims Act, Class-Action, Antitrust, and Employment matters.

Prior to joining the firm, Eaghan served as an Assistant Attorney General in the Criminal Division of the Office of the Illinois Attorney General from 2020 to 2022, where he was responsible for briefing and arguing cases before Illinois' trial courts, the Illinois Court of Appeals, the Illinois Supreme Court, and Illinois' federal district courts.

Eaghan served as a law clerk to Michigan Supreme Court Justice Richard Bernstein from 2019 to 2020, where he was exposed to some of the state's most pressing issues, and in his role, assisted the Justice in writing opinions in the "Flint Water" cases, which held that citizens could sue the State of Michigan for their injuries from ingesting tap water laced with lead, PFAS, and other harmful chemicals and bacteria.

While in law school, Eaghan interned for Michigan Supreme Court Chief Justice Bridget Mary McCormack, U.S. District Court for the Eastern District of Michigan Judge Victoria A. Roberts, and two plaintiffs' law firms that specialized in Class Action, Employment, and False Claims Act cases. While interning at one of those law firms, Eaghan assisted whistleblower attorneys litigating a seminal False Claims Act case before the United States Supreme Court, Universal Health Services, Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989 (2016), which set new pleading requirements for False Claims Act whistleblowers nationwide.

As a junior in high school, Eaghan was appointed by United States Representative Peter Hoekstra to the House Page

Program, where he lived on capitol hill, attended school in the Library of Congress, and worked on the floor of the House of Representatives during the passage of the "Bailout Bill" in 2008.

**ELENA ENDRUKAITE**

Elena joined WBE in April 2020 to work on complex class-action litigation.

**ASSOCIATE**

Prior to joining WBE, Elena worked in private practice exclusively focused on the pharmaceutical industry, including specialty practice in the field of patent and regulatory counseling and litigation under the Hatch-Waxman Act, the Medicare Prescription Drug, Improvement, and Modernization Act, and the Biologics Price Competition and Innovation Act. Elena is also skilled in trademark, patent, and copyright disputes, as well as drafting trademark applications and intellectual property transfer agreements.

While in law school, Elena interned for United States District Court for the Northern District of Illinois Judge Rebecca R. Pallmeyer. During this time, she assisted the Judge in drafting opinions in fee dispute, sentence reduction, discrimination cases.

Prior to attending law school, Elena worked in biotechnology industry in Northern California. During that time, Elena developed a number of processes to help improve manufacturing conditions of potential drug-candidates as well as performing early-stage chemistry analyses on those compounds.

**MARGARET SHADID**

**ASSOCIATE**

Margaret joined WBE in September 2022 to work on complex class-action litigation, and has long been interested in protecting the rights of individuals and communities. While in law school, Margaret was active in her school's Pro Bono Clinic, where she argued on behalf of juveniles who received sentences of life imprisonment. She was also an Associate Barrister of the Trial Advocacy and Dispute Resolution

FILED DATE: 3/24/2023 4:34 PM 2023CH02874

Program and won various awards for her work in trial competitions. Her article advocating to allow individuals with felony convictions to sit on juries was published in the Lake County Bar Association Magazine, "The Docket," in July 2020.

After graduating law school, Margaret practiced federal criminal defense in the Northern District of Illinois. From September 2021-2022, she served as a law clerk to United States District Court Judge Thomas M. Durkin in the Northern District of Illinois, where she was exposed to a variety of complex litigation matters, including antitrust and False Claims Act cases.

WB&E WEXLER BOLEY & ELGERSMA LLP

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# EXHIBIT H

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

**I**N THE **C**IRCUIT **C**OURT OF **C**OOK **C**OUNTY, **I**LLINOIS
**C**OUNTY **D**EPARTMENT, **C**HANCERY **D**IVISION

ERICA NORMAN, individually and on behalf
of all others similarly situated,

                           Plaintiffs,

*v.*

SERVALL BIOMETRICS d/b/a PATRONSCAN,
Inc.

                         Defendants.

Docket No. _____

Hon. _____

Calendar _____

**<u>AFFIDAVIT OF KEVIN LANDAU</u>**

     I, Kevin Landau, being first duly cautioned, swear and affirm as follows:

1. I am one of Plaintiffs' Counsel in the above-referenced matter.

2. I submit this Affidavit in support of Plaintiffs' Motion for Class Certification and Request for Discovery on Certification Issues.

3. I am the founding and managing partner of the law firm Taus, Cebulash & Landau, LLP. Attached hereto as Exhibit 1 is a true and correct copy of the firm's résumé.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: March 21, 2023

                                     */s/ Kevin Landau*
                                     Kevin Landau
                                     TAUS, CEBULASH &
                                     LANDAU, LLP
                                     123 William St., Suite 1900A
                                     New York, NY 10038
                                     klandau@tcllaw.com.

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# EXHIBIT 1



# Taus, Cebulash & Landau, LLP
### 123 William St., Suite 1900A
### New York, New York 10038
### 212-931-0704
### www.tcllaw.com

## Firm Resume

**Taus, Cebulash & Landau, LLP** is a litigation firm with a focus in complex antitrust and consumer protection class actions. The firm was founded in 2009 with a few basic guiding principles: we are dedicated to providing the highest quality legal representation to our clients and class members, while working in an environment that inspires collaboration, inventiveness and productivity.

We have extensive knowledge and experience in complex antitrust actions in a variety of industries, including pharmaceutical and medical devices. The firm and its members have been appointed to Executive Committees in multiple cases. We currently represent plaintiffs and class members in pharmaceutical antitrust actions alleging pharmaceutical manufacturers have wrongfully prevented or delayed less expensive generic drugs from entering the market, including *In re Effexor XR Direct Purchaser Antitrust Litigation,* 11-cv-05479 (D.N.J.) (Executive Committee); *In re Zetia (Ezetimibe) Antitrust Litigation*, 18-md-2836 (E.D. Va.) (Executive Committee); *In re Niaspan Antitrust Litigation,* 13-md-2460 (E.D. Pa.); *In re Lipitor Antitrust Litigation*, 12-cv-2389 (D.N.J.); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*, 13-md-2445 (E.D. Pa.); *In re Opana ER Antitrust Litigation*, 14-cv-10151 (N.D. Ill.); *In re Amitiza Antitrust Litigation*, No. 21-cv-11057 (D.Mass.) and *In re Generic Pharmaceutical Pricing Antitrust Litigation,* 16-md-2724 (E.D. Pa.). We have also represented classes in recent pharmaceutical antitrust actions in which we and our co-counsel have recovered significant settlements for the class members, including *In re Glumetza Antitrust Litigation*, 19-cv-5822 (N.D. Ca.) ($453 million); *In re Lidoderm Antitrust Litigation*, 14-md-2521 (N.D. Cal.) (Executive Committee) ($166 million); *In re Solodyn Antitrust Litigation*, 14-md-2503 (D. Mass.) ($72.5 million); *In re Celebrex Antitrust Litigation*, 14-cv-361 (E.D. Va.) ($94 million); and *In re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 18-MD-2819 (E.D.N.Y) (Executive Committee) ($51.2 million). Prior to the founding of Taus, Cebulash & Landau, LLP, our attorneys played a leadership role in cases where hundreds of millions of dollars were recovered for class members.

Taus, Cebulash & Landau, LLP and our co-counsel also represent or have represented class members in numerous other complex antitrust actions in a range of industries including cable services, auto parts, contact lenses, and food supplies. As Lead Counsel in *Marchese v. Cablevision Systems Corp., and CSC Holdings, Inc.*, 10-cv-02190 (D.N.J.), we obtained $72 million in settlement benefits for cable subscribers. The firm is a member of the Plaintiffs' Steering Committee representing farmers in *In re Crop Inputs Antitrust Litig.*, 21-md-2993 (E.D.Mo.). We also represent advertiser plaintiffs as a member of the Advertiser Class Steering Committee in *In re Google Digital Advertising Antitrust Litigation,* 21-md-3010 (S.D.N.Y.). We represent or have represented classes of purchasers subject to anticompetitive practices in numerous cases, including, *In re Automotive Parts Antitrust Litigation*, 12-md-2311 (E.D. Mich); *In re Disposable Contact Lens Antitrust Litigation*, 15-md-2626 (M.D. Fla.); *In re Broiler Chicken Antitrust Litigation*, 16-cv-08637 (N.D. Ill.); *In Re Dealer Management Systems Antitrust Litigation*, 18-cv-864 (N.D. Ill.); *Universal Delaware Inc. v. Ceridian Corp., et al.*, 09-cv-2327 (E.D. Pa.), and *Wallach, et al. v. Eaton, et al.*, 10-cv-260 (D. Del.).

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

Our attorneys also have significant experience in consumer protection class actions, representing class members against several banks, credit card and mortgage service companies, as well as in cases involving overcharges on consumer products. The firm currently serves as Co-Lead Counsel representing a class of infant formula purchasers in *Hasemann et al v. Gerber,* 15-cv-02995 (E.D.N.Y.) and is taking a leading role in managing the litigation in *Krukas v. AARP, Inc. et al.*, 18-cv-01124 (D.D.C.). Our cases include *Hogan v. Amazon.com, Inc.*, 21-cv-3169 (N.D. Ill.)(executive committee); *Esslinger, et. al. v. HSBC*, 10-cv-3213 (E.D. Pa.) (Co-Lead Counsel); *Westrope, et al v. Ringler, et al,* 14-cv-0604 (D.Or.); *In re Discover Payment Protection Plan Marketing and Sales Practices Litigation*, 10-cv-6994 (N.D. Ill.); *In re Bank of America Credit Protection Marketing and Sales Practices Litigation*, 11-md-02269 (N.D. Cal.) (Executive Committee); *Arnett v. Bank of America*, 11-cv-1372 (D.Or.); and *Scheetz v. JP Morgan Chase*, 12-cv-4113 (S.D.N.Y.). Our attorneys have also previously taken active roles in such cases as *McCoy v. Capital One Bank (USA), N.A. and Capital One Services, L.L.C.*, 10-cv-0185 (S.D. Cal.), and *In Re National Arbitration Forum Trade Practices Litigation*, 09-cv-01939 (D. Minn.).

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

# ATTORNEYS

## BARRY S. TAUS, PARTNER

Barry S. Taus currently represents plaintiffs and class members in major complex class actions including *In re Effexor XR Direct Purchaser Antitrust Litigation* (D.N.J.); *In re Opana ER Antitrust Litigation* (N.D. Ill.); *In re Amitiza Antitrust Litigation*, No. 21-cv-11057 (D.Mass.) and *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL. No. 181 (E.D. Pa.).

Mr. Taus has also played significant roles in various antitrust class actions that have been successfully resolved, including *In re Glumetza Antitrust Litigation*, 19-cv-5822 (N.D.Ca.) (settled for $453 million); *Marchese v. Cablevision Systems Corp., et al.* (settled for over $72 million in settlement benefits plus significant injunctive relief) (lead counsel); *Universal Delaware, Inc. v. Ceridian Corp., et al.* (settled for $130 million plus significant injunctive relief); *Castro, et al. v. Sanofi Pasteur, Inc.* (settled for $61 million); *In re Wellbutrin XL Antitrust Litigation* (partially settled for $37.5 million); *In re Skelaxin Antitrust Litigation* (settled for $73 million); *In re Buspirone Antitrust Litigation* (S.D.N.Y.) (settled for $220 million); *In re Relafen Antitrust Litigation* (D. Mass.) (settled for $175 million); and *In re Remeron Antitrust Litigation* (D. N.J.) (settled for $75 million).

Mr. Taus has acted as Lead Counsel or Co-Lead Counsel for classes of direct purchasers in a number of major, complex antitrust litigations, including *In re Cardizem CD Antitrust Litigation* (E.D. Mich.) (settled for $110 million); *In re Terazosin Hydrochloride Antitrust Litigation* (S.D. Fla.) (settled for $75 million); and *In re Tricor Antitrust Litigation* (D. Del.) (settled for $250 million).

As Lead Counsel for the direct purchaser class in the *Tricor* case, Mr. Taus successfully negotiated what was then the largest settlement of any direct purchaser class action alleging impeded generic pharmaceutical competition in the Hatch-Waxman antitrust context ($250 million). Prior to settlement, Mr. Taus was responsible for overseeing all material aspects of the litigation on behalf of the direct purchaser class, including the extensive research leading to the initial complaint, analyzing thousands of pages of discovery documents and taking numerous depositions to marshal evidence to support plaintiffs' theories relating to liability, antitrust impact, causation, monopoly power and class certification, retaining and working closely with numerous experts, and ultimately preparing for and proceeding to trial.

In addition to his antitrust experience, Mr. Taus took a central, active role in numerous stockholder class action and derivative actions. These actions included *Rebenstock v Fruehauf Trailer Corp.; In re Par Pharmaceutical Securities Litigation; In re F&M Distributors, Inc. Securities Litigation; In re Taxable Municipal Bond Litigation; In re Bay Financial Securities Litigation; and Sanders v. Wang, et. al* (resulting in recovery from certain senior executives of stock valued in excess of $225 million for the benefit of Computer Associates). Furthermore, Mr. Taus has successfully played a leading role in various complex consumer class actions, including *Cicarell v. Provident Mutual Life Ins. Co.* (sales practice litigation settled for $45 million) and *Provident Demutualization Litigation* (enjoined demutualization that would have harmed policyholders).

Mr. Taus graduated *cum laude* from the State University of New York at Albany in 1986 with a Bachelor of Science degree in Accounting. Mr. Taus graduated from Brooklyn Law School in 1989, and is admitted to the Bar of the State of New York, as well as the United States District Court for the Southern District of New York and the United States Courts of Appeals for the Second and Eleventh

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

Circuits.  He is also a member of the New York State Bar Association and the American Bar Association.

## BRETT CEBULASH, PARTNER

Brett Cebulash focuses his practice on litigating complex class actions designed to remedy class-wide harms caused by unfair, deceptive or anticompetitive practices. Over the course of his 25-year career, Mr. Cebulash has made substantial contributions to complex class cases in the areas of antitrust law (designed to remedy anticompetitive behavior and restore competition), consumer protection law (designed to remedy unfair and deceptive practices in the sale or use of goods and services), employment law (designed to remedy unfair employment practices), and securities law (designed to remedy false and misleading disclosures in the sale of securities).  In recognition of his achievements in complex litigation, Mr. Cebulash has been selected as a New York Metro "Super Lawyer" from 2014-2021 in antitrust and class action litigation. "Super Lawyer" selection results from peer nominations, a "blue ribbon" panel review process and independent research on candidates; no more than 5% of lawyers in the New York metro areas are selected as "Super Lawyers."

Mr. Cebulash has prosecuted complex class matters in a wide range of industries.  For instance, Mr. Cebulash is currently engaged in challenging practices regarding infant formula marketing in *Hasemann v. Gerber* (E.D.N.Y.) (Co-Lead Counsel), improper imposition of fees by Nassau and Suffolk County in *Guthart v. Nassau County* and *McGrath v. Suffolk County* (N.Y. Sup. Ct.) and collection of improper fees and commissions in *Krukas v. AARP* (D.D.C.).  As Lead Counsel, Mr. Cebulash was substantially involved in all aspects of *Marchese v. Cablevision* (D.N.J.), a class action challenging Cablevision's tying of subscriptions to interactive services to the rental of set-top boxes exclusively from Cablevision that resulted in a settlement providing in excess of $72 million in settlement benefits and significant injunctive relief to Cablevision subscribers.  In the trucking industry, Mr. Cebulash also has been involved in *Wallach, et al v. Eaton* (D. Del.), a class action challenging exclusive dealing conduct in the market for Class 8 truck transmissions, and *Universal Delaware, Inc. v. Ceridian Corp., et al.* (E.D.Pa.), challenging anticompetitive arrangements with regard to fuel cards.

Mr. Cebulash has litigated many cases that challenge anticompetitive conduct in the healthcare industry.  For example, Mr. Cebulash has been involved in development and prosecution of *In re Asacol Antitrust Litigation* (D. Mass.) *In re Effexor XR Direct Purchaser Antitrust Litigation* (D.N.J.) and *In re Glumetza Antitrust Litigation* (N.D.Cal)  Other examples in the healthcare area include *Natchitoches Parish Hosp. v. Tyco* (D. Mass.), brought on behalf of a class of direct purchasers of sharps containers who were overcharged as a result of Tyco's exclusive dealing conduct, where Mr. Cebulash was responsible for leading all aspects of the case up to summary judgment, including successfully arguing for class certification, defending the opinions of plaintiffs' economists, deposing and successfully challenging opinions of certain of Defendants' experts, leading all discovery efforts and engaging in economic analyses.  In *Neurontin Antitrust Litigation* (D.N.J), Mr. Cebulash was responsible for developing the direct purchaser class action that challenged Pfizer's scheme to delay generic competition for Neurontin, including formulating the contours of Pfizer's overarching scheme and successfully arguing against Pfizer's motion to dismiss.  Mr. Cebulash successfully lead prosecution of *In re Nifedipine Antitrust Litigation* (D.D.C.), which challenged anticompetitive agreements between generic manufacturers of generic Adalat, including leading discovery against Biovail, deposing production and manufacturing experts, working with plaintiffs' experts and preparing successful class certification and summary judgement papers.

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

In the area of consumer protection, Mr. Cebulash has been prominently involved in cases challenging the practices of banks and insurers in the forced placement of flood insurance. In *Arnett v. Bank of America* (D. Or.), Mr. Cebulash successfully argued in opposition to Bank of America's motion to dismiss, developed the concept of the lender-servicer distinction (to distinguish the actions of loan servicers from those reserved to the lender/owner of the mortgage to counter servicers' arguments that they were entitled to unfettered discretion under the mortgage to set terms for flood insurance) and engaged in all other aspects of the prosecution of the *Arnett* matter, leading to a settlement providing $31 million in cash for the class as well as significant relief from Bank of America's flood insurance practices. Mr. Cebulash was involved in the development and prosecution of *Casey and Skinner v. Citibank* (N.D.N.Y), where the court adopted the lender-servicer distinction in denying Citibank's motion to dismiss and which ultimately settled for $110 million in value available to the flood, hazard and wind insurance classes as well as changes to Citibank's insurance practices. In C*lements, Scheetz, et. al. v. JP Morgan Chase* (N.D. Cal.)/(S.D.N.Y.) Mr. Cebulash developed concepts that contributed to reaching a settlement that provided $22.1 million in cash to the class and changes to Chase's force placed flood insurance practices. Mr. Cebulash has litigated cases challenging other insurance-related deceptive practices including *Westrope v. Ringler*, (D. Or.) alleging that structured settlement brokers negligently and illegally sold ELNY annuities and *In re Provident Demutualization,* (Pa. Ct. Comm. Pleas) challenging a demutualization on the basis that it benefitted insiders and executives at the expense of policyholders.

Mr. Cebulash has successfully litigated numerous actions against credit card issuers challenging their deceptive practices with regard to their credit protection products. Mr. Cebulash was involved in the litigation of *Spinelli, et al v. Capital One*, (M.D. Fla), which included litigating cases in California and Connecticut and negotiating a successful settlement that provided substantial relief to Capital One cardholders. Mr. Cebulash also litigated actions on behalf of cardholders in *Esslinger v. HSBC*, (E.D. Pa.) (co-lead counsel), *Bank of America Credit Protection Marketing & Sales Practices Litigation* (N.D. Cal.) (executive committee) and *Discover Payment Protection Plan Marketing and Sales Practices Litigation* (N.D. Ill.), successfully providing these classes with over $50 million in total cash relief as well as improvements to credit protection practices.

Mr. Cebulash has also litigated securities class actions, developing theories regarding improper disclosures and improper accounting and revenue recognition methods that lead to successful results in cases such as *F&M Distributors, Inc. Securities Litigation* (E.D. Mich.) *Bank One Securities Litigation* (N.D. Ill.) and *Gutter v. Dupont* (S.D. Fla.). Mr. Cebulash has also been substantially involved in employment cases such as *Davis v. Kodak* (W.D.N.Y.) and *Diaz v. Electronics Boutique* (W.D.N.Y.).

A graduate of the University of Virginia, Mr. Cebulash received his J.D. *cum laude* from Brooklyn Law School. He is admitted to the Bar of the States of New York and New Jersey, as well as the United States Courts of Appeals for the First, Third and Ninth Circuits and the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York and the District of New Jersey.


## KEVIN LANDAU, PARTNER

Kevin Landau currently represents plaintiffs and class members in various antitrust and consumer class actions, including *In re Generic Pharmaceutical Pricing Antitrust Litigation,* (E.D. Pa.), an antitrust action alleging price fixing within the generic pharmaceutical industry; *In re Effexor Antitrust Litigation* (D.N.J) and *In Re Zetia Antitrust Litigation* (E.D.Va), antitrust actions alleging that

FILED DATE: 3/24/2023 4:34 PM  2023CH02874

the brand manufacturer delayed less expensive generic drugs from entering the market; *In re Broiler Chicken Antitrust Litigation*, (N.D. Ill.), an antitrust action alleging price-fixing of broiler chickens; *In re Automotive Parts Antitrust Litigation* (E.D. Mich.), an antitrust action alleging price-fixing within the auto parts industry; *Guthart v. Nassau County, et al.* and *McGrath v. Suffolk County et al.* (NYS Supreme Court)(lead counsel), consumer class actions alleging that local governments imposed *ultra vires* administrative fees in connection with red-light camera violations; *Hasemann v. Gerber* (E.D.N.Y.)(co-lead counsel), a consumer protection class action challenging practices regarding infant formula marketing;  and *Hogan v. Amazon.com, Inc.*, 21-cv-3169 (N.D. Ill.), a case challenging Amazon's collection of biometric from Amazon Photos (executive committee).

In addition to these active cases, Mr. Landau has also represented plaintiffs and class members in various cases which have been successfully resolved, such as, *Marchese v. Cablevision Systems Corp., et al.* (D.N.J.) (antitrust class action settlement providing in excess of $72 million in settlement benefits and significant injunctive relief to Cablevision subscribers who paid inflated prices for their set-top boxes) (lead counsel); *Esslinger, et al. v. HSBC Bank Nevada, N.A.* (E.D. Pa.) ($23.5 million settlement for cardholders in class action) (co-lead counsel); *LiPuma v. American Express* (S.D. Fl.) ($75 million settlement for cardholders in consumer class action) (co-lead counsel); *In Re: Bank of America Credit Protection Marketing & Sales Practices Litigation* (N.D. Cal.) ($20 million settlement for cardholders in consumer class action) (member of executive committee); *In re Discover Payment Protection Plan Marketing and Sales Practices Litigation*, ($10.5 million settlement for cardholders in consumer class action); *Arnett v. Bank of America*, No. 11-cv-1372 (SI) (D. Or.) ($31 million settlement for class challenging lender placed flood insurance practices); *Casey v. Citibank, N.A.*, No. 12-820 (DNH/DEP) (N.D.N.Y.) (settlement providing for $110 million in benefits to class challenging wind, flood and hazard insurance practices); *In re Skelaxin Antitrust Litigation* ($73 million settlement for direct purchasers in antitrust class action), *In re Metoprolol Succinate Antitrust Litigation* (settled for $20 million settlement for direct purchasers in antitrust class action); *Gutter v. Dupont* (S.D. Fl.) ($77.5 million settlement for shareholder class); *In re Cendant Corporation Derivative Litigation* (D.N.J.) ($54 million recovery for the corporation in derivative action); *Giant Eagle, Inc. v. Cephalon, Inc. et al.* (E.D.Pa.) (private settlement in antitrust action alleging that Cephalon paid its generic competitors to stay off the market with their competing generic versions of Provigil); *Westrope v. Ringler* (D.N.J.) (resolving claim of structured settlement annuitants who suffered cuts to their annuity payments as a result of their structured settlement brokers' alleged negligence).

Mr. Landau was recognized in 2014-2022 as a New York Metro "Super Lawyer" in class action litigation.  "Super Lawyer" selection results from peer nominations, a "blue ribbon" panel review process and independent research on candidates; no more than 5% of lawyers in the New York metro areas are selected as "Super Lawyers." He has been an invited as a panelist at American Conference Institute Forums focusing on consumer protection issues.  He is also a member of the Committee to Support Antitrust Laws, an organization dedicated to promoting and supporting the enactment, preservation, and enforcement of a strong body of antitrust laws in the United States, and the Plaintiffs' Class Action Forum, an invitation-only professional group focused on emerging trends in class actions.

Mr. Landau graduated with high honors from Lehigh University in 1993 with a Bachelor of Arts in Government.  Mr. Landau graduated from Brooklyn Law School in 1996, where he was a member of the Brooklyn Law Review.  Mr. Landau is admitted to the Bar of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second Circuit, Third Circuit, Eleventh Circuit and D.C. Circuit.  He is also a member of the Association of the Bar of the City of New York, the New York State Bar Association and the American Bar Association.  He volunteers at Central Synagogue's Homeless Breakfast Program and as a mentor for students in Legal Outreach, an educational program

that serves low-income, mostly minority, and/or first generation urban youth from underserved neighborhoods in New York City

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

## ARCHANA TAMOSHUNAS, PARTNER

Archana Tamoshunas focuses her practice on complex class action litigation, including antitrust and consumer protection litigation.  Over her career, Ms. Tamoshunas has been counsel in numerous complex federal antitrust class actions and specializes in those involving the pharmaceutical and medical device industries.  She is active in all aspects of the litigation process including day-to-day management of discovery, briefing, class certification and trial preparation.

Ms. Tamoshunas is a member of the Plaintiffs' Steering Committee representing farmers in *In re Crop Inputs Antitrust Litigation* (E.D. Mo.) and the Advertising Class Steering Committee representing a proposed class of digital advertisers against Google in *In re Google Digital Advertising Antitrust Litigation* (S.D.N.Y.).  She also currently represents third party payors and purchasers of prescription drugs in federal antitrust class actions alleging that pharmaceutical manufacturers have wrongfully prevented or delayed less expensive generic drugs from entering the market including, *In re Zetia (Ezetimibe) Antitrust Litigation* (E.D.Va.) (Executive Committee); *In re Niaspan Antitrust Litigation* (E.D. Pa.); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation* (E.D. Pa.); *Government Employees Health Association v. Actelion Pharmaceuticals Ltd.* (D. Md.); *In re Bystolic Antitrust Litigation* (S.D.N.Y.); *In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litigation* (D. Del.); and *In re Copaxone Antitrust Litigation* (D.N.J.).

Ms. Tamoshunas has also represented direct purchasers in antitrust cases that have been successfully resolved including *In re Lidoderm Antitrust Litigation* (N.D. Cal.), in which her firm was appointed to the Executive Committee and she was personally involved in management and trial preparation of the case ($166 million settlement);  *In re Solodyn Antitrust Litigation* (D. Mass.) ($72.5 million settlement); *In re Skelaxin (Metaxalone) Antitrust Litigation* (E.D. Tenn.) ($73 million settlement), *In re Prandin Direct Purchaser Antitrust Litigation* (E.D. Mich.) (Executive Committee) ($19 million settlement) and *Mylan Pharmaceuticals v. Warner Chilcott* (E.D. Pa.) ($15 million settlement), and was heavily involved in the management of successfully resolved cases including *In re Relafen Antitrust Litigation* (D. Mass.); *In re Terazosin Hydrochloride Antitrust Litigation* (S.D. Fla.) and *Natchitoches Parish Hospital District et al. v. Tyco International, et al.* (D. Mass.).

In 2021 and 2022, Ms. Tamoshunas was recognized as a New York Metro "Super Lawyer" in class action litigation.  "Super Lawyer" selection results from peer nominations, a "blue ribbon" panel review process and independent research on candidates; no more than 5% of lawyers in the New York metro areas are selected as "Super Lawyers."

Ms. Tamoshunas graduated from Williams College (B.A.) and from New York University School of Law, where she was a member of the Moot Court Board and had her case problem published in the New York University School of Law Moot Court Casebook (Vol. 22, 1998).  After graduating from law school, Ms. Tamoshunas represented the City of New York in child abuse and neglect cases in Family Court.

Ms. Tamoshunas is admitted to the Bar of the State of New York as well as the Southern and Eastern Districts of New York, the Eastern District of Michigan and the First, Third and Eleventh

Circuit Courts of Appeals. She is a member of the Antitrust Law Section of the New York State Bar Association.

## MILES GREAVES, PARTNER

Miles Greaves currently represents consumers in a number of antitrust and consumer-protection class actions throughout the country, including several involving price-fixing allegations, such as *In re Broiler Chicken Antitrust Litigation* (N.D. Ill.), *In re Automotive Parts Antitrust Litigation* (E.D. Mich.), and *In re Disposable Contact Lens Antitrust Litigation* (M.D. Fla.). He is responsible for the day-day case management in *Hasemann v. Gerber Products Co.* (E.D.N.Y.), which alleges that the defendant improperly marketed its infant formula, and he represents the plaintiff in *McGrath v. Suffolk County* (N.Y. Sup. Ct.), which challenges antitrust fees associated with red-light-camera tickets. Mr. Greaves also represents the plaintiffs *Simon & Simon, PC, et al, v. Align Tech., Inc.* (N.D. Cal.), which alleges that the defendant illegally monopolized the market for clear dental aligners, and Mr. Greaves plays a role in several antitrust class actions alleging that brand-name pharmaceutical manufacturers inhibited the introduction of generic pharmaceuticals, such as *In re Effexor XR Antitrust Litigation* (D.N.J.), *In re Lidoderm Antitrust Litigation* (N.D. Cal.), *In re Niaspan Antitrust Litigation* (E.D. Pa.), and *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation* (E.D. Pa.).

In addition to these ongoing actions, Mr. Greaves has represented plaintiffs and classes in a number of cases that have been successfully resolved, including *In re Glumetza Antitrust Litigation* (N.D. Ca.), which resulted in one of the largest settlements of its kind. Other cases include *In re Lidoderm Antitrust Litigation* (N.D. Cal.); *In re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation* (E.D.N.Y); *In re Solodyn Antitrust Litigation* (D. Mass.); *In re Celebrex Antitrust Litigation* (E.D. Va.); *Universal Delaware, Inc. v. Ceridian Corp.* (E.D. Pa.); *In re Prandin Direct Purchasers Antitrust Litigation* (E.D. Mich.), as well as *Arnett v. Bank of America, N.A.* (D. Or.); *Scheetz v. JPMorgan Chase Bank, N.A.* (S.D.N.Y.); *Marchese v. Cablevision Systems Corp.* (D.N.J.); *Westrope v. Ringler Associates Inc.* (D. Or.).

Mr. Greaves graduated *summa cum laude* with honors from the State University of New York at Albany in 2004, with a Bachelor of Arts in English. He graduated *cum laude* from Brooklyn Law School in 2012. Mr. Greaves is admitted to the Bar of the State of New York, as well as the United States District Courts for the Southern, Eastern, and Northern Districts of New York, and the D.C. Circuit Court of Appeals.

## EVAN ROSIN, ASSOCIATE

Since joining the firm fulltime in 2018, Mr. Rosin has been actively involved in nearly all phases of complex consumer class actions challenging an array of anticompetitive practices such as price-fixing, exclusive dealing, market allocation, tying, and other unlawful conduct that harms consumers and the economy. Mr. Rosin has worked on cases across multiple industries including contact lenses (*In re Disposable Contact Lens* (M.D. Fla.)), single-serve coffee (*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* (S.D.N.Y)), pharmaceuticals (*In re Generic Pharmaceutical Pricing Antitrust Litigation*) (E.D. Pa.)), dealer management system and data integration services (*In re Dealer Management Systems Antitrust Litigation* (N.D. Ill.)), and health insurance (*Krukas v. AARP, Inc. et al.* (D.D.C.)). He has also helped represent citizens challenging the improper imposition of fees by local governments (*Guthart v. Nassau County* and *McGrath v. Suffolk*

FILED DATE: 3/24/2023 4:34 PM    2023CH02874

FILED DATE: 3/24/2023 4:34 PM   2023CH02874

*County* (N.Y. Sup. Ct.)). More recently, Mr. Rosin has taken an active role representing digital advertisers against Google (*In re Google Advertising Antitrust Litigation* (S.D.N.Y.)), as well as challenging an alleged conspiracy amongst agribusiness giants (*In re Crop Inputs Antitrust Litigation* (E.D. Mo.)).

Mr. Rosin graduated *magna cum laude*, with honors, from the University of Michigan in 2009, with a Bachelor of Arts in Political Science. He also earned the Residential College Commendation and Certificat d'Etudes Politiques. Mr. Rosin graduated from Brooklyn Law School in 2013, where he was an editor for the *Brooklyn Journal of International Law* and member of the Phi Delta Phi Legal Honor Society. While at Brooklyn Law, he interned for and actively contributed to the Brooklyn Law School Community Development Clinic. Mr. Rosin is admitted to the Bar in New York, Michigan, and the United States District Court for the Eastern District of Michigan.


## GWENDOLYN NELSON, SENIOR ASSOCIATE

Gwendolyn Nelson is an experienced litigator and corporate attorney. She joined the firm in 2022 and is currently working on a number of antitrust cases, including *In re Generic Pharmaceutical Pricing Antitrust Litigation* (E.D. Pa.), *Simon & Simon, PC, et al, v. Align Tech., Inc.* (N.D. Cal.), and *In re Amitiza Antitrust Litigation*, No. 21-cv-11057 (D.Mass.)

Ms. Nelson previously litigated federal class actions at Kaplan Fox & Kilsheimer LLP. Her practice at Kaplan Fox focused primarily on antitrust price-fixing cases. Prior to joining the firm, Ms. Nelson was in-house counsel at Ensyn Corporation, a renewable energy company.

Ms. Nelson has a Bachelor of Arts in English from Cal Poly San Luis Obispo and graduated from Fordham University School of Law in 2008. While attending Fordham, she was an editor for the *Fordham Urban Law Journal*. She also held externships with the Honorable Deborah A. Batts in the Southern District of New York and with the New York City Council. In recognition of her legal volunteer work, she earned an Archibald R. Murray Public Service Award from Fordham Law.


## JOSHUA HALL, ASSOCIATE

Since joining the firm in January 2023, Joshua Hall has taken an active role in the discovery phase of *Hogan v. Amazon.com, Inc.* (N.D. Ill.), which alleges the defendant violated the rights of consumers with respect to their biometric information. Mr. Hall began his litigation career in consumer debt litigation where he was the primary litigator in numerous cases across the five boroughs of New York. Prior to joining the firm, Mr. Hall took part in numerous discovery review projects, working with both large and small teams on multiple different cases.

Mr. Hall graduated with honors from Florida State University in 2016, with a Bachelor of Science in Political Science. He graduated from the Benjamin N. Cardozo School of Law in 2020, where he was the first Online Editor for the *Cardozo Arts & Entertainment Law Journal*, charged with managing their online publication. Mr. Hall is admitted to the Bar of the State of New York.

| | |
|---|---|
| **STATE OF ILLINOIS, CIRCUIT COURT** | **MOTION TO APPOINT SPECIAL PROCESS SERVER** | *For Court Use Only* |

FILED DATE: 4/6/2023 2:59 PM    2023CH02874

FILED
4/6/2023 2:59 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22189987

**COOK** **COUNTY**

**Instructions ▾**

Directly above, enter the name of the county where you are filing the case.

Enter your name as Plaintiff/Petitioner.

Enter the names of all people you are suing as Defendants/Respondents.

Enter the case number the Circuit Clerk has given you.

Erica Norman
**Plaintiff/Petitioner** *(First, middle, last name)*

v.

**Defendants/Respondents** *(First, middle, last name)*:
Servall Biometrics d/b/a Patronscan

2023CH02874
**Case Number**

In **1**, check **1a** or **1b**.

Check **1a** if you had the sheriff attempt to serve and enter the names of the Defendants/Respondents who were not served.

Check **1b** if you did not have the sheriff attempt to serve and enter the reasons you need a special process server.

In **2**, enter the name and address of the person or company who will serve the Complaint/Petition.

**1.** Service in this case *(check one)*:

☐ a.  Was attempted by the sheriff but they were unable to serve these Defendants/Respondents: _____
_____ .
The sheriff filed a report confirming this fact; OR

☑ b.  Has not been attempted by the sheriff, but I need a special process server because:  Registered Agent is located outside of Cook County
_____
_____ .

**2.** The Plaintiff/Petitioner asks the court to appoint the following person or company to serve the *Summons* and Complaint/Petition:

It's Your Serve, Inc.
*Name of Person or Company*

134 N. LaSalle St., Suite 1410     Chicago     IL     60602
*Street Address, Unit #*          *City*       *State*  *ZIP*

In **3**, check only one box. If you check **3a**, enter the license number.

**3.** The above-named special process server:

☑ a.  is a licensed private detective or private detective agency,
license  117.000885  .
*Number*

☐ b.  is over age 18 and is neither a party to this case nor a licensed private detective or private detective agency.

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print it.

Enter your complete address, telephone and email address, if you have one.

**I certify that everything in this *Motion to Appoint Special Process Server* is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.**

/s/ Kenneth A. Wexler                311 S. Wacker Drive, Suite 5450
*Your Signature*                    *Street Address, Unit #*

Kenneth A. Wexler                   Chicago, IL 60606
*Print Your Name*                   *City, State, ZIP*

kaw@wbe-llp.com                     (312) 346-2222        3127810
*Email*                             *Telephone*          *Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT _____ COUNTY | ORDER APPOINTING SPECIAL PROCESS SERVER | *For Court Use Only* |
|---|---|---|

| **Instructions ▼** | | |
|---|---|---|
| Directly above, enter the name of the county where you are filing the case. | Erica Norman _____ **Plaintiff/Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | v. | 2023CH02874 _____ |
| Enter the names of all people you are suing as Defendants/Respondents. | **Defendants/Respondents** *(First, middle, last name)*: Servall Biometrics d\b\a Patronscan _____ _____ | **Case Number** |
| Enter the case number the Circuit Clerk has given you. | _____ | |

| In 1, enter the date the *Motion* was filed. | **1.** Plaintiff/Petitioner's *Motion to Appoint Special Process Server* was filed on: _____ . *Date* |
|---|---|
| In 2, enter the name of the person or company who will serve the Complaint/Petition, and the Defendants/Respondents to be served. | **2.** ☐ The *Motion* is granted. It's Your Serve, Inc. , License No. 117.000885 *Name of Person or Company* is appointed to serve these Defendants/Respondents: Servall Biometrics d/b/a Patronscan. _____ . ☐ The *Motion* is denied. It is denied because *(state specific reason)*: _____ _____ _____ |

| DO NOT complete this section. The judge will sign and date here. | ENTERED: _____ *Judge* | Associate Judge Allen Price Walker APR 0 6 2023 *Date* Circuit Court – 2071 |
|---|---|---|

MS-O 904.1                    Page 1 of 1                    (08/20)

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

| | | |
|---|---|---|
| **STATE OF ILLINOIS,**<br>**CIRCUIT COURT**<br><br>Cook ▼ **COUNTY** | **APPEARANCE** | *For Court Use Only*<br>FILED<br>5/18/2023 4:01 PM<br>IRIS Y. MARTINEZ<br>CIRCUIT CLERK<br>COOK COUNTY, IL<br>2023CH02874<br>Calendar, 3<br>22787356 |

*(left margin, rotated)* FILED DATE: 5/18/2023 4:01 PM   2023CH02874

| | | |
|---|---|---|
| **Instructions ▼** | | |
| Directly above, enter the name of the county where the case was filed. | | |
| Enter the name of the person or company that filed this case as Plaintiff/Petitioner. | Erica Norman<br>_____<br>**Plaintiff / Petitioner** *(First, middle, last name or Company)* | Hearing Date: No hearing scheduled<br>Location: <<CourtRoomNumber>>  |
| Enter the name of the Defendant/Respondent. | v. | Judge: Calendar, 3 |
| Enter the Case Number given by the Circuit Clerk. | Servall Biometrics d/b/a Patronscan, Inc.<br>_____<br>**Defendant / Respondent** *(First, middle, last name)* | 2023ch02874<br>_____<br>**Case Number** |

| | |
|---|---|
| In **1**, check the box next to "Myself," if you are not an attorney. If you are an attorney, enter the name of your client in **1**, check the box next to "Their attorney," and enter your attorney or firm name in the blank. | **1.  The appearance of** Erica ____ Norman **is entered in this case by:**<br>    *First    Middle    Last*<br><br>☐  Myself<br>☑  Their attorney: James Zouras<br>    _____<br>    *Attorney or Firm Name* |
| | **2.  I would like a trial with** *(check only one; you do not have a right to jury trial in every case)***:**<br>☐ a judge      ☐ a judge and a 6-person jury      ☑ a judge and a 12-person jury |
| Under Illinois Supreme Court Rule 137, your signature means that you have read the document, that to the best of your belief, it is true and correct and that you are not filing it for an improper purpose, such as to cause delay. | **IMPORTANT:**  If you are requesting a trial by jury and e-filing the form, you may need to e-file this form two separate times, once as an Appearance and once as a Jury Demand. Check with Illinois Court Help at ilcourthelp.gov or call (833) 411-1121. You can also check with your local Circuit Clerk's office. |
| If you are completing this on a computer, sign your name by typing it.  If you are completing it by hand, sign and print your name. | /s/ *James Zouras*<br>_____<br>*Your Signature*<br><br>James Zouras<br>_____<br>*Your Name* | 222 W. Adams St. Suite 2020<br>_____<br>*Street Address*<br><br>Chicago, IL 60606<br>_____<br>*City, State, ZIP* |
| Enter your complete address, telephone number, and email address, if you have one. | (312) 233-1550<br>_____<br>*Telephone* | jzouras@stephanzouras.com<br>_____<br>*Email* |
| If you are an attorney, enter your firm name and attorney number. | Stephan Zouras, LLP<br>_____<br>*Firm Name (if any)* | 6230596<br>_____<br>*Attorney # (if any)* |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

Enter the Case Number given by the Circuit Clerk: 2023CH02874

FILED DATE: 5/18/2023 4:01 PM    2023CH02874

## PROOF OF DELIVERY

| | |
|---|---|
| In **1a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information. | **1.** I am sending the *Appearance* |

**1.** I am sending the *Appearance*

a. To:
Name: _____
*First*                    *Middle*                    *Last*

Address: _____
*Street, Apt #*              *City*          *State   ZIP*

Email address: _____

*In **1b**, check the box to show how you are sending the document.*

***CAUTION:*** *If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options.*

b. By:
☑ An approved electronic filing service provider (EFSP)
☐ Email *(not through an EFSP)*
*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

☐ Personal hand delivery to:
  ☐ The party
  ☐ The party's family member who is 13 or older, at the party's residence
  ☐ The party's lawyer
  ☐ The party's lawyer's office
☐ Mail or third-party carrier

*In **c**, fill in the date and time that you are sending the document.*

c. On: _____ at: _____ ☐ a.m. ☐ p.m.
*Date*                    *Time*

*In **2**, if you are sending the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.*

**2.** I am sending the *Appearance*

*In **2a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.*

a. To:
Name: _____
*First*                    *Middle*                    *Last*

Address: _____
*Street, Apt #*              *City*          *State   ZIP*

Email address: _____

*In **2b**, check the box to show how you are sending the document.*

***CAUTION:*** *If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the*

b. By:
☐ An approved electronic filing service provider (EFSP)
☐ Email *(not through an EFSP)*
*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

☐ Personal hand delivery to:
  ☐ The party
  ☐ The party's family member who is 13 or older, at the party's residence
  ☐ The party's lawyer
  ☐ The party's lawyer's office
☐ Mail or third-party carrier

*In **c**, fill in the date and time that you are sending the document.*

c. On: _____ at: _____ ☐ a.m. ☐ p.m.
*Date*                    *Time*

Enter the Case Number given by the Circuit Clerk: 2023ch02874

FILED DATE: 5/18/2023 4:01 PM   2023CH02874

If you are sending your document to more than 2 parties or lawyers, check the box and file the *Additional Proof of Delivery* with this form.

☐ I have completed an *Additional Proof of Delivery* form.

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**I certify that everything in the *Proof of Delivery* is true and correct. I understand that a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.**

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

/s/ *James Zouras*
*Your Signature*

222 W. Adams St.
*Street Address*

James Zouras
*Print Your Name*

Chicago, IL 60606
*City, State, ZIP*

Enter your complete address, telephone number, and email address, if you have one.

(312) 233-1550
*Telephone*

jzouras@stephanzouras.com
*Email*

Stephan Zouras, LLP
*Firm Name (if any)*

6230596
*Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

FILED DATE: 5/18/2023 4:11 PM   2023CH02874

| STATE OF ILLINOIS, CIRCUIT COURT | APPEARANCE | For Court Use Only |
|---|---|---|

Cook COUNTY

FILED
5/18/2023 4:11 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22788165

**Instructions ▼**

Directly above, enter the name of the county where the case was filed.

Enter the name of the person or company that filed this case as Plaintiff/Petitioner.

Erica Norman

**Plaintiff / Petitioner** *(First, middle, last name or Company)*

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 3

v.

Enter the name of the Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk.

Servall Biometrics d/b/a Patronscan, Inc.

**Defendant / Respondent** *(First, middle, last name)*

2023ch02874

**Case Number**

In **1**, check the box next to "Myself," if you are not an attorney. If you are an attorney, enter the name of your client in **1**, check the box next to "Their attorney," and enter your attorney or firm name in the blank.

1. **The appearance of** Erica [First] Norman [Last] **is entered in this case by:**

☐ Myself
☑ Their attorney: Catherine Mitchell

*Attorney or Firm Name*

2. **I would like a trial with** *(check only one; you do not have a right to jury trial in every case)***:**
☐ a judge   ☐ a judge and a 6-person jury   ☑ a judge and a 12-person jury

Under Illinois Supreme Court Rule 137, your signature means that you have read the document, that to the best of your belief, it is true and correct and that you are not filing it for an improper purpose, such as to cause delay.

**IMPORTANT:** If you are requesting a trial by jury and e-filing the form, you may need to e-file this form two separate times, once as an Appearance and once as a Jury Demand. Check with Illinois Court Help at ilcourthelp.gov or call (833) 411-1121. You can also check with your local Circuit Clerk's office.

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

/s/ Catherine Mitchell
*Your Signature*

222 W. Adams St. Suite 2020
*Street Address*

Catherine Mitchell
*Your Name*

Chicago, IL 60606
*City, State, ZIP*

Enter your complete address, telephone number, and email address, if you have one.

(312) 233-1550
*Telephone*

cmitchell@stephanzouras.com
*Email*

If you are an attorney, enter your firm name and attorney number.

Stephan Zouras, LLP
*Firm Name (if any)*

6321142
*Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

Enter the Case Number given by the Circuit Clerk: 2023CH02874

FILED DATE: 5/18/2023 4:11 PM  2023CH02874

## PROOF OF DELIVERY

**1.** I am sending the *Appearance*

    a. To:

      Name: _____
              *First*           *Middle*           *Last*

      Address: _____
              *Street, Apt #*        *City*       *State*  *ZIP*

      Email address: _____

    b. By:

      ☑ An approved electronic filing service provider (EFSP)
      ☐ Email *(not through an EFSP)*
      *Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

      ☐ Personal hand delivery to:
        ☐ The party
        ☐ The party's family member who is 13 or older, at the party's residence
        ☐ The party's lawyer
        ☐ The party's lawyer's office
      ☐ Mail or third-party carrier

    c. On: _____ at: _____ ☐ a.m. ☐ p.m.
         *Date*        *Time*

**2.** I am sending the *Appearance*

    a. To:

      Name: _____
               *First*           *Middle*           *Last*

      Address: _____
              *Street, Apt #*        *City*       *State*  *ZIP*

      Email address: _____

    b. By:

      ☐ An approved electronic filing service provider (EFSP)
      ☐ Email *(not through an EFSP)*
      *Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

      ☐ Personal hand delivery to:
        ☐ The party
        ☐ The party's family member who is 13 or older, at the party's residence
        ☐ The party's lawyer
        ☐ The party's lawyer's office
      ☐ Mail or third-party carrier

    c. On: _____ at: _____ ☐ a.m. ☐ p.m.
         *Date*        *Time*

**Sidebar instructions:**

In **1a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **1b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options.

In **c**, fill in the date and time that you are sending the document.

In **2**, if you are sending the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.

In **2a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **2b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the

In **c**, fill in the date and time that you are sending the document.

Enter the Case Number given by the Circuit Clerk: 2023ch02874

FILED DATE: 5/18/2023 4:11 PM   2023CH02874

| | |
|---|---|
| If you are sending your document to more than 2 parties or lawyers, check the box and file the *Additional Proof of Delivery* with this form. | ☐ I have completed an *Additional Proof of Delivery* form. |

| | |
|---|---|
| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. | **I certify that everything in the *Proof of Delivery* is true and correct. I understand that a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.** |

| | | |
|---|---|---|
| If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name. | /s/ *Catherine Mitchell*<br>*Your Signature* | 222 W. Adams St.<br>*Street Address* |
| | Catherine Mitchell<br>*Print Your Name* | Chicago, IL 60606<br>*City, State, ZIP* |
| Enter your complete address, telephone number, and email address, if you have one. | (312) 233-1550<br>*Telephone* | cmitchell@stephanzouras.com<br>*Email* |
| | Stephan Zouras, LLP<br>*Firm Name (if any)* | 6321142<br>*Attorney # (if any)* |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

FILED DATE: 5/18/2023 4:50 PM    2023CH02874

| STATE OF ILLINOIS,<br>CIRCUIT COURT | **APPEARANCE** | *For Court Use Only*<br>FILED<br>5/18/2023 4:50 PM<br>IRIS Y. MARTINEZ<br>CIRCUIT CLERK<br>COOK COUNTY, IL<br>2023CH02874<br>Calendar, 3<br>22789259 |
|---|---|---|

Cook [_____] COUNTY

**Instructions ▼**

Directly above, enter the name of the county where the case was filed.

Enter the name of the person or company that filed this case as Plaintiff/Petitioner.

Enter the name of the Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk.

Erica Norman
_____
**Plaintiff / Petitioner** *(First, middle, last name or Company)*

v.

Servall Biometrics d/b/a Patronscan, Inc.
_____
**Defendant / Respondent** *(First, middle, last name)*

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 3

2023CH02874
_____
**Case Number**

---

In **1**, check the box next to "Myself," if you are not an attorney. If you are an attorney, enter the name of your client in **1**, check the box next to "Their attorney," and enter your attorney or firm name in the blank.

Under Illinois Supreme Court Rule 137, your signature means that you have read the document, that to the best of your belief, it is true and correct and that you are not filing it for an improper purpose, such as to cause delay.

If you are completing this on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

Enter your complete address, telephone number, and email address, if you have one.

If you are an attorney, enter your firm name and attorney number.

1. **The appearance of** Erica _____ Norman _____ **is entered in this case by:**
   First        Middle        Last

   ☐ Myself
   ☑ Their attorney: Ryan Stephan
   _____
   *Attorney or Firm Name*

2. **I would like a trial with** *(check only one; you do not have a right to jury trial in every case)*:
   ☐ a judge        ☐ a judge and a 6-person jury        ☑ a judge and a 12-person jury

   **IMPORTANT:** If you are requesting a trial by jury and e-filing the form, you may need to e-file this form two separate times, once as an Appearance and once as a Jury Demand. Check with Illinois Court Help at ilcourthelp.gov or call (833) 411-1121. You can also check with your local Circuit Clerk's office.

   /s/ *Ryan Stephan*
   _____
   *Your Signature*

   222 W. Adams St. Suite 2020
   _____
   *Street Address*

   Ryan Stephan
   _____
   *Your Name*

   Chicago, IL 60606
   _____
   *City, State, ZIP*

   (312) 233-1550
   _____
   *Telephone*

   rstephan@stephanzouras.com
   _____
   *Email*

   Stephan Zouras, LLP
   _____
   *Firm Name (if any)*

   6273101
   _____
   *Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

Enter the Case Number given by the Circuit Clerk: 2022CH10602

## PROOF OF DELIVERY

FILED DATE: 5/18/2023 4:50 PM   2023CH02874

**1.** I am sending the *Appearance*

    a.  To:

        Name: _____

              *First*               *Middle*          *Last*

        Address: _____

              *Street, Apt #*          *City*       *State*  *ZIP*

        Email address: _____

    b.  By:

        ☑ An approved electronic filing service provider (EFSP)

        ☐ Email *(not through an EFSP)*

        *Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

        ☐ Personal hand delivery to:

            ☐ The party

            ☐ The party's family member who is 13 or older, at the party's residence

            ☐ The party's lawyer

            ☐ The party's lawyer's office

        ☐ Mail or third-party carrier

    c.  On: _____ at: _____ ☐ a.m. ☐ p.m.

          *Date*             *Time*

**2.** I am sending the *Appearance*

    a.  To:

        Name: _____

               *First*               *Middle*          *Last*

        Address: _____

              *Street, Apt #*          *City*       *State*  *ZIP*

        Email address: _____

    b.  By:

        ☐ An approved electronic filing service provider (EFSP)

        ☐ Email *(not through an EFSP)*

        *Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

        ☐ Personal hand delivery to:

            ☐ The party

            ☐ The party's family member who is 13 or older, at the party's residence

            ☐ The party's lawyer

            ☐ The party's lawyer's office

        ☐ Mail or third-party carrier

    c.  On: _____ at: _____ ☐ a.m. ☐ p.m.

          *Date*             *Time*

---

Sidebar instructions:

In **1a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **1b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options.

In **c**, fill in the date and time that you are sending the document.

In **2**, if you are sending the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.

In **2a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **2b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the

In **c**, fill in the date and time that you are sending the document.

Enter the Case Number given by the Circuit Clerk: 2022CH10602

FILED DATE: 5/18/2023 4:50 PM   2023CH02874

| | |
|---|---|
| If you are sending your document to more than 2 parties or lawyers, check the box and file the *Additional Proof of Delivery* with this form. | ☐    I have completed an *Additional Proof of Delivery* form. |

| | |
|---|---|
| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. | **I certify that everything in the *Proof of Delivery* is true and correct. I understand that a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.** |

| | | |
|---|---|---|
| If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name. | /s/ *Ryan Stephan*<br>―――――――――――――<br>Your Signature | 222 W. Adams St. Suite 2020<br>―――――――――――――<br>Street Address |
| | Ryan Stephan<br>―――――――――――――<br>Print Your Name | Chicago, IL 60606<br>―――――――――――――<br>City, State, ZIP |
| Enter your complete address, telephone number, and email address, if you have one. | (312) 233-1550<br>―――――――――――――<br>Telephone | rstephan@stephanzouras.com<br>―――――――――――――<br>Email |
| | Stephan Zouras, LLP<br>―――――――――――――<br>Firm Name (if any) | 6273101<br>―――――――――――――<br>Attorney # (if any) |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois courts.
**Forms are free at ilcourts.info/forms.**

FILED DATE: 5/22/2023 9:10 AM   2023CH02874

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | *For Court Use Only* |
|---|---|---|

**Cook** ▼ **COUNTY**

FILED
5/22/2023 9:10 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
    22813556

**Instructions ▼**

Enter above the county name where the case was filed.

Enter your name as Plaintiff/Petitioner.

Below "Defendants/Respondents," enter the names of all people you are suing.

Enter the Case Number given by the Circuit Clerk.

Erica Norman

**Plaintiff / Petitioner** *(First, middle, last name)*

v.

**Defendants / Respondents** *(First, middle, last name)*

Servall Biometrics d/b/a Patronscan

**2023CH02874**

**Case Number**

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 3

☑ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)*

# IMPORTANT: You have been sued.

- Read all documents attached to this Summons. To participate in the case, you MUST file an official document with the court within the time stated on this Summons called an "Appearance" and a document called an "Answer/Response." If you do not file an *Appearance* and *Answer/Response* on time, the court may decide the case without hearing from you, and you could be held in default and lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an Application for Waiver of Court Fees.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

## Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Eviction
- Small Claims
- Divorce
- Order of protection
- Paternity
- Stalking no contact orders
- Civil no contact orders
- Adult guardianship
- Detinue
- Foreclosure
- Administrative review cases

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

FILED DATE: 5/22/2023 9:10 AM   2023CH02874

**1.**  **Defendant/Respondent's address and service information:**

a.  Defendant/Respondent's primary address/information for service:

Name *(First, Middle, Last)*: Servall Biometrics d/b/a Patronscan

Registered Agent's name, if any: c/o Registered Agent EASTBIZ.COM

Street Address, Unit #: 5348 Vegas Drive

City, State, ZIP: Las Vegas, NV 89108

Telephone: _____  Email: _____

b.  If you have more than one address where Defendant/Respondent might be found, list that here:

Name *(First, Middle, Last)*: _____

Street Address, Unit #: _____

City, State, ZIP: _____

Telephone: _____  Email: _____

c.  Method of service on Defendant/Respondent:

☐ Sheriff  ☐ Sheriff outside Illinois: _____
*County & State*

☑ Special process server  ☐ Licensed private detective

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached _____ *Additional Defendant/Respondent Address*
*Number*

*and Service Information* forms.

**2.**  **Information about the lawsuit:**

a.  Amount claimed:  $ 100,000,000.00

☐ b.  I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession).

**3.**  **Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last)*: Justin N. Boley/Wexler Boley & Elgersma (counsel for Plaintiff)

Street Address, Unit #: 311 S. Wacker Drive, Suite 5450

City, State, ZIP: Chicago, IL 60606

Telephone: 3123462222  Email: jnb@wbe-llp.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

**Important information for the person getting this form**

You have been sued. Read all of the documents attached to this *Summons*.
To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms.

**4.**  **Instructions for person receiving this *Summons* (Defendant):**

☑ a.  To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:

Address: Richard J. Daley Center, 50 W. Washington Street

City, State, ZIP: Chicago, IL 60602

---

*Sidebar instructions:*

In **1a**, enter the name and address of the first Defendant/ Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here.

In **1b**, enter a second address for the first Defendant/ Respondent, if you have one.

In **1c**, check how you are sending your documents to this Defendant/ Respondent.

Check here if you are serving more than 1 Defendant/ Respondent. Attach an *Additional Defendant/ Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached.

In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property.

In **3**, enter your complete address, telephone number, and email address, if you have one.

Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

FILED DATE: 5/22/2023 9:10 AM   2023CH02874

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| | b. | Attend court: |
|---|---|---|

On: _____ at _____ ☐ a.m. ☐ p.m. in _____
      *Date*            *Time*                 *Courtroom*

**In-person at:**

_____
   *Courthouse Address*        *City*             *State*       *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

    By telephone: _____
                   *Call-in number for telephone remote appearance*

    By video conference: _____
                         *Video conference website*

_____
   *Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: _____ or visit their website
                     *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
    *Website*

**Sidebar notes (left margin):**

In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/Response*.

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website. All of this information is available from the Circuit Clerk.

---

| **STOP!** | |
|---|---|
| The Circuit Clerk will fill in this section. | **Witness this Date:** _____ |
| | **Clerk of the Court:** _____ |

5/22/2023 9:10 AM IRIS Y. MARTINEZ

---

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**

- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: _____
             *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

FILED DATE: 5/22/2023 9:10 AM   2023CH02874

| STATE OF ILLINOIS, CIRCUIT COURT | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|

Cook ▼ **COUNTY**

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | Erica Norman |
| | **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. |
| | Servall Biometrics d/b/a Patronscan |
| | **Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | 2023CH02874 |
| | **Case Number** |
| | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the *Summons* and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:

      ☐ Male  ☐ Female  ☐ Non-Binary   Approx. Age: _____  Race: _____

      On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

      Address, Unit#: _____

      City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:

      On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

      Address, Unit#: _____

      City, State, ZIP: _____

      And left it with: _____

          *First, Middle, Last*

      ☐ Male  ☐ Female  ☐ Non-Binary   Approx. Age: _____  Race: _____

      and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on this date: _____ .

    ☐ On the Corporation's agent, _____

               *First, Middle, Last*

      ☐ Male  ☐ Female  ☐ Non-Binary   Approx. Age: _____  Race: _____

      On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

      Address: _____

      City, State, ZIP: _____

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____

*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

| **DO NOT** complete this section. The sheriff or private process server will complete it. |
|---|

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. |
|---|

**By:** _____

*Signature by:*  ☐ Sheriff
                 ☐ Sheriff outside Illinois:

_____
*County and State*
☐ Special process server
☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return: $ _____
Miles _____ $ _____
Total $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED DATE: 5/22/2023 9:10 AM    2023CH02874

FILED
6/5/2023 11:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02874
Calendar, 3
22999866

351024
Law Firm Ref#: 2540-000

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ERICA NORMAN, individually and on behalf of all others similarly situated

Case No.: 2023CH02874

Plaintiff(s)

vs.

AFFIDAVIT OF SPECIAL PROCESS SERVER

SERVALL BIOMETRICS D/B/A PATRONSCAN, INC.

Defendant(s)

I, ___Leonard Jay Hirschhorn___, being first duly sworn on oath, deposes and states the following:

I am over the age of 18 and not a party of this action. I am an agent of It's Your Serve, Inc, Illinois Department of Financial and Professional Regulation number 117.000885. I attempted service of the within **Alias Summons; Class Action Complaint** to Servall Biometrics d/b/a Patronscan, Inc., c/o Eastbiz.com (RA), located at 5348 Vegas Drive, Las Vegas, NV 89108 resulting in the following:

☐ **PERSONAL SERVICE:** By leaving a copy of the process with Servall Biometrics d/b/a Patronscan, Inc., c/o Eastbiz.com (RA) personally on the ____ day of _____, 20____ at _____M.

☒ **AUTHORIZED SERVICE:** By leaving a copy of the process with:
Name: Freddie (Did Not State Last Name), Title: __Administrative Assistant__, an individual of the company willing and able to accept on behalf of the entity/respondent/witness on the _24_ day of _May_, 20 _23_ at _11:16_ A.M.

☐ **SUBSTITUTE SERVICE:** By leaving a copy of the process at the above address which is Servall Biometrics d/b/a Patronscan, Inc., c/o Eastbiz.com (RA)'s usual place of abode with:
Name: _____, Relationship: _____, a person of his/her family, or other person residing there, over the age of 13 years who was informed of the contents of the listed documents on the ____ day of _____, 20____ at _____M.
After substitute service, I mailed a copy of the listed documents via regular mail to the subject on the ____ day of _____, 20____.

☐ **NON-SERVICE:** for the following reasons with the **DATE** and **TIME** of each attempt listed along with a description of the attempt **(attach an additional sheet if needed):**

_/_/_ @_____: _____

_/_/_ @_____: _____

_/_/_ @_____: _____

A description of person with whom the documents were left is as follows:

Sex: _male_ Race: _black_ Approx. Age: _20's_ Height: _6'0"_ Weight: _170 lbs_. Hair: _dreadlocks_ black

Noticeable features/Notes: _____

The undersigned verifies that the statements set forth in this Affidavit of Service are true and correct.

State of Nevada, County of Clark
Signed and sworn before me on
this _24th_ day of _May_, 20 _23_

_____
(Server Signature)

_____
Notary Public

Leonard Jay Hirschhorn, #R-2018-03419/Lic #604
(Print Name)
724 S. 8th Street
Las Vegas, NV 89101

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
LAURA NIEBUHR
Appt. No. 22-5891-01
My Appt. Expires Oct. 19, 2026



SAAFF/351024

Date: 6/13/2023

CIRCUIT COURT OF COOK COUNTY
CHANCERY DIV.,  RM. 802 DALEY CENTER.
 CHICAGO IL-60602

Norman Erica

 -
kaw@wbe-llp.com

CASE: 2023CH02874 / CALENDAR: 03

Norman, Erica  -vs- Servall Biometrics d/b/a Patronscan, Inc.,

YOUR COURT DATE IS ON Monday  July  24  2023 AT 09:30 AM

** PLEASE DO NOT COME DOWN TO THE COURTHOUSE **

IN ORDER TO APPEAR BY TELEPHONE OR VIDEO FOR YOUR
 USE THE FOLLOWING ZOOM INFORMATION:

ZOOM ACCESS CODE: 955 0046 1687   PASSWORD: 640378

INSTRUCTIONS FOR ACCESSING ZOOM BY VIDEO ARE AVAILABLE AT
HTTP://WWW.COOKCOUNTYCOURT.ORG/ AND AT HTTPS://ZOOM.US/
TO ACCESS ZOOM BY PHONE, CALL 312-626-6799 THEN ENTER THE
THE ACCESS CODE AND PASSWORD LISTED ABOVE.

IF YOU HAVE ANY QUESTIONS PLEASE CONTACT THE COURT
EMAILING CCC.CHANCERYCALENDAR3@COOKCOUNTYIL.GOV
OR CALLING 312-603-5432

Date: 6/13/2023

CIRCUIT COURT OF COOK COUNTY
CHANCERY DIV.,  RM. 802 DALEY CENTER.
 CHICAGO IL-60602

Norman Erica

 -
kaw@wbe-llp.com

CASE: 2023CH02874 / CALENDAR: 03

Norman, Erica  -vs- Servall Biometrics d/b/a Patronscan, Inc.,

YOUR COURT DATE IS ON Monday  July  24  2023 AT 09:30 AM

** PLEASE DO NOT COME DOWN TO THE COURTHOUSE **

IN ORDER TO APPEAR BY TELEPHONE OR VIDEO FOR YOUR
 USE THE FOLLOWING ZOOM INFORMATION:

ZOOM ACCESS CODE: 955 0046 1687   PASSWORD: 640378

INSTRUCTIONS FOR ACCESSING ZOOM BY VIDEO ARE AVAILABLE AT
HTTP://WWW.COOKCOUNTYCOURT.ORG/ AND AT HTTPS://ZOOM.US/
TO ACCESS ZOOM BY PHONE, CALL 312-626-6799 THEN ENTER THE
THE ACCESS CODE AND PASSWORD LISTED ABOVE.

IF YOU HAVE ANY QUESTIONS PLEASE CONTACT THE COURT
EMAILING CCC.CHANCERYCALENDAR3@COOKCOUNTYIL.GOV
OR CALLING 312-603-5432

Date: 6/13/2023

CIRCUIT COURT OF COOK COUNTY
CHANCERY DIV.,  RM. 802 DALEY CENTER.
 CHICAGO IL-60602

Norman Erica

 -
esd@wbe-llp.com

CASE: 2023CH02874 / CALENDAR: 03

Norman, Erica  -vs- Servall Biometrics d/b/a Patronscan, Inc.,

YOUR COURT DATE IS ON Monday  July  24  2023 AT 09:30 AM
** PLEASE DO NOT COME DOWN TO THE COURTHOUSE **
IN ORDER TO APPEAR BY TELEPHONE OR VIDEO FOR YOUR
 USE THE FOLLOWING ZOOM INFORMATION:

ZOOM ACCESS CODE: 955 0046 1687   PASSWORD: 640378

INSTRUCTIONS FOR ACCESSING ZOOM BY VIDEO ARE AVAILABLE AT
HTTP://WWW.COOKCOUNTYCOURT.ORG/ AND AT HTTPS://ZOOM.US/
TO ACCESS ZOOM BY PHONE, CALL 312-626-6799 THEN ENTER THE
THE ACCESS CODE AND PASSWORD LISTED ABOVE.

IF YOU HAVE ANY QUESTIONS PLEASE CONTACT THE COURT
EMAILING CCC.CHANCERYCALENDAR3@COOKCOUNTYIL.GOV
OR CALLING 312-603-5432

Date: 6/13/2023

CIRCUIT COURT OF COOK COUNTY
CHANCERY DIV.,  RM. 802 DALEY CENTER.
 CHICAGO IL-60602

Norman Erica

 -
esd@wbe-llp.com

CASE: 2023CH02874 / CALENDAR: 03

Norman, Erica  -vs- Servall Biometrics d/b/a Patronscan, Inc.,

YOUR COURT DATE IS ON Monday  July  24  2023 AT 09:30 AM

** PLEASE DO NOT COME DOWN TO THE COURTHOUSE **

IN ORDER TO APPEAR BY TELEPHONE OR VIDEO FOR YOUR

 USE THE FOLLOWING ZOOM INFORMATION:

ZOOM ACCESS CODE: 955 0046 1687   PASSWORD: 640378

INSTRUCTIONS FOR ACCESSING ZOOM BY VIDEO ARE AVAILABLE AT
HTTP://WWW.COOKCOUNTYCOURT.ORG/ AND AT HTTPS://ZOOM.US/
TO ACCESS ZOOM BY PHONE, CALL 312-626-6799 THEN ENTER THE
THE ACCESS CODE AND PASSWORD LISTED ABOVE.

IF YOU HAVE ANY QUESTIONS PLEASE CONTACT THE COURT
EMAILING CCC.CHANCERYCALENDAR3@COOKCOUNTYIL.GOV
OR CALLING 312-603-5432