**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

ERICA NORMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SERVALL BIOMETRICS d/b/a
PATRONSCAN, INC.,

Defendant.

Case No. 1:23-cv-04015

District Judge Joan B. Gottschall

Magistrate Judge Beth W. Jantz

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES**

Defendant Servall Data Systems Inc. d/b/a Patronscan, Inc., incorrectly named as Servall Biometrics d/b/a Patronscan, Inc. ("Defendant" or "Patronscan"), hereby submits its Answer and Affirmative Defenses to the Class Action Complaint of Plaintiff Erica Norman.

**INTRODUCTION**

1.      On January 13, 2023, Plaintiff Erica Norman attended a "Pajamas" concert at Bourbon on Division, a music venue located on Division Street in Wicker Park, Chicago.

**ANSWER:**      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1.

2.      Before Ms. Norman entered the concert, the venue's bouncer scanned her face and her driver's license using a Patronscan device. The Patronscan device took a photograph of Ms. Norman and then performed a scan of facial geometry on that photograph and the image of Ms. Norman on her driver's license.

**ANSWER:**      Defendant denies that "[t]he Patronscan device . . . performed a scan of facial geometry on [Ms. Norman's] photograph and the image of Ms. Norman on her driver's license." Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations contained in Paragraph 2 and therefore denies same.

3.     Ms. Norman was not provided with written disclosures and she did not provide informed written consent regarding this collection and use of her biometric identifiers and information (collectively, "biometric data").

**ANSWER:**    Defendant denies the allegations contained in Paragraph 3.

4.     In capturing, storing, and sharing the biometric data of Ms. Norman and others without proper disclosures and written consent, Patronscan violated and continues to violate the Illinois Biometric Information Privacy Act ("BIPA" or "the Act").

**ANSWER:**    Paragraph 4 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 4.

5.     Patronscan violates BIPA in a particularly Orwellian manner by moving beyond advanced facial-recognition software, where a program essentially matches facial attributes between two photographs and provides verification: In addition to collecting scans of people's faces to cross-check individual faces against an individual's proffered form of identification ("ID"), Patronscan also examines and captures thousands of data points and pixels and runs a person's facial scan and ID against its growing database of criminals, more than 50,000 flagged "troublemakers," and "V.I.P's" whose information – biometric and otherwise – is shared among Patronscan and its expanding network of business customers.

**ANSWER:**    Paragraph 5 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 5.

6.     And if trouble occurs after a previously unflagged patron enters an establishment,

Patronscan admits it retains the biometric data of suspect customers for inclusion in its flagged database, advertising the service as equivalent to a "bouncer that never forgets a face[.]"



**ANSWER:**   Defendant denies the allegations contained in Paragraph 6.

7.      In the regular course of its business, Patronscan shares captured biometric data of persons like Ms. Norman with third parties, including Patronscan's customers—namely, the venue, bar, or business and law enforcement officials—without a warrant or subpoena.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 7.

8.      Patronscan's trade in biometric information has profound implications for the data privacy rights and civil liberties of Illinois citizens and residents of other states visiting businesses in Illinois. Patronscan's core business practice directly contravenes the letter and purpose of BIPA.

**ANSWER:**   Paragraph 8 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 8.

9.      In 2008, the State of Illinois enacted BIPA with the purpose of serving "[t]he public welfare, security, and safety . . . by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information" namely, identifiers such as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or *face geometry*," and biometric

3

information derived from those identifiers. In so doing, the Illinois legislature recognized that "[t]he full ramifications of biometric technology are not fully known," and that "[b]iometrics . . . are biologically unique to the individual; therefore, once compromised, the individual has no recourse."

**ANSWER:** Paragraph 9 contains legal conclusions to which no response is required.

10. BIPA addresses the dangers posed by the mishandling of biometric identifiers and information by providing a right of action to any person who is subjected to a violation of the Act within the State of Illinois.

**ANSWER:** Paragraph 10 contains legal conclusions to which no response is required.

11. As relevant here, a private entity in the possession of biometric identifiers or information violates BIPA when it:

> i. collects and captures biometric information before first "inform[ing] the subject…in writing that a biometric identifier or biometric information is being collected or stored[,]" "inform[ing] the subject. . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used," and then "receiv[ing] a written release executed by the subject of the biometric identifier or biometric information";
>
> ii. fails to obtain a person's consent before "disclos[ing], redisclos[ing], or otherwise disseminat[ing] a person's . . . biometric identifier or biometric information" to a third-party; and
>
> iii. fails to establish a publicly available policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information," and profits in any way from the use of her biometric identifiers and information.

**ANSWER:** Paragraph 11 contains recitations of law to which no response is required.

12. As a private entity in the possession of biometric information and identifiers obtained by capturing, using, storing, and sharing them through its portal and software, Patronscan violated and continues to violate § 15(a) of BIPA by failing to establish a publicly available policy

establishing a retention schedule and guidelines for permanently destroying biometric data obtained from customers entering establishments that use Patronscan in Illinois.

**ANSWER:**    Paragraph 12 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 12.

13.    Patronscan violated and continues to violate § 15(b) of BIPA by collecting this biometric data without first providing written notice and obtaining written informed consent from persons entering venues using Patronscan, including Plaintiff and Class Members.

**ANSWER:**    Paragraph 13 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 13.

14.    Patronscan violated and continues to violate § 15(c) of BIPA by wrongfully profiting from the biometric data it has collected from its customers' patrons—including the scans Plaintiff's and Class Members' facial geometries —by using the biometric data it obtains to maintain a database of "problem individuals" and improve its ID authentication software, thereby making the technology more profitable to Patronscan, which sells its hardware and software to businesses in the State of Illinois.

**ANSWER:**    Paragraph 14 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 14.

15.    Patronscan violated and continues to violate § 15(d) by failing to obtain consent from people before disclosing, redisclosing, and disseminating their biometric identifiers or biometric information to a third-party, like venue employees, subcontracted security personnel,

and law enforcement officials, and upon information and belief, third-party databases, without patrons' consent.

**ANSWER:** Paragraph 15 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 15.

16. In sum, Patronscan obtained Plaintiff's and Class Members' facial scans through its hardware and then stored, used, and shared those scans through its software. In doing so, Patronscan profited from Plaintiffs' and Class Members' biometric data and harmed the substantive privacy interests that BIPA was intended to protect.

**ANSWER:** Paragraph 16 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 16.

**PARTIES**

17. Plaintiff Erica Norman is a natural person and citizen of the State of Illinois, residing in the Northern District of Illinois.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.

18. Defendant is a Canadian corporation with a principal place of business at 10504 42 St. SE. Calgary, Alberta, Canada.

**ANSWER:** Defendant admits the allegations contained in Paragraph 18.

**JURISDICTION AND VENUE**

19. This is a class action complaint for violations of BIPA (740 ILCS 14/1, *et seq.*), seeking statutory and actual damages.

**ANSWER:**    Defendant admits Plaintiff seeks statutory and actual damages but denies that such relief is proper and otherwise denies the allegations contained in Paragraph 19.

20.     No federal question is presented by this complaint. Plaintiffs bring this complaint solely under state law and not under federal law, and specifically not under the United States Constitution, nor any of its amendments, nor under 42 U.S.C. § 1981 or 1982, nor any other federal statute, law, rule, or regulation. Plaintiff believes and alleges that a cause of action exists under state law for the conduct complained of herein.

**ANSWER:**    Defendant admits that no federal question is presented by the Class Action Complaint.  Paragraph 20 otherwise contains legal conclusions to which no response is required. To the extent that those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 20.

21.     This Court has personal jurisdiction over Plaintiff and the Class because they submit to the Court's jurisdiction. This Court has personal jurisdiction specifically over Defendant because Defendant deliberately targeted the Illinois market by actively marketing, selling, and acquiring customers in the state who have paid Defendant significant sums of money, and entered into contracts for the use of its hardware and software that captures, uses, stores, and disseminates biometric information and identifiers, from which the company profits. Plaintiffs' claims therefore arise out of, or relate to, Defendant's extensive business contacts and contractual performance within the state of Illinois.

**ANSWER:**    Defendant admits that this Court may exercise personal jurisdiction over Plaintiff. Paragraph 21 otherwise contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 21.

22.     Venue is proper in this County under 735 ILCS 5/1-108 and 2-101 because a substantial part of the acts or omissions giving rise to the claims occurred in Cook County. Specifically, Patronscan's collection of Plaintiff's and many Class Members' biometric information occurred within Cook County.

**ANSWER:**    Defendant admits that this action is properly venued in this Court.  Defendant denies the remaining allegations in Paragraph 22.

## FACTUAL ALLEGATIONS

### A.  Patronscan collects biometric Information and identifiers.

23.     On January 13, 2023, Plaintiff attended a concert and was subjected to Patronscan's technology. Before Plaintiff arrived at the concert venue, she received an electronic ticket that did not contain disclosures about the venue or Patronscan's collection, use, or disclosure of her biometric information. Upon entry into the concert venue, a bouncer asked Ms. Norman to hand over her driver's license, scanned her license into a Patronscan portal, and then took her photograph with a camera attached to a Patronscan portal. Patronscan software then scanned her facial geometry from the photograph.

**ANSWER:**    Defendant denies that Patronscan collects, uses, or discloses "biometric information."  Patronscan also denies that its software "scanned [Ms. Norman's] facial geometry." Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 and therefore denies same.

24.     The Patronscan portal and biometric information collection process is shown on its website:







**ANSWER:** Defendant denies that it collects "biometric information." Patronscan admits that Defendant has incorporated certain images from its website in Paragraph 24.

25. Security or venue personnel place an ID into the Patronscan portal, which scans the ID and uploads the ID to Patronscan's software, which runs a multi-step authentication check on the ID itself. Simultaneously, the camera attached to the Patronscan portal takes a photograph of the patron, uploads the photograph to Patronscan's software, which scans the photograph for facial geometry, and compares that geometry to the provided ID, as well as Patronscan's database of flagged and V.I.P. individuals.

**ANSWER:** Defendant admits that security or venue personnel place an ID into the Patronscan scanner, which scans the ID and processes the ID in Patronscan's software running on the computer attached to the Patronscan scanner, which, in turn, runs a multi-step authentication check on the ID itself. Defendant also admits the camera attached to the Patronscan portal takes a photograph of the patron and processes the ID in Patronscan's software running on the computer attached to

the Patronscan scanner. Defendant denies the remaining allegations contained in Paragraph 25, including the allegation that Patronscan's software "scans the photograph for facial geometry, and compares that geometry to the provided ID, as well as Patronscan's database of flagged and V.I.P. individuals."

26. Patronscan collects the information of thousands of other Illinois citizens and residents of other states visiting businesses in Illinois. Indeed, Patronscan confirms that it collects data to "verify and authenticate patron age and match patrons against the venue or networked flag list [explained below]. Patronscans['] collection of data is limited to: Name, Date of Birth, Photo, Gender, Post Code/Zip Code."

**ANSWER:** Defendant admits that it collects data to verify and authenticate patron age, match patrons against the venue or networked flag list, and that collection is limited as alleged in Paragraph 26. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26 and therefore denies same.

**B. Patronscan fails to give citizens written disclosures and obtain their written informed consent before collecting their biometric information and identifiers.**

27. When Plaintiff entered Bourbon on Division, there was no posted written notice inside or outside the venue about the collection of biometric data, nor did she receive an email or any other written notice from Patronscan with a biometric disclosure before the event, nor were there biometric disclosures on her concert ticket. Plaintiff was therefore wholly unable to give her informed written consent for the collection of her biometric information, nor did she ever provide Patronscan with such consent before her face was scanned by the company.

**ANSWER:** Defendant denies the allegations contained in Paragraph 27 insofar as they contend that Defendant collects biometric data. Defendant also states that it provided a sticker on the back of the scanner kiosk at issue that served as notice to patrons like Ms. Norman. Defendant lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27 and therefore denies same.

28.     Plaintiff's experience is representative of patrons' experiences generally.

**ANSWER:**     Defendant denies the allegations in Paragraph 28 insofar as they contend that Defendant collects biometric data.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 and therefore denies same.

29.     Patronscan advertises that ID authentication and flag-checks can be performed "in seconds." The process can be completed in seconds only because Patronscan does not provide a written notice to patrons, allow them adequate time to review it, or obtain their informed written consent.

**ANSWER:**     Defendant admits that ID authentication and flag-checks can be performed by Patronscan devices in seconds.  Defendant denies the remaining allegations contained in Paragraph 29.

**C.  Patronscan uses citizens biometric information and identifiers and discloses them to third-parties without their written informed consent.**

30.     One of Patronscan's core functions is a tool to verify forms of identification by scanning IDs and faces to "analyze[ ] over 6,000 data points" between a person's face and their form of identification to "determine an ID's authenticity."  The company's "proprietary algorithms go beyond simple ID authentication to look for pixel-level discrepancies" between a patron's ID, a stored copy of an authenticated ID from the same issuer, and the patron's face. Patronscan "software uses a combination of technologies such as artificial intelligence" as well as "character recognition, barcodes, rfids, microprint, etc."  The company allows users to "[i]ntegrate Patronscan's [face] scanning software into [their] iOS, Android, web, or desktop application to

12

authenticate IDs and capture [biometric] data [and] [r]eceive [identification] authentication responses in seconds, not hours or days."

**ANSWER:** Defendant admits that Plaintiff is quoting parts of its website in this Paragraph. Defendant denies the remaining allegations contained in Paragraph 30.

31. The company markets its ID and face scanning hardware (device that captures biometric data through scans of facial geometry) and software (biometric information database) to nightclubs and bars, vape shops, automotive dealerships, property managers, dispensaries, retail establishments, financial services institutions, and telecom companies.

**ANSWER:** Defendant denies the allegations contained in Paragraph 31.

32. Beyond ID verification, a core function of Patronscan is the recognition of both "flagged" troublemakers and V.I.Ps through their biometric identifiers. "Patronscan is also used as an informational system that allows [businesses] to flag individuals who are reported to have engaged in conduct on a patron's presence that created a serious risk to guests or staff." Patronscan hosts a database of "flagged" individuals which warehouses the data of "50,000+ individuals known for assaults, chargebacks, drugs, and property damage."

**ANSWER:** Defendant admits that Plaintiff is quoting from parts of its website in this Paragraph. Defendant denies the remaining allegations contained in Paragraph 32, including the allegation that recognition of patrons through biometric identifiers is a function of Patronscan devices.

33. "Flags can be either single venue or shared across all networked venues (shared with other participating venues). Venue flags pertain only to the venue/venues in the same ownership group who placed the flag and are not visible to any other venue. As of January 1, 2019, the maximum flag period for any existing or new venue flag is 5 years. This storage period applies

only for the same business flags. If you have a venue flag, it will only be displayed if your ID [and face] is scanned at the business that created the flag, if you visit a different business your flag will not be displayed."

**ANSWER:**   Defendant admits that Plaintiff is quoting from parts of its website in this Paragraph.  Defendant denies the remaining allegations contained in Paragraph 33.

34.   "Networked flags can be viewed by other venues on the network. These flags are only shown when a patrons['] ID [and face] is scanned at the venue. Venues cannot search or view other business' flags. Flags are only visible when the patrons ID is scanned at those venues. The maximum flag period for a networked flag is 1 year in length."

**ANSWER:**   Defendant admits that Plaintiff is quoting from parts of its website in this Paragraph.  Defendant denies the remaining allegations contained in Paragraph 34.

35.   The software also allows users to mark patrons for positive reasons, allowing bar and venue users to "treat VIPs" like VIPs. Patronscan allows businesses to recognize V.I.P. IDs and faces upon arrival and "deliver memorable experiences by sending staff notifications . . . . [allowing them to] [h]andle private club membership requirements and reward big spenders with special treatment. [Patronscan can] [t]ier . . . members into groups so [ ] door staff recognize and welcome [the] most valued patrons."

**ANSWER:**   Defendant denies Patronscan devices "recognize" patron faces.  Defendant admits the remaining allegations contained in Paragraph 35.

36.   To accomplish these objectives, Patronscan discloses a patron's biometric information and identifiers to third-party databases to check for criminal history, and discloses their information to the venue itself (a third-party outside of the data subject – Patronscan relationship), as well as their security personnel (who are often third-party subcontractors), and

14

renders an "accepted" message for Patrons that pass verification and flag checks, like Plaintiff, alerts them of the presence of a "V.I.P.," or provides a "flagged" alert for purported "troublemakers" that are rejected at the door.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 36.

37.    But Patronscan's disclosure of biometric data does not end at the entryway. "If the venue needs to log an incident [after entry] and place a patron on the flagged list for example, the venue [or its security] can [go back and] reference a photo and data such as name, age, and gender."

**ANSWER:**    Defendant admits that Plaintiff is quoting from parts of its website in this Paragraph.  Defendant denies the remaining allegations contained in Paragraph 37, including the allegations of Defendant's disclosure of biometric data.

38.    And "[i]n case of a major incident concerning public safety, law enforcement may obtain access to a venues data, but only when an official investigation has been launched. The three conditions in which law enforcement may request Patronscan information include: [1] The law enforcement agency has identified its lawful authority to obtain the information[;] [2] The law enforcement agency has indicated that the disclosure is requested for the purpose of enforcing a law in its jurisdiction, carrying out an investigation relating to the enforcement of any such law, or gathering intelligence for the purpose of enforcing any such law[;] [3] The law enforcement agency has provided an investigation number or any other uniquely identifiable number that can be traced back to the purpose of the disclosure request."

**ANSWER:**    Defendant admits that Plaintiff is quoting from parts of its website in Paragraph 38.

39.    In none of the three conditions above does Patronscan require law enforcement officials to provide the company a *warrant or subpoena* before sharing citizens' biometric data with them. Even if Patronscan asks a law enforcement agency to identify its "lawful authority to

obtain the [biometric] information," doing so does not equate to actually requiring the provision

of a warrant or subpoena before handing over such sensitive information.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 39.

**D.  Patronscan fails to provide a publicly available, BIPA-compliant retention policy.**

40.     Patronscan provides the following retention and deletion policy on its website:

> Unless a patron is flagged, data is retained [by Patronscan and the
> venue] for a limited period of time before being permanently
> deleted. This period allows crime victims sufficient time to report a
> crime and for law enforcement to review patron records to identify
> the alleged assailant(s) [through the sharing process detailed above].
> It is common for victims to report crimes several days to weeks later.
> Data is permanently deleted as per the data retention period below:
> [ ] 30 days in the United States (as of January 1st, 2019)…The only
> data that is saved beyond the above time frames is specific to patrons
> that are on the flag list.

**ANSWER:**     Defendant admits that Plaintiff is quoting from parts of its website in Paragraph 40.

Defendant denies that BIPA governs its data retention and deletion policies.

41.     Thus, while non-flagged patrons' biometric data is purportedly deleted within 30

days if it was collected after January 1, 2019, Patronscan either wholly fails to inform V.I.P. and

flagged individuals when their information will be deleted, or never deletes the data of V.I.P. and

flagged individuals, which could be longer than three years since the individual's last interaction

with Patronscan.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 41.

42.     Plaintiff was allowed entry into Bourbon on Division, so was presumably not a

flagged individual at the time of her entry. But Plaintiff is unaware whether she was marked as a

V.I.P. by the venue or Patronscan after her entry, leaving her in limbo of which Patronscan

retention policy applies. Thus, Patronscan's retention policy for V.I.P. and flagged individuals is

insufficient.

**ANSWER:** Defendant denies the insufficiency of its retention policy. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 and therefore denies same.

**E. Patronscan profits from its use of citizens biometric information.**

43.     Patronscan advertises to potential customers that its software is akin to a "bouncer that never forgets a face."

**ANSWER:** Defendant admits that Plaintiff is quoting from parts of its website in Paragraph 43.

44.     But Patronscan's software is much more than a bouncer that never forgets a face: the software is a digital hivemind that can access caches of a patron's most sensitive information, associate a face with bad behavior, criminal history, and perceived social or economic status, and share that information instantaneously with other "bouncers," police, or authorities around the world. Each face scan improves Patronscan software by building its database of information and increasing its collection of V.I.P. and "flagged" individuals, which the company then advertises and sells to businesses seeking to track, block, or incentivize certain types of patrons.

**ANSWER:** Defendant denies the allegations contained in Paragraph 44.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff Erica Norman brings this action on behalf of herself and under 735 ILCS 5/2-801 as the representative of a Class defined as follows:

> All persons who had their biometric identifiers or information
> collected, captured, received, otherwise obtained, used, or stored in
> Illinois by Defendant during the Class Period.

**ANSWER:** Defendant admits that Plaintiff seeks to represent a class but denies that such representation is proper and otherwise denies the allegations contained in Paragraph 45.

46.     For purposes of this action, the Class Period is defined as March 24, 2018, through

the present.

**ANSWER:**    Defendant admits that Plaintiff defines the period applicable to the class she seeks to represent but denies that such period is proper and otherwise denies the allegations contained in Paragraph 46.

47.    Excluded from the Class are Defendant Servall Biometrics d/b/a Patronscan Inc. and any entity in which Defendant has a controlling interest, as well as any of Defendant's legal representatives, officers, directors, assignees, and successors.

**ANSWER:**    Defendant admits that Plaintiff seeks to limit a class but denies lacks knowledge or information sufficient to form a belief as to the propriety of such limitation and otherwise denies the allegations contained in Paragraph 47.

48.    Members of the Class are so numerous that joinder of all Class Members is impractical.  Defendant currently boasts that it has scanned approximately 197,200,0000 IDs and faces in 203 cities. Upon Plaintiff's personal knowledge, Patronscan has employed its hardware and software to collect and capture biometric information in the City of Chicago, Illinois, and upon information and belief, Patronscan has also done so in numerous other cities in Illinois.

**ANSWER:**    Defendant admits it represented that its devices scanned approximately 197,200,000 IDs in 203 cities and admits its devices are employed in Chicago and possibly other cities in Illinois.  Paragraph 48 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 48.

49.    Plaintiff's claims are typical of the members of Class Members who were aggrieved by the same wrongful conduct of Patronscan: their substantive privacy interests were harmed (i) by Patronscan obtaining their biometric identifiers or information without first providing adequate

written notice and their informed written consent, (ii) by Patronscan disclosing, redisclosing, or otherwise disseminating their biometric identifiers or information to third-parties without obtaining proper consent, (iii) by Patronscan failing to establish an adequate publicly available policy regarding the retention of Plaintiff's and Class Members' biometric identifiers and information, and (iv) by Patronscan profiting from their biometric identifiers or information.

**ANSWER:**     Paragraph 49 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 49.

50.     Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.

**ANSWER:**     Paragraph 50 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them.

51.     Plaintiff is represented by counsel with experience in the prosecution of complex class actions and with particular experience with class actions raising claims under BIPA.

**ANSWER:**     Paragraph 51 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 and therefore denies ame.

52.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class Members because Patronscan has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Patronscan's wrongful action.

**ANSWER:** Paragraph 52 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them.

53. Questions of law and fact common to the Class include:

    a. Whether Patronscan established a publicly available policy for retention of biometric identifiers and information sufficient to satisfy the requirements of § 15(a) of BIPA.

    b. Whether Patronscan provided written notice and obtained written consent of persons whose biometric identifiers and information were collected by Patronscan's facial scan and ID verification system, and, if so, whether such notice and consent are sufficient to satisfy the requirements of § 15(b) of BIPA.

    c. Whether Patronscan profited from the use of the biometric identifiers and information it collected via Patronscan's hardware to improve its database of biometric identifiers and information on non-flagged and flagged individuals it sells to businesses, contrary to § 15(c).

    d. Whether Patronscan obtained requisite consent before disclosing, redisclosing, or otherwise disseminating biometric identifiers or biometric information to a third-party to satisfy the requirements of § 15(d).

    e. Whether persons who had their biometric identifiers and information captured by Patronscan are entitled to damages, and, if so, in what amount.

    f. Whether Patronscan should be enjoined from collecting biometric identifiers and information illegally through its hardware and using them in its software.

**ANSWER:** Paragraph 53 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them.

54. A class action is a superior method for the fair and efficient adjudication of the controversy. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual class actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or

entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs the potential difficulties in management of this class action.

**ANSWER:**    Paragraph 54 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them.

55.    Plaintiffs know of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

**ANSWER:**    Paragraph 55 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them.

## CLAIMS FOR RELIEF

### Claim 1: Violation of Section 15(a) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(a)) by Failing to Establish a Publicly Available Policy Governing the Retention of Biometric Identifiers and Information

56.    Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:**    Defendant incorporates by reference its responses to the foregoing allegations of Paragraphs 1–55.

57.    Section 15(a) of BIPA provides that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information . . ." The biometric identifiers and information must be permanently destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."

**ANSWER:**    Paragraph 57 contains recitations of law to which no response is required.  To the

extent those allegations may be construed as allegations of fact, Defendant admits that Section 15(a) of BIPA includes the language quoted. Defendant denies the remaining allegations contained in Paragraph 57.

58. Servall Biometrics d/b/a Patronscan is a Canadian corporation and is therefore a private entity under BIPA.

**ANSWER:** Defendant admits that Patronscan is a Canadian corporation but denies that BIPA applies to it because it does not collect, use, or store biometric identifiers or biometric information within the meaning of BIPA.

59. The facial geometries of Plaintiff and Class Members are biometric identifiers under the Act, and the information that Patronscan derived from these identifiers is biometric information covered by the Act.

**ANSWER:** Paragraph 59 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 59, including the allegation that it collects, uses, or stores biometric identifiers or biometric information within the meaning of BIPA.

60. As explained in paragraphs 40 to 42 above, Patronscan did not properly develop a publicly available written policy governing the retention of biometric identifiers and information.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing allegations of Paragraphs 40–42. Paragraph 60 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them, including the allegation that it retains biometric identifiers and biometric information.

61. By improperly retaining the biometric information of Plaintiff and Class Members, Patronscan violated the very privacy interests that BIPA was intended to protect.

**ANSWER:** Paragraph 61 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them, including the allegation that it retains biometric identifiers and biometric information.

62. On behalf of herself and the Class, Plaintiff seeks:

    a. injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to develop and make publicly available a retention policy that complies with BIPA's § 15(a);

    b. the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(a);

    c. the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(a); and

    d. reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:** Defendant admits Plaintiff seeks relief but denies that such relief is proper and otherwise denies the allegations contained in Paragraph 62.

### Claim 2: Violation of Section 15(b) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(b)) by Obtaining Biometric Identifiers or Biometric Information Without Written Informed Consent

63. Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing allegations of Paragraphs 1–62.

64. Section 15(b) of BIPA makes it unlawful for any private entity to:

collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric identifier or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information….

**ANSWER:**    Paragraph 64 contains recitations of law to which no response is required.  To the extent those allegations may be construed as allegations of fact, Defendant admits that Section 15(b) of BIPA includes the language quoted.

65.    The written release required by § 15(b)(3) means "informed written consent."

**ANSWER:**    Defendant admits that "written release" is a term defined by BIPA but denies the remaining allegations contained in Paragraph 65.

66.    As detailed in paragraphs 27-29 above, Patronscan systematically collected, stored, and used Plaintiff's and Class Members' biometric identifiers and information without providing the notice required by § 15(b)—including notice that their biometric data was being used for the specific purpose of cross-checking their face against their identification, third-party databases, and Patronscan's "flagged" database.

**ANSWER:**    Defendant incorporates by reference its responses to the foregoing allegations of Paragraphs 27–29.  Paragraph 66 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 66, including the allegation that it collects, uses, and stores biometric identifiers and biometric information.

67.    Likewise, Patronscan never obtained from Plaintiff's or Class Members the informed written consent required by BIPA.

**ANSWER:**    Paragraph 67 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them.

68.    By improperly collecting, storing, and using Plaintiff's and Class Members' biometric identifiers and information, Patronscan violated their rights to privacy in their biometric data.

**ANSWER:** Paragraph 68 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 68, including the allegation that it collects, stores, and uses biometric data.

69. On behalf of herself and the Class, Plaintiff seeks:

    a. injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Patronscan to comply with § 15(b)'s requirement for collecting, storing, and using biometric identifiers and information;

    b. the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(b);

    c. the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(b); and

    d. reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:** Defendant admits Plaintiff seeks relief but denies that such relief is proper and otherwise denies the allegations contained in Paragraph 69.

### Claim 3: Violation of Section 15(c) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(c)) by Profiting from Biometric Identifiers or Biometric Information Obtained Through Patronscan

70. Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing allegations of Paragraphs 1–69.

71. Section 15(c) of BIPA makes it unlawful for any "private entity in possession of a biometric identifier or biometric information" to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."

**ANSWER:** Paragraph 71 contains recitations of law to which no response is required. To the

extent those allegations may be construed as allegations of fact, Defendant admits that Section 15(c) of BIPA includes the language quoted. Defendant denies the remaining allegations contained in Paragraph 71.

72. As detailed in paragraphs 43-44 above, Patronscan had possession of Plaintiff's and Class Members' biometric identifiers and information and, without informing them, profited from their biometric identifiers and information by using that biometric data to make its "flagged" and V.I.P. patron database more robust, which the company marketed and sold to businesses in Illinois.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing allegations of Paragraphs 43–44. Defendant denies the remaining allegations contained in Paragraph 72, including the allegation that it possesses biometric identifiers and biometric information.

73. By profiting from its undisclosed use of Plaintiff's and Class Members' biometric identifiers and information, Patronscan violated the substantive privacy interests that BIPA protects.

**ANSWER:** Paragraph 73 contains legal conclusions to which no response is required. To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 73, including the allegation that it uses biometric identifiers and biometric information.

74. On behalf of herself and the Class, Plaintiff seeks:

    a. injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to cease profiting from the use of their biometric identifiers and information;

    b. the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(c);

    c. the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's negligent violations of § 15(c);

    d. and reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:**    Defendant admits Plaintiff seeks relief but denies that such relief is proper and otherwise denies the allegations contained in Paragraph 74.

### Claim 4: Violation of Section 15(d) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(d)) by Disclosing Biometric Identifiers or Biometric Information Obtained Through Patronscan Without Written Informed Consent

75.    Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:**    Defendant incorporates by reference its responses to the foregoing allegations of Paragraphs 1–74.

76.    Section 15(d) of BIPA makes it unlawful to:

> Disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject. . . consents to the disclosure or redisclosure. . . (4) the disclosure is issued pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

**ANSWER:**    Paragraph 76 contains recitations of law to which no response is required.  To the extent those allegations may be construed as allegations of fact, Defendant admits that Section 15(d) of BIPA includes the language quoted.

77.    As explained in detail in paragraphs 30 to 39, Patronscan regularly discloses and rediscloses patrons' biometric identifiers and information, without their consent, to third-party databases, Patronscan's customer business, that businesses' staff, subcontracted security personnel, and law enforcement, without a warrant or subpoena.

**ANSWER:**    Defendant incorporates by reference its responses to the foregoing allegations of Paragraphs 30–39.  Paragraph 77 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 77, including the allegation that it discloses and

redicloses biometric identifiers and information.

78.     By sharing Plaintiff's biometric identifiers and information, Patronscan violated the substantive privacy interests that BIPA protects.

**ANSWER:**     Paragraph 78 contains legal conclusions to which no response is required.  To the extent those conclusions may be construed as allegations of fact, Defendant denies them and the remaining allegations contained in Paragraph 4, including the allegation that it shares biometric identifiers and biometric information.

79.     On behalf of herself and the Class, Plaintiff seeks:

> a.  injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Patronscan to cease disclose and redisclose their biometric identifiers and information without consent or a valid warrant or subpoena;
>
> b.  the greater of liquidated damages of $5,000 or actual damages for each of Patronscan's intentional or reckless violations of § 15(d);
>
> c.  the greater of liquidated damages of $1,000 or actual damages for each of Patronscan's negligent violations of § 15(d); and
>
> d.  reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:**     Defendant admits Plaintiff seeks relief but denies that such relief is proper and otherwise denies the allegations contained in Paragraph 79.

## PRAYER FOR RELIEF

80.     Wherefore, on behalf of herself and the Class, Plaintiff respectfully requests that this Court enter an Order:

> a.  Certifying this case as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the Class defined above, appointing Plaintiff Erica Norman as representative of the Class, and appointing their counsel as Class Counsel;
>
> b.  Declaring that Patronscan's actions, as set out above, violate § 15 (a), (b), (c), and (d) of BIPA;

    c.   Awarding the greater of actual damages or statutory damages of $5,000 per intentional or reckless violation of BIPA, and the greater of actual or statutory damages of $1,000 per negligent violation of BIPA;

    d.   Awarding injunctive and other equitable relief as is necessary to protect the

    e.   interests of the Class, including, among other things, an order requiring Patronscan to collect, store, and use biometric identifiers in compliant with BIPA;

    f.   Awarding Plaintiff and the Class their reasonable litigation expenses and attorney's fees;

    g.   Awarding Plaintiff and the Class pre-and post-judgement interest, to the extent allowable; and

    h.   Awarding such other and further relief as equity and justice may require.

**ANSWER:**    Defendant admits Plaintiff seeks relief but denies that such relief is proper and otherwise denies the allegations contained in Paragraph 80.

## JURY DEMAND

81.    Plaintiff and Class Members demand a trial by jury on all issues so triable.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 81.

## FOOTNOTES

Defendant need not respond separately to the 63 footnotes in the Class Action Complaint because they are not allegations of fact but citations to Defendant's website, cases, or statutes.

## **AFFIRMATIVE OR OTHER DEFENSES**

Defendant asserts the following affirmative or other defenses, without assuming any burden of proof that does not otherwise exist. These defenses may also apply to the claims of the class of allegedly similarly situated persons if class or collective certification is granted.

### **First Defense**
(Failure to State a Claim)

1.      The Class Action Complaint, in whole or in part, fails to state a claim upon which relief can be granted, including because Defendant's technology is not governed by BIPA as Defendant does not collect, store, or use biometric identifiers or biometric information within the meaning of BIPA.

### **Second Defense**
(Consent)

2.      Plaintiff's claims are barred, in whole or in part, because Plaintiff and all putative class members consented to the conduct alleged to violate BIPA.

### **Third Defense**
(No Injury)

3.      Plaintiff has sustained no injury or damage as a result of any actions allegedly taken by Defendant and are thus barred from asserting claims against Defendant.

### **Fourth Defense**
(Unconstitutional Penalties)

4.      Plaintiff's claims are barred, in whole or in part, because the damages sought by Plaintiff and the putative class are barred under the Due Process Clause of the Illinois and United States Constitutions. The Complaint seeks at least $1,000 in liquidated damages for each alleged BIPA violation, even though neither Plaintiffs nor the putative class have suffered any harm as a result of the conduct alleged. BIPA is unconstitutional as Plaintiff seeks to have it applied in this

case, including because the liquidated damages sought for an alleged technical statutory violation are punitive. The liquidated damages available under BIPA are grossly excessive and disproportionate given the lack of any injury or harm to Plaintiffs and the putative class members, and therefore any award of liquidated damages to the Plaintiff or putative class members would violate Defendant's due process rights.

## Fifth Defense
(Ratification)

5.      Plaintiff's claims are barred, in whole or in part, under the doctrines of ratification and acquiescence. Upon information and belief, Plaintiff and each putative class member approved and, in some cases, participated in the complained-of conduct.

## Sixth Defense
(Statute Inapplicable)

6.      Plaintiff's claims are barred, in whole or in part, because Defendant did not possess, collect, capture, purchase, receive through trade, or otherwise obtain biometric identifiers or biometric information as defined under BIPA.

## Seventh Defense
(Waiver, Estoppel, Other Equitable Doctrines)

7.      Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction, waiver, laches, estoppel, comparative fault, or contributory fault.

## Eighth Defense
(Class Action Not Proper)

8.      Plaintiff cannot establish or satisfy the requirements for a class action by Rule 23 of the Federal Rules of Civil Procedure and, therefore, the class allegations of the Class Action Complaint should be stricken and dismissed.

**Ninth Defense**
(Individualized Inquiries)

9.    The Class Action Complaint's class allegations should be dismissed because independent and individual analyses of Plaintiff and the putative class members' claims and Defendant's defenses to such claims are required.

**Tenth Defense**
(Lack of Manageability)

10.    The Class Action Complaint's class allegations should be dismissed because independent and individual analyses of Plaintiff and the putative class members' claims and Defendant's defenses render a class action unmanageable.

**Eleventh Defense**
(Damages Not Suitable for Class Treatment)

11.    Plaintiff cannot offer a model of damages that is amenable to class treatment.

**Twelfth Defense**
(Violation of Due Process)

12.    Certification of a class, as applied to these facts, would constitute a denial of Defendant's procedural rights and right to a trial by jury and to substantive and procedural due process, in violation of the Fourteenth Amendment of the United States Constitution.

**Thirteenth Defense**
(Inadequate Class Representatives)

13.    The Class Action Complaint's class allegations should be dismissed because Plaintiff is an inadequate class representative.

**Fourteenth Defense**
(No Intentional or Reckless Violation)

14.    Plaintiff's claims are barred, in whole or in part, by Defendant's good faith, and the absence of negligent, intentional, or reckless conduct.

**Fifteenth Defense**
(Failure to Mitigate)

15.     Plaintiff's claims are barred to the extent Plaintiff and the putative class failed, refused, or neglected to mitigate or avoid the damages complained of in the Class Action Complaint, if any.

**Sixteenth Defense**
(Exterritoriality)

16.     Plaintiff's claims are barred to the extent any relevant conduct did not occur primarily and substantially in Illinois.

**Seventeenth Defense**
(Incorrect Party)

17.     Plaintiff's claims are barred, in whole or in part, because other parties are responsible for the actions alleged in the Class Action Complaint.

**Eighteenth Defense**
(Lack of Standing)

18.     Plaintiff's claims are barred, in whole or in part, because Plaintiff lack standing to seek some or all of the requested relief.

**Nineteenth Defense**
(Statute of Limitations)

19.     The putative class members' claims are barred, in whole or in part, by the applicable statutes of limitations.

**Twentieth Defense**
(Reservation of Right to Assert Additional Defenses)

20.     In addition to the foregoing defenses, Defendant reserves the right to amend its Answer to raise any and all additional affirmative or other defenses that may become evident during discovery and during any other proceeding in this action or to pursue any available

counterclaims against Plaintiff or any putative class member who joins this action as those claims become known during this litigation.

**WHEREFORE,** Defendant requests judgment against Plaintiff with respect to her claims asserted herein, dismissing the Class Action Complaint and entering judgment for Defendant, together with costs and disbursements of the above-entitled action and any other relief this Court may deem just and proper.

DATED: August 14, 2023                Respectfully submitted,

                                                     /s/  Nick Kahlon

                                                    Nick Kahlon
                                                    Blake Kolesa
                                                    RILEY SAFER HOLMES & CANCILA LLP
                                                    70 W. Madison Street, Suite 2900
                                                    Chicago, Illinois  60602
                                                    Telephone:     (312) 471-8700
                                                    Facsimile:     (312) 471-8701
                                                    nkahlon@rshc-law.com
                                                    bkolesa@rshc-law.com

                                                    *Attorneys for Defendant Servall Data Systems*
                                                    *Inc. d/b/a Patronscan, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **August 14, 2023** I caused the foregoing **Defendant's Answer and Affirmative Defenses** to be served on the following counsel of record:

/s/ Nick Kahlon

*One of the Attorneys for Defendant Servall Data Systems Inc. d/b/a Patronscan, Inc.*

Kenneth A. Wexler
Justin N. Boley
Eaghan S. Davis
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
esd@wbe-llp.com

Ryan F. Stephan
James B. Zouras
Catherine Mitchell
STEPHAN ZOURAS
222 W. Adams St., Suite 2020
Chicago, Illinois, 60606
Tel: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephaszouras.com
cmitchell@stephanzouras.com

Kevin Landau
TAUS, CEBULAS & LANDAU LLP
123 William Street, Suite 1900A
New York, NY 10038
Tel: (212) 931-0704
klandau@tcllaw.com

*Attorneys for Plaintiff Erica Norman*